IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

GMAC MORTGAGE COMPANY, )
      Plaintiff )
)
V. )
) CIVIL ACTION NO. 05-11746 GAO
JEFFREY L. BAYKO, SR., LISA J. )
BAYKO, MICHAEL J. BAYKO, )
HELEN BAYKO, HANS HAILEY, )
THE UNITED STATES OF AMERICA, )
      Defendant )

## LISA BAYKO'S OPPOSITION TO THE
## DEFENDANTS HELEN BAYKO AND MICHAEL BAYKO'S
## MOTION TO DISMISS CROSSCLAIM FOR
## FOR FAILURE TO NAME A DEFENDANT OR IN THE ALTERNATIVE
## MOTION FOR LEAVE TO FILE AN AMENDED ANSWER AND CROSSCLAIM

Now comes the Defendant Lisa Bayko and hereby opposes the Defendants Helen

Bayko and Michael Bayko's motion to dismiss her Cross Claim for failure to name a

Defendant. The reasons for said opposition are as follows:

**STATEMENT OF CASE**

1.     The Plaintiff GMAC Mortgage Company (hereinafter referred to as "GMAC")

initiated an interpleader action in the Essex County Superior Court on or about October

25, 2004. The Defendant United States of America removed the matter to the United

States District Court pursuant to 28 U.S.C. sections 1441, 1442 and 1444. (United States

District Court, District of Massachusetts Docket No. 04-12448 GAO)

1

2.    On March 24, 2005 the United States District Court (J. O'Toole) granted the

Defendant Commonwealth of Massachusetts motion to dismiss on the grounds that the

"Eleventh Amendment to the United States Constitution bars action against the

Commonwealth and the Commonwealth is an indispensable party to the case." The

United States of America filed an appeal.

3.    In order to proceed in this action, the party defendants agreed to remove the

Commonwealth of Massachusetts from the case. The Commonwealth of Massachusetts

was a party defendant in the interpleader action because of unpaid taxes owed by the

Defendant Jeffrey L. Bayko, Sr. Lisa Bayko agreed to pay the Commonwealth out of her

undisputed share of the proceeds with the right to seek recourse against Jeffrey Bayko's

share of the proceeds in the present action. (GMAC complaint Paragraph 12) It was

undisputed that BankNorth had an undisputed secured interest and aid off. Lisa Bayko

also agreed to allow GMAC to retain approximately $11,000.00 of her undisputed share

of the proceeds in the event that the United States was successful in a future and /or

potential "marshalling" argument. (GMAC Complaint, Paragraph 15).

4.    The present interpleader action was filed by GMAC on or about August 25, 2005.

## STATEMENT OF FACTS

5.    On May 24, 2002, a Judgment of Divorce Nisi entered pursuant to M.G.L. c.208

section 1B in the action of Lisa Bayko v. Jeffrey Bayko (Essex County Probate & Family

Court Docket No. 01 D 875 DV1). (The defendant Hans Hailey was the Attorney for the

Defendant Jeffrey Bayko, Sr.). On May 24, 2002, the parties entered into and executed a

2

separation agreement that was incorporated into the judgment of divorce but not merged

so as survive as an independent contract except all issues relating to health insurance,

alimony, child custody, maintenance and support and visitation which merged. (See

Judgment of Divorce Nisi Attached hereto as Exhibit A. The separation agreement

provided that the Defendant Lisa Bayko take out of the Defendant Jeffrey Bayko's share

of the proceeds of the marital home Child Support arrears in the amount of $42,000.00

(including the $13,000.00 in unpaid support cited in the Separation Agreement dated May

24, 2002); One years Child Support paid in advance in the amount of $13,000.00[1];

College tuitions for the minor children in the amount of $4,710.00; $9,000.00 for

settlement proceeds; and $6,000.00 for the Defendant's credit card liabilities that were

paid for by the Plaintiff. See Separation Agreement Attached hereto as Exhibit B.

6.      Pursuant to the terms of the separation agreement, the parties agreed that he or she

shall neither contract nor incur any expenses, debts, charges or liabilities in the name or

upon the credit of the other not for which the other or the other's legal representative,

property or estate will or may become liable." (Separation Agreement, Article III, Section

J, Paragraph 2) "

7.      Opposed to the terms of the separation agreement dated May 24, 2002, the

Defendant Jeffrey L. Bayko, Sr. conveyed two mortgages to his parents, the Defendants

Helen Bayko and Michael Bayko on July 16, 2002 and on May 25, 2003. On February 9,

---

[1] On July 11, 2002, the Court stated " that security provided at Article III 4.1(c) which
provides "…one years advanced payment of child support…(emphases added) is for
prospective payment using monies received from the sale of the real estate, when and if
received. It is not interpreted as being for a retroactive payment back to 5/24/02, as
Father argues."" (Order dated July 11, 2002) On or about May 1, 2003 the Court (J.
Kaegan) ordered that any and all proceeds that the Defendant was to receive from the sale
of the marital home was to be held in escrow. (Order dated May 1, 2003)

3

2005, the Essex County Probate & Family Court (J. DiGangi) found the Defendant

Jeffrey L. Bayko in Contempt for non-payment of child support in the amount of

$28,859.89 and further found that the conveyances of the mortgages to the Defendants

Helen Bayko and Michael Bayko were a violation of the Separation Agreement, Article

III, Section J, Paragraph 2, and were invalid as against Lisa Bayko. (See Judgment of

Contempt dated February 9, 2005)

## ARGUMENT

8.      The Present Interpleader action was brought by the GMAC to determine the

disbursement of the surplus funds from a foreclosure sale of property formerly owned by

the Defendant Lisa Bayko and Jeffrey L. Bayko, Sr. at 7A Graham, Ave., Newbury,

Massachusetts, County of Essex. Such a suit is brought under the Federal Interpleader

Statute, 28 U.S.C. 1335 et seq.

9.      In her Cross Claim, the Defendant Lisa Bayko asserts her rights to the subject

property (the surplus proceeds) the "res" against all party Defendants. The Defendant

Lisa Bayko Cross Claim was properly pleaded within he context of Fed.R.Civ.P.13(g),

which states:

   A pleading *may* state a cross-claim any claim by one party against a co-party

   arising out of the transaction or occurrence that is the subject matter either of the

   original action of or of a counter-claim therein *or relating to any property that*

   *is the subject matter of the original action…*

4

10.    The rules of good pleading in a interpleader action call for liberal construction. An interpleader requires a claimant to file an answer, setting out defenses to the interpleader action and a statement of claim as to the res in contest. See <u>Wright & Miller</u> , 7 Fed  Practice & procedure Civil 3d. section 1715.

11.    The Court should take particular note that the Defendants Helen and Michael Bayko filed four motions to dismiss, none of which have any merit, but with regards to this particular motion they have selectively moved against Lisa Bayko as opposed to the Defendant Han Hailey who also failed to name a particular defendant and whose Cross Claim scantly states any claim at all.

**WHEREFORE,** the Defendant Lisa Bayko respectfully requests that the Defendants Helen Bayko and Michael Bayko Motion to Dismiss for Failure to Name a Defendant be denied and if the Court is inclined to allow this motion the Defendant Lisa Bayko requests leave to file an Amended Answer and Cross Claim.

The Defendants, Lisa J.
Bayko, by her Counsel,

CHRISTINE ANN FARO
BBO # 552541
79 State Street
Newburyport, MA 01950
(978) 462-4833

CERTIFICATE OF SERVICE

I, Christine Ann Faro, attorney for the Defendants, hereby certify that on this 14th day of October, I served a copy of the Defendant, Lisa J. Bayko's, Opposition to the Defendants Helen Bayko and Michael Bayko's, Motion to Dismiss for Failure to Name Defendant upon the parties of record by serving a copy of the same upon their counsel of record by first class mail, postage prepaid.

CHRISTINE ANN FARO

5

Attorney David M. Rosen
Harmon Law Office
P.O. Box 610389
Newton Highlands, MA 02461-0389

Attorney Hans Hailey
225 Friend Street
Boston, MA 02144

Lydia Bottome Turanchik
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, DC 20044

Attorney Timothy Sullivan
Andover Law, P.C.
451 Andover Street
North Andover, MA 01845

Jeffrey Bayko
C/O Gary Evans
8 Prospect Street
Georgetown, MA
01833

EXHIBIT A

## Commonwealth of Massachusetts
### The Trial Court

Essex _____ Division

**Probate and Family Court Department**

**Docket No.** 01D0875-DV1

### Judgment Of Divorce Nisi

_____ Lisa J. Bayko _____ , Plaintiff

of __Newbury_____ in the County of _____Essex_____

v.

_____ Jeffrey L. Bayko, Sr. _____ , Defendant

of __Boxford_____ in the County of _____Essex_____

All persons interested having been notified in accordance with the law, and after hearing, it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff for the cause of _____

_____ Irretrievable Breakdown of the Marriage _____

as provided by Chapter 208, sections 1, $\frac{B}{2}$ and that upon and after the expiration of ninety days from the entry of this judgment, it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order. It is further ordered that

the Separation Agreement of the parties filed May 24, 2002 is fair and reasonable and not the product of fraud or coercion and does make proper provisions for custody, support and maintenance, for alimony and for the disposition of marital property and is incorporated, not merged into this Judgment and shall survive as an independent contract except for those provisions relating to health insurance, alimony, child custody, support and maintenance and visitation which shall merge and not survive. The parties shall comply with the terms thereof.

All until further order of the Court.

Date May 24, 2002

_____
Justice of Probate and Family Court

EXHIBIT B

# SEPARATION AGREEMENT

## ARTICLE I

## THE PARTIES

This Agreement is made this 24th day of May , 2002, by and between Jeffrey L. Bayko, Sr. (hereinafter called the "Husband") and Lisa J. Bayko (hereinafter called the "Wife"). All references in the within Agreement to "parties" shall mean the above-named Husband and Wife.

## ARTICLE II

## RECITALS

A. The Husband and the Wife were married on August 21, 1976.

B. There are five children of the marriage; namely Jeffrey Bayko, Jr., who was born on December 29, 1976; Corey, who was born on September 4, 1983; Christopher, who was born on December 19, 1984; Jillian, who was born on August 13, 1992; and Tyler, who was born on June 17, 1994. Any reference in the within Agreement to "children" shall mean the above-named minor children.

C. Serious and irreconcilable differences have arisen between the Husband and the Wife. The Husband and the Wife acknowledge that there has been an irretrievable breakdown of the marriage. The within Agreement shall be binding upon the parties without respect to whether they are living separately.

D. The Husband and the Wife desire and intend at this time and by this instrument to make a final and complete settlement of all matters relating to the interests and obligations of each and with respect to, but not limited to support,

1

JLB    µb

property, and estate rights in the case of the death of either of them prior to the entry of a final judgment of divorce and after the entry of a final judgment of divorce should a court see fit to grant a divorce between the Husband and the Wife. The above statement of purpose of the within Agreement shall not in any way limit the effects of any of the covenants of the parties contained in ARTICLE III or the interpretation of the Agreement contained in ARTICLE IV of the within Agreement. The obligation of the parties for support and maintenance of said minor children shall be separate from all other obligations contained in the within Agreement, having in mind the parties' inability to bargain away the rights of their child support from either party.

E. The Wife and the Husband are parties to a complaint for divorce in the Essex County Probate and Family Court. The within Agreement shall be binding upon the parties at all time hereafter whether they are living apart or living together should they become divorced in the future and nothing concerning the state of the marriage of the parties or their living circumstances shall affect the validity of the within Agreement, and the same shall nevertheless continue in full force and effect.

F. The Husband and the Wife declare and acknowledge that each of them understands the position, circumstances and prospect of the other, and the terms, provisions and conditions of the within Agreement and believe its terms, provisions and conditions to be fair and reasonable. The parties further state that they have negotiated the terms of this Agreement directly, that each has had ample opportunity to obtain independent legal advice from counsel of his or her own choosing, and that, having read this Agreement line by line, they freely and fully accept the terms,

2

$\sqrt{L\,B}$  $\mu D$

conditions and provisions hereof and enter into this Agreement voluntarily and without any coercion whatsoever. The parties further acknowledge and declare that this Agreement contains the entire agreement between the parties hereto and that there are no agreements, or inducements leading to the execution hereof, expressed or implied, other than those herein set forth and that no oral statement or prior written matter extrinsic to this Agreement shall have any force or effect. The parties represent and acknowledge that each has fully described their assets and liabilities to the other party to the best of their knowledge and ability.

IN CONSIDERATION OF THE COVENANTS AND AGREEMENTS HEREIN CONTAINED, THE HUSBAND AND THE WIFE HEREBY AGREE AS FOLLOWS:

## ARTICLE III

### COVENANTS OF THE HUSBAND AND THE WIFE

A. CUSTODY AND VISITATION

1. The Husband and the Wife shall have joint legal custody of the minor children of the parties, and the Wife shall have the primary physical custody of said children during such children's minority.

2. The Husband and the Wife shall confer with each other concerning all matters of policy involving the health and education of such children with the intent to adopt a harmonious policy best calculated to promote the welfare of the children. Each shall have the right to consult with any educational institution attended by the children and each shall further have the right to consult with any medical facility or doctor who is treating the children for any condition whatsoever.

3

JLB        LB

3. The Husband shall have the right to reasonable visitation with the minor children upon reasonable notice to the Wife. Such visitation shall include but not be limited to two nonconsecutive weeks each year, dates to be arranged by agreement between the parties. The parties agree that the Husband's visitation should be flexibly scheduled so that changes in the work schedules of the Husband and the Wife as well as variations in the school and activity schedules of the children can be accomodated with as little inconvenience and difficulty as possible to all parties. The Husband and the Wife shall each have the right to take trips with the children at reasonable times and upon reasonable notice to the other party in such a manner that such trips will not interfere with the childrens' schooling. Both Husband and Wife agree that all visitation shall be exercised with due regard to the best interests of the children.

4. The Husband shall provide the Wife with the address and phone number of where the minor children will be staying, if other than at the Husband's home, as well as the dates and times for departure and return. Similarly, the Wife shall provide the same to the Husband for any trips with the minor children away from the Wife's home. Additionally, the Husband must provide the Wife with at least two weeks advanced notice of any visit longer than three days and two nights in duration.

5. Each parent will have the opportunity to spend time with the children during vacation and holiday periods. Holidays will be discussed ahead of time between the parents.

6. Neither parent shall, in the presence of the children, utter or cause to be uttered any disparaging remarks or statements about the other apparent, nor shall

4

JLB    LB

either parent permit the children to remain in the presence of any person who, to the

knowledge of such parent, is making or habitually makes any such disparaging

remarks. Each parent shall exercise his or her best efforts to keep any disparagement

of the other parent from the children. The parties agree and intend that they shall raise

their children with an equal love and respect for both parents and with the

understanding — especially in view of the separation of the parties — that both parents

love them equally and are equally responsible for them.

B. CHILD SUPPORT

1. The Husband agrees that he shall pay to the Wife for the support of the

parties' minor children the sum of $250.00 per week, commencing forthwith. The

parties agree that the Essex County Probate and Family Court shall have continuing

jurisdiction over the determination and review of child support under the provisions of

this paragraph. Nothing in this paragraph shall be construed as a waiver of either

parties' right to petition for a modification of support at any time based upon a material

change in circumstances.

2. Upon the emancipation of said minor children, the Husband's obligation for

support and maintenance of said children shall cease.

3. Emancipation with respect to said children shall occur or mean to have

occurred on the earliest happening of any of the following:

(a) Attaining the age of eighteen (18) or three months after graduation from
high school, whichever occurs later, if the child is not a full-time students
as provided in (b) below;

(b) If the child is attending a post-secondary accredited vocational training



5

school or college, at age 23, or the completion of such school or college, whichever occurs first; *So long as the child or children reside with the Wife and are dependent upon her for support.*

(c)   Marriage;

(d)   Principal residence away from the residence of the Wife (but residence at a boarding school, camp or college is not to be deemed a residence away from the Wife);

(e)   Death;

(f)   Entry into the military service of the United States (provided that emancipation shall be deemed to terminate upon discharge from such service; thereafter, emancipation shall be determined in accordance with other applicable provisions of this paragraph);

(g)   Becoming self-supporting through full-time employment, except that full-time employment during the time that the child is not in attendance at college during vacations and summer periods shall not be deemed emancipation. Such emancipation shall be deemed to terminate upon cessation of full-time employment by the child for any reason; thereafter, emancipation shall be determined in accordance with other applicable provisions of this section.

C.  ALIMONY AND DIVISION OF PROPERTY

Each party hereby relinquishes all claims whatsoever upon each other for alimony, support and maintenance under the laws of this Commonwealth or any other jurisdiction, excepting the right to demand performance of all the undertakings contained in this Agreement. Each, therefore, accepts these provisions in full and final settlement and satisfaction of all claims and demands for alimony or for any other provisions for support and maintenance, and fully discharges the other from all such claims and demands except as provided for in this Agreement. *The Husband shall however, take the living room set, a TV in livingroom, his tools and washer and drier and motorcycle seat and wh*

D.  TAXATION

1.  The Wife shall not be required to include as income for federal and state

*J LB*

6

*LB*

*In addition, each party shall make copies of the family photographs in his*

income tax purposes the sum of money paid to her by the Husband as child support pursuant to Paragraph III(B)(1) of this Agreement. The Husband shall not be entitled to deduct such payments on his federal or state income tax returns.

2. The parties agree that the Husband and Wife shall split the minor children as an exemption upon state and federal income tax returns for each year commencing with the present year. The Husband waives his right to such exemptions for each year if he is not current on all child support and other payments due under this Agrement. The parties shall execute upon request any IRS and other forms necessary to effectuate the terms of this clause.

3. The Husband and the Wife agree and understand that, with regard to any personal or real assets (whether held by them jointly or individually at the time of this Agreement) acquired by either of them as a result of the property division provided under this Agreement, they shall each be individually and solely responsible for any and all taxes due as a result of their subsequent transfer, sale or exchange of such asset.

E. MEDICAL EXPENSES

1. The Wife shall maintain her present health insurance or a similar medical insurance plan for the minor children for so long as the same is available to her through her present or future employment, including COBRA or other continuation coverage until such time as said children are emancipated. The Husband and Wife shall equally be responsible for the cost of uninsured medical and dental expenses for said children until such time as said children shall become emancipated. The Wife shall consult with

½ Unpaid medical from time of separation to present

T/ R          LB

and obtain the consent of the Husband prior to incurring any uninsured medical or dental expense for the children in excess of $100.00; the Husband shall not unreasonably withhold his consent to the same.

2. The Wife further agrees to maintain such health insurance for the Husband for so long as coverage for the Husband and the Wife is available to them through their present or future employment. If there is a judgment absolute in divorce, and the Wife or Husband is a member of an HMO or group hospital, surgical, medical or dental insurance plan, the Husband and Wife shall remain eligible for continuing benefits under such plan or plans and the Husband and Wife (non-member spouse) shall pay the additional premium, if any, for such coverage. This provision is intended to confer upon the non-member spouse all benefits set forth in or available under M.G.L. c. 175, M.G.L. c. 176A, M.G.L. c. 176B, M.G.L. c. 176, COBRA, ERISA, and all other applicable laws and administrative rules. If and when there is an extra premium attributable solely to the Husband's or Wife's coverage, Husband or Wife (non-member spouse) will be responsible for payment of the same.

3. If the Husband or the Wife remarries, the non-member spouse shall be entitled to continue his or her benefits under said plan or plans. If there is an additional premium demanded by the insurance carrier to continue such medical coverage for the non-member, then the non-member spouse shall pay the additional premium.

4. The Husband and Wife will be equally responsible for the cost of any necessary extraordinary medical/dental expenses not covered by insurance, such as therapy, cosmetic surgery, and/or orthodonture relative to the children. Each will

8

JLB

LA

reimburse the other within 30 days of a request of money spent beyond his or her

proportionate share.

    5. Each party shall be solely responsible for his or her own uninsured medical

expenses.

    F. <u>LIFE INSURANCE</u>

    1. Until the termination of all of his support obligations under this Agreement,

the Husband shall maintain in full force and effect his present life insurance policy or its

equivalent in the amount of $100,000.00. ~~Until the emancipation of the children, the~~

Husband shall designate the Wife as Trustee and the children as beneficiaries of the

policy. Thereafter, he shall designate the Wife as beneficiary of the policy, if and for so

long as he owes any support and alimony obligation to the Wife. Husband shall

provide proof of the existence of such life insurance to the Wife upon the Wife's

reasonable request. The Wife shall maintain life insurance at least in its current level as long as ~~the~~ any child is unemancipated

    2. If the insurance policy or policies required herein are not in full force and     The Husband shall be the beneficiary for the benefit of the children

effect at the time of a party's death, or are not in the requisite amount as set forth

herein, then the surviving party shall have a creditor's claim against the other's probate

and nonprobate assets and estate for the difference between the decedent party's

obligation under this Paragraph III(F) and the amount actually paid over.

    G. <u>REAL ESTATE</u>

    1. The marital home located at 7A Graham Avenue, Newbury, Massachusetts,

shall be placed on the market for sale.

    Upon the sale of the marital home, after deducting realtors' fees (if any), and the

9

JLB

IA

customary costs of closing, the joint marital debt which existed at the time of the

*See Article III G, Cont,*

separation shall be paid from the sale proceeds. Both parties agree to attempt to

reduce said marital debt by negotiation and agree to employ an attorney or

representative to negotiate said debt if necessary. *Any agent or attorney must supply a separate invoice detailing services to both parties regarding the negotiation.*

The balance of the proceeds shall be divided equally between Husband and

Wife, but only after Wife is paid the following from said proceeds:

(a)    the entire amount of delinquent child support payments owed through the
date that this Agreement is adopted by the Essex County Probate Court.
The delinquent child support through April 26, 2002 is $ ~~[illegible]~~ *$13,200*

(b)    The sum of $~~12,000.00~~ *9,000* shall be paid to Wife, which represents one-half of
the proceeds of a settlement that Husband received from Nault Honda in
Windham, New Hampshire, in a defective motorcycle claim.

(c)    The sum of $ ~~12,500~~ *13,000* shall be deducted from Husband's one-half
share and ~~placed in an escrow account for child support payments. If
Husband misses two consecutive weeks of child support, then Wife~~ may
~~draw from said escrow account. The escrow account shall be placed in
the Institution for Savings Bank and the Escrow Agent shall be~~
_____. *shall represent one year's advanced payment of child support ( 250×52)*

H. PERSONAL PROPERTY

1. The Husband and the Wife agree that except as otherwise specifically

provided in this Agreement, all property of any kind presently in possession of or

hereafter acquired by the Husband or by the Wife and all income and earnings of either

of them, shall constitute and be the sole and separate property of the person in whose

name the property stands or by whom the property is acquired or earned.

2. The Husband will keep the Chevrolet Truck (lease) and the Wife will keep the

Dodge Caravan (lease). Each party will be solely responsible for any outstanding

*J L B*

3. Jeffrey shall assign all right, title and interest to the 1999 Coleman Cheyenne Camper to Lisa. Jeffrey shall be credited $1,500 for said transfer from the proceeds of the sale of the home.

loans on said vehicles.

### I. ESTATES

1. The Husband and Wife each hereby waive any right at law or in equity to elect take against any Last Will made by the other party, including all rights of dower and curtsey. Should either be entitled at law to an intestate share of the estate of the other, each agrees, if he or she may effectively do so without having been deemed to have received the property and made a gift thereof for federal tax purposes, to promptly, completely and irrevocably renounce any such intestate share.

2. Except as otherwise provided in the within Agreement, the Husband and Wife also hereby waive, renounce and disclaim all and every interest of any kind or character which either may now have or may hereafter acquire in or to any real or personal property of the other, of whatever character and wherever located or situated, and whether now owned or hereafter acquired by either. Each party shall have the right to dispose of his or her property by Will or otherwise in her or his uncontrolled discretion, and each agrees that she or he shall not seek appointment as administrator or executor of the other's estate.

### J. LIABILITIES

1. After payment of the joint marital debt which existed at the time of the separation, Husband shall be solely responsible for any debt he incurred and Wife shall be solely responsible for any debt she incurred.

2. Each party agrees that he or she shall neither contract nor incur any expenses, debts, charges or liabilities in the name of or upon the credit of the other nor

11

JLB

LB

for which the other or the other's legal representative, property or estate will or may

become liable.  Each party further agrees that he or she will pay all debts, charges and

liabilities by that party after the date of the separation, and each party agrees to be

responsible for all marital debts or resolve said debts listed on the Financial Statement

filed by that party with the court on the date of the final hearing of the parties' divorce,

except only as otherwise specifically provided herein.  Each party further covenants at

all times to hold the other free, harmless and indemnified from and against all debts,

charges or liabilities heretofore or hereafter contracted or incurred by that party in

breach of the provisions of this Paragraph.

2. The Husband will assume responsibility for any remaining balance of the

following:  Macy's - Full Balance

Filene's - Full Balance

JC Penny with the exception of $157.00 incurred by Lisa (Lisa's responsibil...

These shall be paid no later than from the proceeds of the

3. The Wife will be responsible for the following:        sale of the house.

r 5,00°

## K.  COLLEGE AND POST-SECONDARY EDUCATIONAL EXPENSES

Both parties acknowledge the importance of post-secondary education for their

children, and agree to share the cost of the same equally.  Both parties agree to

cooperate fully in applying for and obtaining financial aid and educational loans for

such expenses.  The Husband shall have an equal voice in colleges

and expenses before he shall be obligated to contribute.

JLB          LB

12

### L. PENSIONS

Each party hereby waives any claims and/or rights whatsoever to the other party's pensions or retirement accounts. Husband states that he has no retirement accounts and Wife reports that she has the following: 401K retirement plan — present balance: $ _approximity_ $13,000 _Retirement_ _Savings Bank Employees_ _Association provission which,_ _This agreement does not apply to any other retirement provission which,_

### M. FUTURE LEGAL PROCEEDINGS _if any exists, shall be divided equally_

1. Any breach of any term or terms of the within Agreement shall give either party the right to take immediate action, either in law or in equity, concerning such breach. However, failure of either party to insist in any instance upon the strict performance of any of the terms hereunder shall not be construed as a waiver of any such terms for the future, and the same shall nevertheless continue in full force and effect.

2. Except as otherwise provided for above and for any cause of action for divorce, the parties hereby mutually release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them has ever had, now has or may hereafter have against the other, upon or by reason of any matter, cause of thing up to the date of the within Agreement, including but not limited to claims against each other's property, it being the intention of the parties that henceforth there shall exist as between them only such rights and obligations as are specifically provided for in this Agreement and any cause of action for divorce.

$\sqrt{} \angle B$

$\mu\beta$

13

<u>ARTICLE IV</u>

<u>INTERPRETATION</u>

A.  Except as otherwise expressly stated herein, this Agreement shall be binding on the respective heirs, next of kin, executors and administrators of the parties.

B.  Each of the parties hereto agree that he or she will do any and all acts and will execute, acknowledge and deliver at the reasonable request of the other and without cost or expense to the other any and all deeds, releases, waiver of rights or dower, curtsey and/or other instruments, assurances or writings which may at any time be reasonably necessary or proper to evidence or give full force and effect to this Agreement and the provisions hereof.

C.  If a judgment of divorce is hereafter entered in any Court of competent jurisdiction resulting from a complaint for divorce brought by either of the parties against the other, this Agreement, upon approval of the Court, shall be ~~incorporated~~ survive as an independent contract, except ~~and merged into said judgment; and~~ all issues affecting the minor child shall merge in the judgment and remain subject to the jurisdiction of the Probate Court.

D.  The Husband and Wife agree that no modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement.  No wavier of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature. Any provision of the within Agreement that is found to be unenforceable by any Court shall not affect the validity of any other provisions contained in the within Agreement.

E.  This Agreement has been executed or completed in Massachusetts and is a

14

JLB          LB

Massachusetts contract; and all matters affecting its interpretation and the rights of the

parties hereunder shall be governed by the laws of the Commonwealth of

Massachusetts at the time of the execution of the within Agreement.

**IN WITNESS WHEREOF**, the parties have set their hands and seals as of the

day and year first above written.

_____      _____
Lisa J. Bayko                                 Jeffrey L. Bayko, Sr.

### COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                             Date: May 24, 2002

    Then personally appeared the above-named Lisa J. Bayko and acknowledged
the foregoing instrument to be her free act and deed, before me

_____
Notary Public
My Commission Expires: 11\12\2005

### COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                             Date: May 24, 2002

    Then personally appeared the above-named Jeffrey L. Bayko, Sr. and
acknowledged the foregoing instrument to be his free act and deed, before me

_____
Notary Public
My Commission Expires: 5/27/05

15

JLB      LB

Article III G. Continued

From the proceeds of the sale of the marital home, $66,000.00 shall be given to Attorney Gary Evans to be held in escrow. Attorney Evans shall negotiate payment of "marital debt." He shall then pay the "marital debt" and, after deducting his fees for those services, pay the remaining portion, in equal shares to the parties. "Marital debt" shall mean those liabilities listed on the financial statement of the Husband filed on May 30, 2001.

Dated: May 24, 2002
        May 24, 2002

EXHIBIT C

**Commonwealth of Massachusetts**
The Trial Court

____Essex____ **Division**    **Probate and Family Court Department**    **Docket No.** _01D0875-DV1_

~~Order~~ — Judgment on Complaint for Civil/~~Criminal~~ Contempt

filed on___August 23, 2003_____    _ₓ.₃₃.ₗ₃._

_____Lisa Bayko_____ ,Plaintiff

v.

_____Jeffrey Bayko_____ ,Defendant

I.    After hearing, it is adjudged that the defendant is:

☐ ~~NOT GUILTY of Contempt of this Court.~~

☒ GUILTY of Contempt of this Court for having willfully:

☒ A. neglected and refused to pay child support/~~alimony~~, the arrearage of which is fixed at _$28,859.89 and an additional $4,838.11 for a total of $33,698.00_

☐ B. neglected and refused to pay health insurance premiums for the plaintiff and/or minor child(ren)

☐ C. neglected and refused to pay medical bills in the amount of $_____.

☐ D. neglected and refused to allow the plaintiff visitation with the minor child(ren) on _____
_____
_____

☐ E. neglected and refused to report to the Probation Department regarding his/her job seeking efforts.

☒ F. neglected and refused to pay the attorney fees owed to plaintiff's attorney in the amount of $_4,950.00_.

☒ G.    1.  For conveying mortgages to Helen Bayko and Michael Bayko on 7-19-02 ($46,360.00; Book 19056, page 153) and 5-25-03 ($6,300.00; Book 21193, page 386) against Jeffrey Bayko's interest in the marital home at 7A Graham Avenue, Newbury, MA in violation of Article III, Section J, Paragraph 2 of the Separation Agreement dated 5-24-02; and said mortgages are invalid against the plaintiff.
2.  Failure to pay college tuitions in the amount of $2,755.52 (order of July 2002).

(OVER)

CJ-D 404 (10/96)