UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11746 GAO

|   |   |
|---|---|
| GMAC MORTGAGE CORPORATION,<br>Plaintiff | )<br>)<br>)<br>)<br>) |
| V. | )<br>) |
| JEFFREY L. BAYKO, LISA J. BAYKO,<br>HELEN E. BAYKO, MICHAEL J. BAYKO,<br>HANS HAILEY, AND THE UNITED<br>STATES OF AMERICA,<br>Defendant | )<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT LISA BAYKO'S OPPOSITION TO THE
DEFENDANTS HELEN BAYKO AND MICHAEL J. BAYKO'S
MOTION FOR SUMMARY JUDGMENT
(Pursuant to Rule 56(b) of the Federal Rules of
Civil Procedure and Local Rule 7.1)**

I.     **STATEMENT OF FACTS**

1.     The Defendant's Jeffrey Bayko and Lisa Bakyo were divorced on May 24, 2002. A Judgment of Divorce Nisi entered on which survived as an independent contract with the exception of those provisions relating to health insurance, alimony, child custody, support and maintenance and visitation children, which were merged into the judgment of divorce. (**Exhibit 1** Judgment of Divorce Nisi and Separation Agreement recorded and

docketed on recorded and docketed on May 24, 2002 at the Essex County Probate and Family Court, Salem, MA)

2.The Defendant Hans Hailey represented the Defendant Jeffrey L. Bayko in the divorce proceedings and post divorce proceedings.

3.The Separation Agreement dated May 24, 2002 as executed by Lisa J. Bayko and Jeffrey L. Bayko and notarized by the Defendant Hans Hailey on behalf of Jeffrey Bayko made provision for the division of the parties property and liabilities and stated summarily in pertinent part:

"The balance of the proceeds shall be divided equally between the Husband and the Wife, but only after Wife is paid the following from said proceeds:

a.The entire amount for delinquent child support payments owed through the date of this Agreement is adopted by the Essex County Probate & Family Court. The delinquent child support through April 26, 2002 is $13,200.00.

b.The sum of $9,000.00 shall be paid to Wife, which represents one-half of the proceeds of a settlement that Husband received from Nault Honda in Windham, New Hampshire, in a defective motorcycle claim.

c.The sum of $13,000.00 shall be deducted from Husband's one-half share shall represent one year's advanced payment of child support.

d.The parties agreed that "he or she shall neither contract nor incur any expenses, debts, charges or liabilities in the name or upon the credit of the other not for which the other or the other's legal representative, property or estate will or may become liable." (Separation Agreement, Article III, Section J, Paragraph 2)

2

e.  From the Proceeds of the sale of the marital home, $66,000.00 shall be given to Attorney Gary Evans to be held in escrow. Attorney Gary Evans shall negotiate payment of the "marital debt." He shall than pay the "marital debt" and, after deducting his fees for those services, pay the remaining portion in equal shares to the parties. "Marital debt" shall mean those liabilities listed on the financial statement of the Husband filed on May 30, 2001. (Exhibit 1, Separation Agreement, Article III, Section G, Continued).

4. At the time of the Divorce Jeffrey Bayko submitted a financial statement signed under the pains and penalties of perjury and attested by Defendant Hans Hailey that did not list Helen Bayko and Michael Bayko as creditors. (Exhibit 2 Financial Statement of Jeffrey Bayko dated May 24, 2002).

5. On and before and as of May 24, 2004, the Defendant Hans Hailey had actual notice of the parties' divorce and terms of the separation agreement.

6. Defendant Attorney Gary Evans was named in the Separation Agreement to represent both Jeffrey L. Bayko and Lisa Bayko with regards to the work-out of the parties "marital debt."

7. On and before May 24, 2002, Defendant Hans Hailey had actual notice and full knowledge of the parties' divorce and terms of the separation agreement.

8. As of May 24, 2002, Defendant Attorney Gary Evans had a fiduciary duty to the Plaintiff Lisa Bayko.

9. On or about July 19, 2002, the Defendant Jeffrey Bayko, Sr. encumbered the property at 7A Graham Ave., Newbury, Massachusetts by granting to his parents, the

3

Defendants, Michael Bayko and Helen Bayko, a mortgage in the amount of $46,360.00. Said Mortgage was drafted and notarized by Attorney Gary Evans. (**Exhibit 3** Mortgage dated July 19, 2002)

10. Defendant Attorney Gary Evans drafted the mortgage, mortgage deed and notarized the same and the same was recorded on August 12, 2002 at the South Essex County Registry of Deed.

11. On May 1, 2003, the Court (J. Kaegan) ordered, "when the marital home is sold, the Defendant share of the net proceeds shall beheld in escrow both plaintiff's and Defendant's counsel pending further order of the Court." (**Exhibit 4** Order dated May 1, 2003)

12. On or about May 25, 2003, the Defendant Jeffrey Bayko, Sr. encumbered the property at 7A Graham Ave., Newbury, Massachusetts by granting to the Defendants, Michael Bayko and Helen Bayko, a mortgage in the amount of $6,304.00. Said Mortgage was drafted and notarized by Attorney Gary Evans. (**Exhibit 5** Mortgage dated, May 25, 2003)

13. On May 25, 2003, Attorney Gary Evans drafted a mortgage, mortgage deed and notarized the same and the same was recorded on July 8, 2003 at the South Essex County Registry of Deeds.

14. On and before June, 2001 and continuing thereafter, the Defendant Helen Bayko had actual notice of Defendant Jeffrey L. Bayko's divorce.

15. On and before June, 2001 and continuing thereafter, the Defendant Michael Bayko had actual notice of the Defendant Jeffrey L. Bayko's divorce.

16.     The Defendants Helen Bayko and Michael Bayko stated in their Verified statement of Facts dated March 15, 2006 that "Most funds advanced by Michael J. Bayko and Helen E. Bayko were used by their son to pay child support and attorney's fees related to the divorce of Jeffrey Bayko and Lisa Bayko." (See paragraph 7 of the verified Statement of Facts in Support of the defendants Helen and Michael Bayko's Motion for Summary Judgment.)

17.     The Defendants Helen Bayko and Michael Bayko supported their motion for summary judgment with checks dating back to June of 2001. (See Exhibit 7 of the Defendant Helen Bayko and Michael Bayko motion for summary judgment.)

18.     On July 2, 2003, Lisa J. Bayko and Jeffrey L. Bayko stipulated that "any uninsured medical and college expenses owed by the [Jeffrey Bayko] shall be paid out of the monies held in the escrow account Order dated 5/1/03" and the Defendant Hans Hailey represented Jeffrey L. Bayko. (**Exhibit 6** Order dated July 2, 2003).

19.     On July 31, 2003, the Defendant Lisa Bayko first became aware of the mortgages that were conveyed by Jeffrey L. Bayko to his parents Helen Bayko and Michael Bayko. (**Exhibit 7** Correspondence from Attorney Charles Rotondi to Attorney Gary Evans)

20.     On August 13, 2003, the Defendant Lisa Bayko filed a complaint for Contempt against the Defendant Jeffrey L. Bayko for conveyance of the mortgages and unpaid child support. (**Exhibit 8** Complaint for Contempt dated August 23, 2003)[1]

21.     On August 13, 2003, the Defendant Lisa Bayko file a complaint in equity to set aside the mortgages and on September 15, 2004 said complaint was dismissed without

---

[1]     The hearing on the Complaint for Contempt was stayed until September of 2004, due to the defendant Jeffrey L. Bayko's bankruptcy filings.

prejudice for lack of subject matter jurisdiction.[2] (**Exhibit 9** Memorandum of Decision dated September 15, 2004)

22.    On September 23, 2004, the Essex County Probate & Family Court found the Defendant Jeffrey L. Bayko in Contempt for conveying the Mortgages dated July 19, 2002 and May 25, 2003 to his parents Helen Bayko and Michael Bayko and further ordered that said mortgages were invalid as to Lisa J. Bayko (**Exhibit 10** Amended Contempt Judgment dated February 9, 2005 recorded and docketed on recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.)

23.    On September 23, 2004, the Essex County Probate and Family Court (J. DiGangi) found Jeffrey L. Bayko in contempt for non-payment of child support in the amount of $28,859.89 and the defendant was incarcerated for 150 days for non-payment of the same. (**Exhibit 10** Amended Contempt Judgment dated February 9, 2005 recorded and docketed on recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.)

24.    On November 12, 2004, the Defendants Helen and Michael Bayko's filed a motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, issued on September 24, 2004 and on December 2, 2004 the Essex County Probate & Family Court (J. DiGangi) denied Helen and Michael Bayko's Motion for Reconsideration. (**Exhibit No. 11** Order of the Probate and family Court dated December 2, 2004)

---

[2].    At the time the Plaintiff's complaint in equity was pending, GMAC had filed an interpleaer action in the Probate & Family Court.

25. GMAC foreclosed on the property on March 12, 2004 and the property was sold at auction for $307,500.00 and there are surplus funds of $186,742.59.

26. The Defendant Lisa Bayko was released of any and all obligations to the Defendant United States of America, Internal Revenue Service.

27. On May 12, 2005, Lisa Bayko paid Jeffrey Bayko's debt with the Massachusetts Department of Revenue, $10,220.90, so as to remove them as a party Defendant to this action and resolved the jurisdictional issue, so that this action could proceed in the United States District Court.

28. On May 12, 2005, the Plaintiff retained $11,045.00 from Lisa Bayko's share of the sales proceeds, representing Jeffrey Bayko's one-half interest in the event that the Defendant United States is successful in their marshalling claim.

29. On October 18, 2005, the Essex County Probate and Family Court (J. DiGangi) found Jeffrey L. Bayko in contempt for non-payment of child support in the amount of $42,784.88 and the defendant was incarcerated for 150 days for non-payment of the same. (**Exhibit 12** Judgment of Contempt dated October 18, 2005)

30. The Defendant Lisa Bayko is owed $48,034.88 in back child support as of March 13, 2006. (**Exhibit 13** Statement of Department of Revenue)

31. Pursuant to the Judgment of Divorce Nisi and other Orders of the Court the Defendant Lisa Bayko is entitled to take from Jeffrey Bayko's share of the proceeds:

| | |
|---|---|
| One year's child support in advance: Separation Agreement dated 5/24/04: | $13,000.00 |
| Child Support Arrears, Contempt Judgment dated September 23, 2004, which, includes $18,000.00 Separation Agreement: | $48,034.88 |

7

| | |
|---|---|
| College Tuitions; Separation Agreement And Order dated July 7, 2003 | $ 7,413.99 |
| Defendant's Credit Card Liabilities Separation Agreement: | $ 4,475.73 |
| Joint Credit Card Debts Separation Agreement | $33,000.00 |
| Uninsured medical Expenses | $1,553.33 |
| Settlement Proceeds | $9,000.00 |
| **Total** | **$116,457.95** |

II. **ARGUMENT**

A. <u>**In General**</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir.1991) (quoting <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir.1990)). Summary judgment is inappropriate once the nonmoving party sets forth specific facts showing that there is no genuine triable issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is incumbent upon a court confronted with summary judgment to view the facts in the light most favorable to the nonmovant, and all reasonable inferences from these facts are to be drawn in its favor. <u>Thomas v. Eastman Kodack Co</u>, 183 F. 3rd 38, 42 (1st Cir. 1999); <u>O'Connor v. Steeves</u>, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor and making a determination that a genuine issue of material fact exists, the moving party would not entitled to judgment as a matter of law.

The moving parties have failed to cite any authorities as to why they are entitled to summary judgment as a matter of law

### B. The Amended Contempt Order of the Probate and Family Court Invalidated the mortgage as to Lisa Bayko

The Defendant Lisa Bayko is seeking enforcement the Judgment and Orders of the Essex County Probate & Family Court dated May 24, 2002. 28 U.S.C. 1738; In re Boston Regional Medical Center, Inc., 298 B.R. 1, 19 (2003). This is not foreign to this Court. See Callahan v. Callahan 247 F.Supp.2d 935 (S.D. Ohio 2002) and Dion v. Dion 652 F.Supp. 1151 (E.D. Pa. 1987).

The separation agreement dated May 24, 2002 strictly prohibited "the parties from neither contract nor incur any expenses, debts, charges or liabilities in the name or upon the credit of the other not for which the other or the other's legal representative, property or estate will or may become liable." (Separation Agreement, Article III, Section J, Paragraph 2). Jeffrey Bayko's conveyances on July 12, 2002 and May 25, 2003 were contrary to the terms of the separation agreement which resulted in a complaint for contempt.

On September 25, 2004 the Court found Jeffrey L. Bayko in contempt for conveying said mortgages. The Contempt Judgment was amended in February 2005 whereby the Essex County Probate and Family Court "invalidated the mortgages as to Lisa Bayko." This Court should give full faith and credit to the Amended Contempt Judgment of the Essex Probate & Family Court. Any attempt to re-litigate these issues would be barred by the doctrine of res judicata.

### C. The Separation Agreement Dated May 24, 2004 should be enforced under the Laws of the Commonwealth of Massachusetts

M.G.L. c. 209 section 32D states an that "...under section thirty-two a judgment shall be entered directing a deed, conveyance or release if certain real estate, or interest therein, be made, such a judgment shall create an equitable right to its enforcement subject to the provision for recording of notice in section fifteen of chapter one hundred and eighty-four." Lisa Bayko contends that Judgment, which predates the mortgages and granted Lisa Bayko an interest in Jeffrey Bayko's share the marital residence, should be enforced and take any and all precedent over any alleged interest of Helen Bayko and Michael Bayko.

    1.    **The Defendant's Helen Bayko and Michael Bayko Had Actual knowledge of the Divorce and Therefore Any Notice Required Under M.G. L. c. 184 section 15 Is Not Required**

Helen Bayko and Michael Bayko had actual notice of the divorce and therefore are not required to have further notice under the provisions of M.G.L. c. 184 section 15.

M.G.L. c. 184 section 15 provides, in pertinent part

A wit of entry or other proceeding that affects the title to real property or the use and occupation thereof or the building thereon, shall not have any effect except against the parties thereto, their heirs and devisees and **persons having actual non-record notice**........

Helen and Michael Bayko admittedly had actual knowledge of Jeffrey and Lisa Bayko's divorce proceedings. (In their verified statement of facts, paragraph 7, they state that any monies given to Jeffrey were for child support and attorneys fees.) The Court has held "that when persons have actual knowledge of an agreement,

10

actual knowledge of an unrecorded interest, they are not in the position to maintain a 'hear no evil see no evil' approach to the matter." **Emmons v. White** 58 Mass.App.Ct. 54, 58 (2003). Not only are the judgment of divorce nisi and separation agreement a public record but both Attorney Gary Evans, the drafter of the mortgages, and the Defendant Hans Hailey were in possession of the judgment of divorce nisi and the agreement. A cursory review of the documents would have revealed that Jeffrey Bayko was prohibited from making such a conveyance and Lisa Bayko had an interest in Jeffrey Bayko's share of the proceeds of the marital residence.

These were not arms length transactions and can be qualified as a "conspiracy to deprive Lisa of her interest in Jeffrey's share of the marital estate and such an interference with the division of the marital estate is not an activity within the purpose of c. 184 section 15, to protect transferees in good faith." (See **Feldman v. Feldman** 20 Mass.App. Ct 349 (1985). Where the Court set aside a mortgage between the husband and his woman friend, despite the fact that the separation agreement was not recorded, because it deprived the Wife of her interest in the marital estate.) (See also **Aronson v. Aronson** 25 Mass. App. Ct. 164, 167 (1987), citing **Rice v. Rice**, 372 Mass. 398, 400 (1977). The mortgages are not supported by the proper consideration and there is a question as to whether any funds given were gifts and their was no expectancy of repayment.

**C.  A QUESTION OF FACT EXISTS AS TO WHETHER THEIR WAS ACTUAL CONSIDERATION GIVEN IN EXCHANGE FOR THESE MORTGAGES AND WHETHER ALLOWANCE OF THE MOTION FOR SUMMARY JUDGMENT WOULD BE UNFAIR AND INEQUITABLE**

A question of fact exists as to whether the funds advanced by the moving parties to the Defendant Jeffrey Bayko were actual gifts or loans. The checks are dated between June of 2001 and April of 2002, during the pendency of the divorce litigation. The parties were divorced in May of 2002 and at the time of the hearing Jeffrey Bayko submitted a financial statement to the Essex County Probate & Family Court that was signed under the pains and penalties of perjury and attested to by the Defendant Attorney Hans Hailey. The financial statement makes no mention of the Defendants Helen Bayko and Michael Bayko being creditors and any monies being owed to them. Secondly, the checks total $27,339.61 and fall short of the consideration needed to support a $46,360.00 mortgage.

Lastly, an allowance of the moving parties' motion would be inequitable, leaving Lisa Bayko with unpaid child support obligations and other entitlement to collect against a judgment proof debtor Jeffrey Bayko.

### III.  CONCLUSION

Wherefore, the Defendant Lisa Bayko respectfully requests that this Honorable Court deny the Defendants Helen and Michael Bayko's Motion for Summary Judgment.

In support of the Defendant Lisa Bayko's Opposition is:

A.  Affidavit of Lisa Bayko

**B.  Exhibits**

    1.  Judgment of Divorce Nisi and Separation Agreement

2. Financial Statement of Jeffrey Bayko dated May 24, 2002
3. Mortgage dated July 19, 2002
4. Order of the Essex County Probate & Family Court dated May 1, 2003
5. Mortgage dated, May 25, 2003
6. Order of the Essex County Probate & family Court dated July 2, 2003
7. Correspondence from Attorney Charles Rotondi to Attorney Gary Evans dated July 31, 2003
8. Complaint for Contempt dated August 23, 2003
9. Memorandum of Decision of the Essex County probate & Family Court dated September 15, 2004
10. Amended Contempt Judgment dated February 9, 2005
11. Order of the Probate and family Court dated December 2, 2004)
12. Judgment of Contempt dated October 18, 2005
13. Statement of Department of Revenue

Respectfully submitted, The
Defendant, Lisa J. Bayko by her
Counsel,

CHRISTINE ANN FARO
BBO # 552541
79 State Street
Newburyport, MA 01950
(978) 462-4833

CERTIFICATE OF SERVICE

I, Christine Ann Faro, attorney for the Defendant, hereby certify that on this day of April 2006, I served a copy of the Defendant's Lisa J. Bayko's Opposition to the defendants, Helen Bayko and Michael J. Bayko's Motion for Summary Judgment upon the parties of record by serving a copy of the same upon their counsel of record by first class mail, postage prepaid as follows:

Attorney Hans Hailey
225 Friend Street
Boston, MA 02144

Lydia Bottome Turanchik
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55,
Ben Franklin Station
Washington, D.C. 20044

Attorney Timothy Sullivan
Andover Law, P.C.
451 Andover Street
Andover, MA 01845

CHRISTINE ANN FARO

13