UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11746 GAO

| | |
|---|---|
| GMAC MORTGAGE CORPORATION,<br>Plaintiff | )<br>)<br>)<br>)<br>) |
| V. | )<br>) |
| JEFFREY L. BAYKO, LISA J. BAYKO,<br>HELEN E. BAYKO, MICHAEL J. BAYKO,<br>HANS HAILEY, AND THE UNITED<br>STATES OF AMERICA,<br>Defendant | )<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF LISA BAYKO
### IN SUPPORT OF HER OPPOSITION TO THE DEFENDANT
### HELEN BAYKO AND MICHAEL BAYKO'S MOTION FOR
### SUMMARY JUDGMENT

I, Lisa Bayko, Plaintiff in the above-entitled action, deposed under oath state as follows:

1.      I was married to the Defendant Jeffrey Bayko and divorced from him on or about May 24, 2002. Five children were born of our marriage. At the time of the divorce and presently three of the five children are unemancipated. At the time of the divorce, Jeffrey Bayko was ordered to pay child support in the amount of $250.00 per week..

2.      During my marriage to Jeffrey Bayko and during the pendency of the divorce action, I lived at 7A Graham Ave., Newbury, MA and the Defendants Helen Bayko and Michael Bayko (Jeffrey's parents and the grand parents to my children) lived next door on the adjacent property at 7 Graham Avenue, Newbury, MA.

3.      Helen and Michael Bayko were aware of my divorce from Jeffrey and the divorce proceeding. They were aware that the marital home needed to be sold pursuant to the terms of the separation agreement and interfered with the sale of the marital home in

2002 by filing an objection to the perking of the septic system which was needed in conjunction with the sale of said property and stated in as a contingency in the purchase and sale agreement.

4.    On May 24, 2002, when I entered the Separation Agreement, I agreed that Attorney Gary Evans be appointed to represent both Jeffrey and I with regards to the work out of the credit card debt. At no time was I made aware that Attorney Gary Evans represented Jeffrey with regards to any pending legal matter but was only working with him on his IRS and DOR obligations. It was represented to me that Gary Evans would represent both of us.

5.    At no time during our uncontested divorce proceeding and prior to that date did Jeffrey Bayko disclose on any financial statement that he owed debt to Helen Bayko and Michael Bayko.

6.    Attorney Gary Evans never informed me that he had drafted two mortgages, dated May 25, 2003 and July 19, 2002, secured by the property located at 7A Graham Ave. I never gave him authorization to do so and I deem said action to be contrary to my interests and the terms of the separation agreement.

7.    The first time I was made aware of the mortgages was on July 2, 2003. Prior to this date there were two contempt hearings, May 2, 2003 and September 18, 2002 at which time Jeffrey Bayko had to present financial statements and did not disclose the existence of the mortgage to his parents dated July 16, 2002.

8.    Helen Bayko and Michael Bayko have refused to release the mortgages dated July 19, 2002 and May 25, 2003.

9.    The marital residence located at 7A Graham Ave. was to be sold to a private party but because of the mortgages conveyed to Helen and Michael Bayko and Jeffrey Bayko's tax liens, the title could not be cleared and because of the existence of the liens and mortgages, I would have been entitled to nothing, not even my one-half share.

10.    A foreclosure of the marital home was scheduled for September 15, 2003 at 1:00 p.m. and was stopped due to Jeffrey L. Bayko filing bankruptcy. The marital residence was eventually foreclosed on March 12, 2004. Helen Bayko and Michael Bayko were present at the foreclosure.

11.    Pursuant to the terms of the separation agreement, I am to take the following amounts from Jeffrey Bayko's share of the proceeds from the marital residence:

        One year's child support in advance:
        Separation Agreement dated 5/24/04:          $13,000.00

        Child Support Arrears, Contempt
        Judgment dated September 23, 2004,

| | | |
|---|---|---|
| which, includes $18,000.00<br>Separation Agreement: | | $48,034.88 |
| College Tuitions; Separation Agreement<br>And Order dated July 7, 2003 | | $ 7,413.99 |
| Defendant's Credit Card Liabilities<br>Separation Agreement: | | $ 4,475.73 |
| Joint Credit Card Debts<br>Separation Agreement | | $33,000.00 |
| Uninsured medical Expenses | | $1,553.33 |
| Settlement Proceeds | | $9,000.00 |
| | **Total** | **$116,457.95** |

12.    Jeffrey Bayko currently owes me $116,457.95 in back child support and other child support obligations and other debts and has agreed to pay the same from his share of the marital estate as contracted to in the separation agreement dated May 24, 2002 and stipulation dated July 2, 2003.

Signed under the pains and penalties of perjury on this    day of April 2006.

LISA J. BAYKO

## Commonwealth of Massachusetts
### The Trial Court
**Probate and Family Court Department**

Essex _____ **Division**

**Docket No.** 01D0875-DV1

### Judgment Of Divorce Nisi

_____ Lisa J. Bayko _____ , Plaintiff

of _Newbury_____ in the County of _____Essex_____

v.

_____ Jeffrey L. Bayko, Sr. _____ , Defendant

of _Boxford_____ in the County of _____Essex_____

All persons interested having been notified in accordance with the law, and after hearing, it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff for the cause of _____

_____

_____ Irretrievable Breakdown of the Marriage _____

_____

as provided by Chapter 208, sections 1, B/2 and that upon and after the expiration of ninety days from the entry of this judgment, it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order. It is further ordered that

the Separation Agreement of the parties filed May 24, 2002 is fair and reasonable and not the product of fraud or coercion and does make proper provisions for custody, support and maintenance, for alimony and for the disposition of marital property and is incorporated, not merged into this Judgment and shall survive as an independent contract except for those provisions relating to health insurance, alimony, child custody, support and maintenance and visitation which shall merge and not survive. The parties shall comply with the terms thereof.

All until further order of the Court.

Date May 24, 2002

_____
**Justice of Probate and Family Court**

CJ-D 403 (2/90)



## SEPARATION AGREEMENT

### ARTICLE I

### THE PARTIES

This Agreement is made this 29th day of May , 2002, by and between Jeffrey L.

Bayko, Sr. (hereinafter called the "Husband") and Lisa J. Bayko (hereinafter called the

"Wife").  All references in the within Agreement to "parties" shall mean the above-

named Husband and Wife.

### ARTICLE II

### RECITALS

A.  The Husband and the Wife were married on August 21, 1976.

B.  There are five children of the marriage; namely Jeffrey Bayko, Jr., who was

born on December 29, 1976; Corey, who was born on September 4, 1983; Christopher,

who was born on December 19, 1984; Jillian, who was born on August 13, 1992; and

Tyler, who was born on June 17, 1994.  Any reference in the within Agreement to

"children" shall mean the above-named minor children.

C.  Serious and irreconcilable differences have arisen between the Husband and

the Wife.  The Husband and the Wife acknowledge that there has been an irretrievable

breakdown of the marriage.  The within Agreement shall be binding upon the parties

without respect to whether they are living separately.

D.  The Husband and the Wife desire and intend at this time and by this

instrument to make a final and complete settlement of all matters relating to the

interests and obligations of each and with respect to, but not limited to support,

1

JLB    µB

# SEPARATION AGREEMENT

## ARTICLE I

## THE PARTIES

This Agreement is made this *7th* day of *May* , 2002, by and between Jeffrey L.

Bayko, Sr. (hereinafter called the "Husband") and Lisa J. Bayko (hereinafter called the

"Wife"). All references in the within Agreement to "parties" shall mean the above-

named Husband and Wife.

## ARTICLE II

## RECITALS

A. The Husband and the Wife were married on August 21, 1976.

B. There are five children of the marriage; namely Jeffrey Bayko, Jr., who was

born on December 29, 1976; Corey, who was born on September 4, 1983; Christopher,

who was born on December 19, 1984; Jillian, who was born on August 13, 1992; and

Tyler, who was born on June 17, 1994. Any reference in the within Agreement to

"children" shall mean the above-named minor children.

C. Serious and irreconcilable differences have arisen between the Husband and

the Wife. The Husband and the Wife acknowledge that there has been an irretrievable

breakdown of the marriage. The within Agreement shall be binding upon the parties

without respect to whether they are living separately.

D. The Husband and the Wife desire and intend at this time and by this

instrument to make a final and complete settlement of all matters relating to the

interests and obligations of each and with respect to, but not limited to support,

1

property, and estate rights in the case of the death of either of them prior to the entry of a final judgment of divorce and after the entry of a final judgment of divorce should a court see fit to grant a divorce between the Husband and the Wife. The above statement of purpose of the within Agreement shall not in any way limit the effects of any of the covenants of the parties contained in ARTICLE III or the interpretation of the Agreement contained in ARTICLE IV of the within Agreement. The obligation of the parties for support and maintenance of said minor children shall be separate from all other obligations contained in the within Agreement, having in mind the parties' inability to bargain away the rights of their child support from either party.

E. The Wife and the Husband are parties to a complaint for divorce in the Essex County Probate and Family Court. The within Agreement shall be binding upon the parties at all time hereafter whether they are living apart or living together should they become divorced in the future and nothing concerning the state of the marriage of the parties or their living circumstances shall affect the validity of the within Agreement, and the same shall nevertheless continue in full force and effect.

F. The Husband and the Wife declare and acknowledge that each of them understands the position, circumstances and prospect of the other, and the terms, provisions and conditions of the within Agreement and believe its terms, provisions and conditions to be fair and reasonable. The parties further state that they have negotiated the terms of this Agreement directly, that each has had ample opportunity to obtain independent legal advice from counsel of his or her own choosing, and that, having read this Agreement line by line, they freely and fully accept the terms,

2

conditions and provisions hereof and enter into this Agreement voluntarily and without any coercion whatsoever. The parties further acknowledge and declare that this Agreement contains the entire agreement between the parties hereto and that there are no agreements, or inducements leading to the execution hereof, expressed or implied, other than those herein set forth and that no oral statement or prior written matter extrinsic to this Agreement shall have any force or effect. The parties represent and acknowledge that each has fully described their assets and liabilities to the other party to the best of their knowledge and ability.

IN CONSIDERATION OF THE COVENANTS AND AGREEMENTS HEREIN CONTAINED, THE HUSBAND AND THE WIFE HEREBY AGREE AS FOLLOWS:

### ARTICLE III

### COVENANTS OF THE HUSBAND AND THE WIFE

#### A. CUSTODY AND VISITATION

1. The Husband and the Wife shall have joint legal custody of the minor children of the parties, and the Wife shall have the primary physical custody of said children during such children's minority.

2. The Husband and the Wife shall confer with each other concerning all matters of policy involving the health and education of such children with the intent to adopt a harmonious policy best calculated to promote the welfare of the children. Each shall have the right to consult with any educational institution attended by the children and each shall further have the right to consult with any medical facility or doctor who is treating the children for any condition whatsoever.

3

$\sqrt{L}B$        $LB$

3.  The Husband shall have the right to reasonable visitation with the minor children upon reasonable notice to the Wife.  Such visitation shall include but not be limited to two nonconsecutive weeks each year, dates to be arranged by agreement between the parties.  The parties agree that the Husband's visitation should be flexibly scheduled so that changes in the work schedules of the Husband and the Wife as well as variations in the school and activity schedules of the children can be accomodated with as little inconvenience and difficulty as possible to all parties.  The Husband and the Wife shall each have the right to take trips with the children at reasonable times and upon reasonable notice to the other party in such a manner that such trips will not interfere with the childrens' schooling.  Both Husband and Wife agree that all visitation shall be exercised with due regard to the best interests of the children.

4. The Husband shall provide the Wife with the address and phone number of where the minor children will be staying, if other than at the Husband's home, as well as the dates and times for departure and return.  Similarly, the Wife shall provide the same to the Husband for any trips with the minor children away from the Wife's home, Additionally, the Husband must provide the Wife with at least two weeks advanced notice of any visit longer than three days and two nights in duration.

5. Each parent will have the opportunity to spend time with the children during vacation and holiday periods.  Holidays will be discussed ahead of time between the parents.

6. Neither parent shall, in the presence of the children, utter or cause to be uttered any disparaging remarks or statements about the other apparent, nor shall

4

JLB

LB

either parent permit the children to remain in the presence of any person who, to the knowledge of such parent, is making or habitually makes any such disparaging remarks. Each parent shall exercise his or her best efforts to keep any disparagement of the other parent from the children. The parties agree and intend that they shall raise their children with an equal love and respect for both parents and with the understanding — especially in view of the separation of the parties — that both parents love them equally and are equally responsible for them.

   B. CHILD SUPPORT

   1. The Husband agrees that he shall pay to the Wife for the support of the parties' minor children the sum of $250.00 per week, commencing forthwith. The parties agree that the Essex County Probate and Family Court shall have continuing jurisdiction over the determination and review of child support under the provisions of this paragraph. Nothing in this paragraph shall be construed as a waiver of either parties' right to petition for a modification of support at any time based upon a material change in circumstances.

   2. Upon the emancipation of said minor children, the Husband's obligation for support and maintenance of said children shall cease.

   3. Emancipation with respect to said children shall occur or mean to have occurred on the earliest happening of any of the following:

      (a)    Attaining the age of eighteen (18) or three months after graduation from high school, whichever occurs later, if the child is not a full-time students as provided in (b) below;

      (b)    If the child is attending a post-secondary accredited vocational training



5

school or college, at age 23, or the completion of such school or college, whichever occurs first; *So long as the child or children reside with the Wife and are dependent upon her for support.*

(c)  Marriage;

(d)  Principal residence away from the residence of the Wife (but residence at a boarding school, camp or college is not to be deemed a residence away from the Wife);

(e)  Death;

(f)  Entry into the military service of the United States (provided that emancipation shall be deemed to terminate upon discharge from such service; thereafter, emancipation shall be determined in accordance with other applicable provisions of this paragraph);

(g)  Becoming self-supporting through full-time employment, except that full-time employment during the time that the child is not in attendance at college during vacations and summer periods shall not be deemed emancipation. Such emancipation shall be deemed to terminate upon cessation of full-time employment by the child for any reason; thereafter, emancipation shall be determined in accordance with other applicable provisions of this section.

C. ALIMONY AND DIVISION OF PROPERTY

Each party hereby relinquishes all claims whatsoever upon each other for

alimony, support and maintenance under the laws of this Commonwealth or any other

jurisdiction, excepting the right to demand performance of all the undertakings

contained in this Agreement. Each, therefore, accepts these provisions in full and final

settlement and satisfaction of all claims and demands for alimony or for any other

provisions for support and maintenance, and fully discharges the other from all such

claims and demands except as provided for in this Agreement. *The Husband, shall however, take the living room set, a TV in living room, his tools*

D. TAXATION  *and washer and drier and motorcycle seat and un*

1. The Wife shall not be required to include as income for federal and state *↓*

*JLB*

6

*LB*

*In addition, each party shall make copies of the family photographs in his ...*

income tax purposes the sum of money paid to her by the Husband as child support pursuant to Paragraph III(B)(1) of this Agreement. The Husband shall not be entitled to deduct such payments on his federal or state income tax returns.

2. The parties agree that the Husband and Wife shall split the minor children as an exemption upon state and federal income tax returns for each year commencing with the present year. The Husband waives his right to such exemptions for each year if he is not current on all child support and other payments due under this Agrement. The parties shall execute upon request any IRS and other forms necessary to effectuate the terms of this clause.

3. The Husband and the Wife agree and understand that, with regard to any personal or real assets (whether held by them jointly or individually at the time of this Agreement) acquired by either of them as a result of the property division provided under this Agreement, they shall each be individually and solely responsible for any and all taxes due as a result of their subsequent transfer, sale or exchange of such asset.

E. MEDICAL EXPENSES

1. The Wife shall maintain her present health insurance or a similar medical insurance plan for the minor children for so long as the same is available to her through her present or future employment, including COBRA or other continuation coverage until such time as said children are emancipated. The Husband and Wife shall equally be responsible for the cost of uninsured medical and dental expenses for said children until such time as said children shall become emancipated. The Wife shall consult with

½ Unpaid medical from time of separation to present

J / R            LB

and obtain the consent of the Husband prior to incurring any uninsured medical or dental expense for the children in excess of $100.00; the Husband shall not unreasonably withhold his consent to the same.

2. The Wife further agrees to maintain such health insurance for the Husband for so long as coverage for the Husband and the Wife is available to them through their present or future employment. If there is a judgment absolute in divorce, and the Wife or Husband is a member of an HMO or group hospital, surgical, medical or dental insurance plan, the Husband and Wife shall remain eligible for continuing benefits under such plan or plans and the Husband and Wife (non-member spouse) shall pay the additional premium, if any, for such coverage. This provision is intended to confer upon the non-member spouse all benefits set forth in or available under M.G.L. c. 175, M.G.L. c. 176A, M.G.L. c. 176B, M.G.L. c. 176, COBRA, ERISA, and all other applicable laws and administrative rules. If and when there is an extra premium attributable solely to the Husband's or Wife's coverage, Husband or Wife (non-member spouse) will be responsible for payment of the same.

3. If the Husband or the Wife remarries, the non-member spouse shall be entitled to continue his or her benefits under said plan or plans. If there is an additional premium demanded by the insurance carrier to continue such medical coverage for the non-member, then the non-member spouse shall pay the additional premium.

4. The Husband and Wife will be equally responsible for the cost of any necessary extraordinary medical/dental expenses not covered by insurance, such as therapy, cosmetic surgery, and/or orthodonture relative to the children. Each will

8

$\mathcal{J} \mathcal{L} \mathcal{B}$

$\mathcal{LA}$

reimburse the other within 30 days of a request of money spent beyond his or her proportionate share.

5. Each party shall be solely responsible for his or her own uninsured medical expenses.

F. <u>LIFE INSURANCE</u>

1. Until the termination of all of his support obligations under this Agreement, the Husband shall maintain in full force and effect his present life insurance policy or its equivalent in the amount of $100,000.00. Until the emancipation of the children, the Husband shall designate the Wife as Trustee and the children as beneficiaries of the policy. Thereafter, he shall designate the Wife as beneficiary of the policy, if and for so long as he owes any support and alimony obligation to the Wife. Husband shall provide proof of the existence of such life insurance to the Wife upon the Wife's reasonable request. *The Wife shall maintain life insurance at least in its current level as long as ~~the~~ any child is unemancipated. The Husband shall be the beneficiary of the benefit of the Children*

2. If the insurance policy or policies required herein are not in full force and effect at the time of a party's death, or are not in the requisite amount as set forth herein, then the surviving party shall have a creditor's claim against the other's probate and nonprobate assets and estate for the difference between the decedent party's obligation under this Paragraph III(F) and the amount actually paid over.

G. <u>REAL ESTATE</u>

1. The marital home located at 7A Graham Avenue, Newbury, Massachusetts, shall be placed on the market for sale.

Upon the sale of the marital home, after deducting realtors' fees (if any), and the



customary costs of closing, the joint marital debt which existed at the time of the

*See   Article III  G. Cont,*

separation shall be paid from the sale proceeds. Both parties agree to attempt to

reduce said marital debt by negotiation and agree to employ an attorney or

representative to negotiate said debt if necessary. *Any agent or attorney must supply a*

*Speaotive invoice detailing services to both parties regarding the*

The balance of the proceeds shall be divided equally between Husband and *negotiation.*

Wife, ~~but only after Wife is paid the~~ following from said proceeds:

(a)     the entire amount of delinquent child support payments owed through the
date that this Agreement is adopted by the Essex County Probate Court.
The delinquent child support through April 26, 2002 is $ ~~3,000~~ *13,200*

(b)     The sum of $1~~2,000~~ *9,000* shall be paid to Wife, which represents one-half of
the proceeds of a settlement that Husband received from Nault Honda in
Windham, New Hampshire, in a defective motorcycle claim.

(c)     The sum of $ ~~12,500~~ *13,000* shall be deducted from Husband's one-half
share and ~~placed in an escrow account for child support payments. If
Husband misses two consecutive weeks of child support, then Wife~~ may
~~draw from said escrow account. The escrow account shall be placed in
the Institution for Savings Bank and the Escrow Agent shall be~~
_____. *shall represent one year's advanced*
*payment of child support (250x52)*

## H.   PERSONAL PROPERTY

1.   The Husband and the Wife agree that except as otherwise specifically

provided in this Agreement, all property of any kind presently in possession of or

hereafter acquired by the Husband or by the Wife and all income and earnings of either

of them, shall constitute and be the sole and separate property of the person in whose

name the property stands or by whom the property is acquired or earned.

2.   The Husband will keep the Chevrolet Truck (lease) and the Wife will keep the

Dodge Caravan (lease). Each party will be solely responsible for any outstanding

*JLB*

10

*1A*

3. Jeffrey shall assign all right, title and interest to the
1999 Coleman Cheyenne Camper to Lisa.
Jeffrey shall be credited $1,500 for said transfer
from the proceeds of the sale of the home.

loans on said vehicles.

## I. ESTATES

1. The Husband and Wife each hereby waive any right at law or in equity to elect take against any Last Will made by the other party, including all rights of dower and curtsey. Should either be entitled at law to an intestate share of the estate of the other, each agrees, if he or she may effectively do so without having been deemed to have received the property and made a gift thereof for federal tax purposes, to promptly, completely and irrevocably renounce any such intestate share.

2. Except as otherwise provided in the within Agreement, the Husband and Wife also hereby waive, renounce and disclaim all and every interest of any kind or character which either may now have or may hereafter acquire in or to any real or personal property of the other, of whatever character and wherever located or situated, and whether now owned or hereafter acquired by either. Each party shall have the right to dispose of his or her property by Will or otherwise in her or his uncontrolled discretion, and each agrees that she or he shall not seek appointment as administrator or executor of the other's estate.

## J. LIABILITIES

1. After payment of the joint marital debt which existed at the time of the separation, Husband shall be solely responsible for any debt he incurred and Wife shall be solely responsible for any debt she incurred.

2. Each party agrees that he or she shall neither contract nor incur any expenses, debts, charges or liabilities in the name of or upon the credit of the other nor

√ LB

LB

11

for which the other or the other's legal representative, property or estate will or may become liable. Each party further agrees that he or she will pay all debts, charges and liabilities by that party after the date of the separation, and each party agrees to be responsible for all marital debts or resolve said debts listed on the Financial Statement filed by that party with the court on the date of the final hearing of the parties' divorce, except only as otherwise specifically provided herein. Each party further covenants at all times to hold the other free, harmless and indemnified from and against all debts, charges or liabilities heretofore or hereafter contracted or incurred by that party in breach of the provisions of this Paragraph.

2. The Husband will assume responsibility for any remaining balance of the following: Macy's - Full Balance

Filene's - Full Balance

JC Penny with the exception of $157.00 incurred by Lisa (Lisa's responsibility) These shall be paid no later than from the proceeds of the sale of the house.

3. The Wife will be responsible for the following:

r $5,000

## K. COLLEGE AND POST-SECONDARY EDUCATIONAL EXPENSES

Both parties acknowledge the importance of post-secondary education for their children, and agree to share the cost of the same equally. Both parties agree to cooperate fully in applying for and obtaining financial aid and educational loans for such expenses. The Husband shall have an equal voice in college and expenses before he shall be obligated to contribute.

JLB    LB

12

## L. PENSIONS

Each party hereby waives any claims and/or rights whatsoever to the other party's pensions or retirement accounts. Husband states that he has no retirement accounts and Wife reports that she has the following: 401K retirement plan — present balance: $ *approximately $13,000* *Savings Bank Employees Retirement Association.* *This agreement does not apply to any other retirement provision which, if any exists, shall be divided equally.*

## M. FUTURE LEGAL PROCEEDINGS

1. Any breach of any term or terms of the within Agreement shall give either party the right to take immediate action, either in law or in equity, concerning such breach. However, failure of either party to insist in any instance upon the strict performance of any of the terms hereunder shall not be construed as a waiver of any such terms for the future, and the same shall nevertheless continue in full force and effect.

2. Except as otherwise provided for above and for any cause of action for divorce, the parties hereby mutually release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them has ever had, now has or may hereafter have against the other, upon or by reason of any matter, cause of thing up to the date of the within Agreement, including but not limited to claims against each other's property, it being the intention of the parties that henceforth there shall exist as between them only such rights and obligations as are specifically provided for in this Agreement and any cause of action for divorce.

*JLB*

13

*LB*

## ARTICLE IV

## INTERPRETATION

A. Except as otherwise expressly stated herein, this Agreement shall be binding on the respective heirs, next of kin, executors and administrators of the parties.

B. Each of the parties hereto agree that he or she will do any and all acts and will execute, acknowledge and deliver at the reasonable request of the other and without cost or expense to the other any and all deeds, releases, waiver of rights or dower, curtsey and/or other instruments, assurances or writings which may at any time be reasonably necessary or proper to evidence or give full force and effect to this Agreement and the provisions hereof.

C. If a judgment of divorce is hereafter entered in any Court of competent jurisdiction resulting from a complaint for divorce brought by either of the parties against the other, this Agreement, upon approval of the Court, shall be ~~incorporated~~ survive as an independent contract, except ~~and merged into said judgment, and~~ all issues affecting the minor child shall merge in the judgment and remain subject to the jurisdiction of the Probate Court.

D. The Husband and Wife agree that no modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement. No wavier of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature. Any provision of the within Agreement that is found to be unenforceable by any Court shall not affect the validity of any other provisions contained in the within Agreement.

E. This Agreement has been executed or completed in Massachusetts and is a

14

JLB        LB

Massachusetts contract; and all matters affecting its interpretation and the rights of the parties hereunder shall be governed by the laws of the Commonwealth of Massachusetts at the time of the execution of the within Agreement.

**IN WITNESS WHEREOF**, the parties have set their hands and seals as of the day and year first above written.

_Lisa J. Bayko_
Lisa J. Bayko

_Jeffrey L. Bayko, Sr._
Jeffrey L. Bayko, Sr.

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                Date: May 24, 2002

Then personally appeared the above-named Lisa J. Bayko and acknowledged the foregoing instrument to be her free act and deed, before me

_____
Notary Public
My Commission Expires: 11\12\2005

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                Date: May 24, 2002

Then personally appeared the above-named Jeffrey L. Bayko, Sr. and acknowledged the foregoing instrument to be his free act and deed, before me

_____
Notary Public
My Commission Expires: 5\27\05

15

JLB        LB

# Article III G. Continued

From the proceeds of the sale of the marital home, $66,000.00 shall be given to Attorney Gary Evans to be held in escrow. Attorney Evans shall negotiate payment of "marital debt." He shall then pay the "marital debt" and, after deducting his fees for those services; pay the remaining portion, in equal shares to the parties. "Marital debt" shall mean those liabilities listed on the financial statement of the Husband filed on May 30, 2001.

Dated: May 24, 2002
      May 24, 2002

# COMMONWEALTH OF MASSACHUSETTS

F I L E D  APR 2 6 2002

## The Trial Court

### Probate and Family Court Department

Essex Division

Docket No. 01D 0875 DV1

## FINANCIAL STATEMENT
### (SHORT FORM)

__Jeffrey Bayko__, Plaintiff  v.  __Lisa J. Bayko__, Defendant

__INSTRUCTIONS:__ If your income equals or exceeds $75,000.00 you must complete the LONG FORM financial statement, unless otherwise ordered by the Court. All questions on both sides of this form must be answered in full or the word "none" inserted. If additional space is needed for any answer, an attached sheet may be filed in addition to, but not in lieu of, the answer. Information contained herein is confidential and only available to the parties and persons authorized under Probate and Family Court Department Supplemental Rule 401.

Soc. Sec. No.: 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

1. Your Name: __Jeffrey Bayko__
   Address: P.O. Box 289, Boxford, Massachusetts, 01921
   Age: 46; Tel. #: (617) 978-621-0573;  No. of children of children living with you: -0-
   Occupation: Limousine Driver; Employer: Ludwig Limo/~~Ultimate Limo~~
   Employer's address: Peabody, Massachusetts (Self Employed)  Health Ins: [ ] YES  [X] NO
   Employer's Tel. #: (978) 621-0573;  Cert. No.:
   Health Insurance Provider:

2. **Gross Weekly Income from All Sources** (strike inapplicable words)  $ 300.00
   a) Base pay from salary, wages  0.00
   b) Self Employment Income **(attach a completed Schedule A)**  100.00
   c) Income from overtime, commissions, tips, bonuses, part-time job  minimal
   d) Dividends and interest  0.00
   e) Income from trusts or annuities  0.00
   f) Pensions & retirement funds  0.00
   g) Social Security  0.00
   h) Disability, unemployment insurance or workers compensation  0.00
   I) Public assistance (welfare, AFDC payments)  0.00
   j) Rental from Income Producing Property **(attach a completed Schedule B)**  0.00
   k) All other sources (including child support, alimony)  $400.00
   l) **Total Gross Weekly Income** (a through k)

3. **Itemize Deductions from Gross Income**  $60.00
   a) Fed. income tax deductions (claiming 0 exemptions)  10.00
   b) State income tax deductions (claiming 0 exemptions)  20.00
   c) FICA  0.00
   d) Medical insurance  0.00
   e) Union dues  $90.00
   f) **Total Deductions** (a through e)

4. **Adjusted Net Weekly Income**  $310.00
   2(l) minus 3(f)

5. **Other Deductions from Salary**  $0.00
   a) Credit Union (Loan Repayment or Savings)  0.00
   b) Savings  0.00
   c) Retirement  0.00
   d) Other - Specify (such as Deferred Compensation or 401K)  $0.00
   e) **Total Deductions** (a through d)

6. **Net Weekly Income**  $310.00
   4 minus 5 (e)  $310.00

7. **Gross Yearly Income from Prior Year** approx.
   (attach copy of all W-2 and 1099 forms for prior year)

No deductions are made from income. Accordingly, the

## 8. Weekly Expenses

| | | | |
|---|---|---|---|
| a) Rent/Mortgage | 100.00 | l) Life Insurance | 4.00 |
| b) Homeowners ins. | 0.00 | m) Medical ins. | 0.00 |
| c) Maint. & repair | 0.00 | n) Uninsured meds./Dentist | 10.00 |
| d) Heat | 0.00 | o) Incidentals & toiletries | 18.00 |
| e) Electricity/gas | 50.00 | p) Motor Vehicle Expenses | 60.00 |
| f) Telephone | 40.00 | q) Motor Vehicle Loan Payment | 109.00 |
| g) Water/Sewer | 0.00 | r) Child Care | 0.00 |
| h) Food | 70.00 | s) Other (attach additional schedule, if necessary) | 0.00 |
| i) House Supplies | 0.00 | | 0.00 |
| j) Laundry/Cleaning | 20.00 | | |
| k) Clothing | 20.00 | | |

**Total Weekly Expenses (a through s)** ........................ $451.00

## 9. Counsel Fees
a) Retainer amount(s) paid to your attorney(s) ........................ $1,500.00
b) Legal fees incurred, to date, against retainer(s) ........................ 0.00
c) Anticipated range of total legal expense to prosecute this action ........................ $30,000 to $40,000.00

## 10. Assets (Attach additional schedule for additional real estate and other assets, if necessary)

a) Real Estate = House
   Location: 7A Graham Avenue, Newbury, Massachusetts
   Title: Husband & Wife, Tenants by the Entirety
   FMV: $300.00 - Mortgage(s): $100,00 = ½ Equity ........................ $200.00.00
b) IRA, Keough, Pension, Profit Sharing, etc. Ret. Plans:
   **List Financial Institution or Plan Name & Account No.:** ........................ 0.00
   401(K) approx ........................ 0.00
   IRAs: approx ........................ 0.00
c) Tax Deferred Annuity Plan(s) ........................ 0.00
d) Life Insurance: Present Cash Value ........................ 0.00
e) Savings, Checking & Money Market Accts & CDS - which are held individually, jointly, in the name of another person for your benefit, or held by you for the benefit of your minor child(ren). **List Financial Institution Names and Account Numbers.** ........................ 0.00
   | 0.00
   | 0.00

f) Motor Vehicles
   FMV: $ ___ : Auto Loan: $-0- = Equity ........................ 0.00
   FMV: $ ___ : Auto Loan: $-0- = Equity ........................ 0.00
g) Other (such as - stocks, bonds, collections) ........................ 0.00
   | 0.00

**h) Total Assets (a through g)** ........................ $200,00.00

## 11. Liabilities (DO NOT list weekly expenses but DO list all liabilities)

| Creditor | Nature Of Debt | Date orig'n | Amt Due | Weekly Payment |
|---|---|---|---|---|
| Law Off of Hans Hailey | atty fees | ongoing | undetermined | |
| | Credit Cards | revolving | $88,000.00 | |
| | Back taxes | | ? | |
| Maers, ___ ... | | | $5,000 | |

**Total Amount Due: $88,000.00** and **Total Weekly Payment: $0.00**

## 12. Number of Years you have paid into Social Security __26__ years

I certify, under the penalties of perjury, that my income and expenses, assets and liabilities as stated herein are true to the best of my knowledge and belief. I have carefully read this financial statement and I certify the information is true and complete.

Dated: April 25, 2002                Signature _____
                                      Jeffrey Bayko

### STATEMENT BY ATTORNEY

I, the undersigned attorney, am admitted to practice law in the Commonwealth of Massachusetts - am admitted pro hoc vice for the purposes of this case - and am an officer of the court. As the attorney for the party on whose behalf this Financial Statement is submitted, I hereby state to the court that I have no knowledge that any of the information contained herein is false.

Attorney's Signature _____  Date  April 25, 2002
Address 11 Beacon St., Boston, Massachusetts 02108, Tel. No. (617) 723-4010
B.B.O.# 216820

**Commonwealth of Massachusetts**
**The Trial Court**

_Essex_ Division    **Probate and Family Court Department**    Docket No. _01D – 0875_

### Order — Judgment on Complaint for Civil/Criminal Contempt

filed on _11 / 29 / 02_

_Lisa Baybo_ ,Plaintiff

.v.

_Jeffrey L. Baybo, Jr_ ;Defendant

I.    After hearing, it is adjudged that the defendant is:

☐    NOT GUILTY of Contempt of this Court.

☑    GUILTY of Contempt of this Court for having willfully:

☑    A.    neglected and refused to pay child support/alimony, the arrearage of which is fixed at _6,300.00_ .

☐    B.    neglected and refused to pay health insurance premiums for the plaintiff and/or minor child(ren)

☐    C,    neglected and refused to pay medical bills in the amount of $_____.

☐    D.    neglected and refused to allow the plaintiff visitation with the minor child(ren) on

_____

_____

E.    neglected and refused to report to the Probation Department regarding his/her job seeking efforts.

F.    neglected and refused to pay the attorney fees owed to plaintiff's attorney in the amount of $_____.

G.    _____

_____

_____

_____

(OVER)

II.    It is ordered that:

A.    the defendant pay $_____ weekly/monthly ($_____
of which shall be applied against the arrearage).

B.    the defendant pay $_____ weekly/monthly towards the arrearage of
$_____

C.    the parties shall comply with the stipulation dated_____
which is incorporated and merged into this order/judgment.

D.    the defendant shall report in person to the Probation Department of this Court
each week with evidence of having sought employment from at
least_____ employers. The defendant shall provide the Probation
Department with the name, address, and telephone number of the employers and a
copy of his/her job application or other proof of having actually applied for work.
VIOLATION OF THIS PARAGRAPH SHALL BE DEEMED CRIMINAL CONTEMPT OF
COURT AND MAY SUBJECT THE DEFENDANT TO A JAIL SENTENCE OF UP TO
SIX MONTHS.

E.    the defendant shall pay attorney fees in the amount of $_____
and the cost of service of process which was necessary on this complaint, to wit.
$_____

F.    *when the marital home is sold, the Defendant's share of the net proceeds shall be held in escrow by both plaintiff's and Defendant's counsel pending further order of the court.*

III.    It is further ordered that:

A.    the defendant be committed to jail for _____90_____ days or until he/she shall
purge him/herself of said contempt by payment of $ _6300.00_ ~~OR until~~
~~further order of the Court OR until he/she be otherwise discharged by due course of~~
~~law.~~

B.    this sentence be suspended until _____noon, Friday, May 2, 2003_____

C.    this matter is continued to _May 2, 2003 at 12:00 noon_ at Salem, Parties
*need not appear if said monies are paid*

Date_____5/1/03_____

_____
Justice of the Probate and Family Court

$EVAHS + EV$ 15
58 Main st.
Topsfield MA
01983>

2002081200108 Bk:19056 Pg:153
08/12/2002 08:49:00 MTG Pg 1/5

## MORTGAGE DEED

I, JEFFREY L. BAYKO of 61 Story Avenue, Newburyport, Essex County,

Massachusetts for consideration paid, grant to MICHAEL J. BAYKO and HELEN E.

BAYKO, both of Newburyport, Essex County, Massachusetts, with MORTGAGE

COVENANTS to secure the payment of FORTY-SIX THOUSAND THREE

HUNDRED SIXTY AND 00/100 ($46,360.00) DOLLARS together with interest thereon

at the rate of Six (6.00%) Percent per annum, all as provided in the undersigned's Note

of even date, the land in Newburyport, Essex County, Massachusetts known as 7A

Grahm Avenue and more fully described on Exhibit "A" attached hereto and made a part

hereof.

This Mortgage is upon the STATUTORY CONDITION, for any breach of which

the Mortgagee shall have the statutory power of sale, all as more fully described in an

Extract from General Laws (Ter. Ed.), Chapter 183, Sections 18, 19, 20 and 21 appended

hereto as Exhibit "B".

WITNESS my hand and seal this 19th day of July 2002.

WITNESS                                    JEFFREY L. BAYKO

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                              July 19th, 2002

Then personally appeared the above-named JEFFREY L. BAYKO who
acknowledged his execution of the foregoing instrument to be their free acts and deeds,
before me,

NOTARY PUBLIC
My Commission expires:    12/20/2002

*Property Locus: 7A Graham Avenue, Newbury, MA*

EXHIBIT

2002081200108 Bk:19056 Pg:154
08/12/2002 08:49:00  MTG Pg 2/5

## EXHIBIT "A"

A certain parcel of land in said Newbury constituting and being Lot numbered 39 on a certain plan entitled "Montgomery Park", Frederick P. Hall, Surveyor, dated 1897 and recorded with Essex South District Registry of Deeds, Book 1593, Page 1, bounded and described as follows:

SOUTHERLY:       by Graham Avenue, fifty (50) feet;

WESTERLY:         by Lot numbered 40, as shown on said plan, one hundred (100) feet;

NORTHERLY:       by Lot numbered 22, as shown on said plan, fifty (50) feet; and

EAASTERLY:       by Lot numbered 38, as shown on said plan, one hundred (100) feet.

This being a portion of the same premises conveyed to Jeffrey L. Bayko and Lisa J. Bayko, husband and wife as tenants by the entirety by deed of Michael T. Bayko and Helen E. Bayko, dated April 24, 1985 and recorded with the Essex South District Registry of Deeds Book 7731, Page 545.

See also, Essex South District Registry of Deeds Book 4167, Page 329 which conveyance was made to Protection Fire Company No. 2, a corporation duly organized by law and having its usual place of business in Newbury, the same being a portion of the premises conveyed to the grantors by deed of Grace R. Sleeper dated November 29, 1951 and recorded with said Deeds in Book 3861, Page 5 on November 5, 1951.

bayko-gee

2002081200108 Bk:19056 Pg:155
08/12/2002 08:49:08 MTG Pg 3/5

## EXHIBIT "B"

### EXTRACT FROM GENERAL LAWS (TER.ED.), CHAPTER 183
### SECTIONS 18, 19, 20, 21

Section 18. A deed in substance following the form entitled "Mortgage Deed" shall when duly executed have the force and effect of a mortgage deed to the use of the mortgagee and his heirs and assigns with mortgage covenants and upon the statutory condition and with the statutory power of sale, as defined in the three (3) following sections, to secure the payment of the money or the performance of any obligation therein specified. The parties may insert in such mortgage any other lawful agreement or condition.

Section 19. In a conveyance of real estate, the words "mortgage covenants" shall have the full force, meaning and effect of the following words, and shall be applied and construed accordingly: "The Mortgagor, for himself, his heirs, executors, administrators and successors, covenants with the Mortgagee and his heirs, successors and assigns, that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that the Mortgagor has good right to sell and convey the same; and that he will, and his heirs, executors, administrators and successors shall warrant and defend the same to the Mortgagee and his heirs, successors and assigns forever against the lawful claims and demands of all persons; and that the Mortgagor and his heirs, successors or assigns, in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser and purchasers a deed or deeds of release confirming such sale; and that the Mortgagee and his heirs, executors, administrators, successors and assigns are appointed and constituted the attorney or attorneys irrevocable of the said Mortgage to execute and deliver to the said purchaser a full transfer of all

2002081200108 Bk:19056 Pg:156
08/12/2002 08:49:00  MTG Pg 4/5

insurance on the buildings upon the land covered by the Mortgage at the time
such sale."

Section 20.  The following "condition" shall be known as the Statutory Condition,
and may be incorporated in any Mortgage by reference:

(CONDITION)

Provided, nevertheless, except as otherwise specifically stated in the Mortgage,
that if the Mortgagor, or his heirs, executors, administrators, successors, or assigns shall
pay unto the Mortgagee or his executors, administrators or assigns the principal and
interest secured by the Mortgage, and shall perform any obligation secured at the time
provided in the Note, Mortgage or other instrument or any extension thereof, and shall
perform any obligation of any prior Mortgage, and until such payment and performance
shall pay when due and payable all taxes, charges and assessments to whomsoever and
whenever laid or assessed, whether on the mortgaged premises or on any interest therein,
or on the debt or obligation secured thereby; shall keep the buildings on said premises
insured against fire in a sum not less than the amount secured by the Mortgage or as
otherwise provided therein for insurance for the benefit of the Mortgagee and his
executors, administrators and assigns in such form and at such insurance offices as they
shall approve, and, at least two (2) days before the expiration of any policy on said
premises, shall deliver to him or them a new and sufficient policy to take the place of the
one so expiring, and shall not commit or suffer any strip or waste of the mortgaged
premises or any breach of any covenant contained in the Mortgage or in any prior
Mortgage.

2002081200108 Bk:19056 Pg:157
08/12/2002 08:49:00 MTG Pg 5/5

Section 21. The following "power" shall be known as the Statutory Power of Sale, and may be incorporated into any Mortgage by reference.

(POWER)

But upon any default in the performance or observance of the foregoing or other condition, the Mortgagee, or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the Mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises, then subject to the Mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the Mortgage, first complying with the terms of the Mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of the power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee-simple; and such sale shall forever bar the Mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or equity.

baykoexb-gee

COMMONWEALTH OF MASSACHUSETTS
ESSEX REGISTRY OF DEEDS, SO. DIST, SALEM, MASS
ESSEX, SS:                                    I, 200
        A TRUE COPY OF RECORD:
        BOOK 24056 PAGE 258
ATTEST:

                                    REGISTER

## PROMISSORY NOTE

U.S. $46, 360.00                                                    July 19, 2002

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of
which is hereby acknowledged, I, the undersigned Borrower, hereby promise to pay to
MICHAEL J. BAYKO and HELEN E. BAYKOPHY, or to their order, the principal sum of
FORTY-SIX THOUSAND THREE HUNDRED SIXTY AND 00/100 ($46,360.00)
DOLLARS, with interest thereon from the date hereof until paid at the rate of SIX (6%)
PERCENT per annum, payable in one (1) single installment of principal and accrued interest
on demand or within thirty (30) days of or upon the sale of the property located at 7 A Graham
Avenue, Newbury, Massachusetts, whichever shall first occur.

The indebtedness hereby evidenced shall immediately become due and payable, without
notice or demand, upon the appointment of a receiver or liquidator, whether voluntary or
involuntary, for the Borrower or for any of his property, or upon the filing of a petition by or
against the Borrower under the provisions of any State Insolvency Law or under the provisions
of the United States Bankruptcy Code of 1978, as amended, or upon the making by the
Borrower of an assignment for the benefit of creditors and not set aside within thirty (30) days,
or upon the sale, conveyance, transfer or change in the legal ownership of the aforesaid 61
Storey Avenue, Newbury, Massachusetts, or any portion thereof, or the granting of any other
interest therein, except upon the prior written approval of the Holder hereof.

All parties now or hereafter liable for the payment of any of the indebtedness hereby
evidenced agree, by executing or endorsing this Note, or by entering into or by executing any
agreement to pay-off the indebtedness hereby evidenced, that the Holder hereof shall have the

EVANS, EVANS &
BINGHAM
58 MAIN STREET
OPSFIELD, MA. 01983

(978) 887-2166

EXHIBIT

right, without notice, to deal in any way, at any time, with any party, to grant any extension of time for payments of any of the said indebtedness, or any other indulgences or forbearances whatsoever, without in any way affecting the liability of any party hereunder.

The Holder of this Note shall be entitled to all reasonable costs and expenses, including but not limited to reasonable attorney's fees in connection with collecting any amount due hereunder.

· The Borrower, maker and endorsers hereof shall be jointly and severally liable for the performance of each and every obligation herein contained and hereby severally waive presentment, protest and demand, notice of protest, notice of dishonor and notice of nonpayment of this Note.

IN WITNESS WHEREOF, the Borrowers have hereunto set their hands and affixed their seals this 19th day of July 2002.

_____
WITNESS

_____
JEFFREY L. BAYKO

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                July 19, 2002

Then personally appeared the above-named JEFFREY L BAYKO, and acknowledged the foregoing instrument to be his free act and deed, before me,

_____
NOTARY PUBLIC
My Commission expires: 12/26/2008

2003070800013 Bk:21193 Pg:386
07/08/2003 08:13:00 MTG Pg 1/2

## MORTGAGE DEED

I, JEFFREY L. BAYKO, formerly of 7A Graham Avenue, Newbury, Essex County, Massachusetts for consideration paid, grant to MICHAEL J. BAYKO and HELEN E. BAYKO, both of Newburyport, Essex County, Massachusetts, with **MORTGAGE COVENANTS** to secure the payment of SIXTY-THREE HUNDRED AND 00/100 ($6,300.00) DOLLARS together with interest thereon at the rate of Six (6.00%) Percent per annum, all as provided in the undersigned's Note of May 9, 2003, the land in Newburyport, Essex County, Massachusetts known as 7A Graham Avenue and more fully described on Exhibit "A" attached hereto and made a part hereof.

This Mortgage is upon the STATUTORY CONDITION, for any breach of which the Mortgagee shall have the statutory power of sale, all as more fully described in an Extract from General Laws (Ter. Ed.), Chapter 183, Sections 18, 19, 20 and 21 appended hereto as Exhibit "B".

WITNESS my hand and seal this    day of May 2003.

_____          _____
WITNESS                          JEFFREY L. BAYKO

please return to:
Evans, Evans and Bingham
58 Main St
Topsfield, MA 01983

### COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                    May    , 2003

Then personally appeared the above-named JEFFREY L. BAYKO who acknowledged his execution of the foregoing instrument to be their free acts and deeds, before me,

_____
NOTARY PUBLIC
My Commission expires:

Gary Evan Evans
NOTARY PUBLIC
My commission expires Dec. 26, 2008

EXHIBIT

2003070800013 Bk:21193 Pg:387
07/08/2003 08:13:00  MTG Pg 2/2

## EXHIBIT "A"

A certain parcel of land in said Newbury constituting and being Lot numbered 39 on a certain plan entitled "Montgomery Park", Frederick P. Hall, Surveyor, dated 1897 and recorded with Essex South District Registry of Deeds, Book 1593, Page 1, bounded and described as follows:

SOUTHERLY:    by Graham Avenue, fifty (50) feet;

WESTERLY:    by Lot numbered 40, as shown on said plan, one hundred (100) feet;

NORTHERLY:    by Lot numbered 22, as shown on said plan, fifty (50) feet; and

EASTERLY:    by Lot numbered 38, as shown on said plan, one hundred (100) feet.

This being a portion of the same premises conveyed to Jeffrey L. Bayko and Lisa J. Bayko, husband and wife as tenants by the entirety by deed of Michael T. Bayko and Helen E. Bayko, recorded April 26, 1985 with the Essex South District Registry of Deeds Book 7731, Page 545.

COMMONWEALTH OF MASSACHUSETTS
ESSEX REGISTRY OF DEEDS, SO. DIST., SALEM, MASS
ESSEX SS.                         October 21  20 04
A TRUE COPY OF RECORD:
BOOK 2793 PAGE 386
ATTEST:
                                    v. REGISTER

PROMISSORY NOTE

U.S. $6,300.00                                                                                    May 9, 2003

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of
which is hereby acknowledged, I, the undersigned Borrower, hereby promise to pay to
MICHAEL J. BAYKO and HELEN E. BAYKO, or to their order, the principal sum of SIX
THOUSAND THREE HUNDRED AND 00/100 ($6,300) DOLLARS, with interest thereon from
the date hereof until paid at the rate of SIX (6%) PERCENT per annum, payable in one (1) single
installment of principal and accrued interest on demand or within thirty (30) days of or upon the
sale of the property located at 7A Graham Avenue, Newbury, Massachusetts, whichever shall
first occur.

The indebtedness hereby evidenced shall immediately become due and payable, without
notice or demand, upon the appointment of a receiver or liquidator, whether voluntary or
involuntary, for the Borrower or for any of his property, or upon the filing of a petition by or
against the Borrower under the provisions of any State Insolvency Law or under the provisions
of the United States Bankruptcy Code of 1978, as amended, or upon the making by the Borrower
of an assignment for the benefit of creditors and not set aside within thirty (30) days, or upon the
sale, conveyance, transfer or change in the legal ownership of the aforesaid 7A Graham Avenue,
Newbury, Massachusetts, or any portion thereof, or the granting of any other interest therein,
except upon the prior written approval of the Holder hereof.

All parties now or hereafter liable for the payment of any of the indebtedness hereby
evidenced agree, by executing or endorsing this Note, or by entering into or by executing any
agreement to pay-off the indebtedness hereby evidenced, that the Holder hereof shall have the

EXHIBIT

right, without notice, to deal in any way, at any time, with any party, to grant any extension of

time for payments of any of the said indebtedness, or any other indulgences or forbearances

whatsoever, without in any way affecting the liability of any party hereunder.

The Holder of this Note shall be entitled to all reasonable costs and expenses, including

but not limited to reasonable attorney's fees in connection with collecting any amount due

hereunder.

The Borrower, maker and endorsers hereof shall be jointly and severally liable for the

performance of each and every obligation herein contained and hereby severally waive

presentment, protest and demand, notice of protest, notice of dishonor and notice of nonpayment

of this Note.

IN WITNESS WHEREOF, the Borrowers have hereunto set their hands and affixed their seals

this 9th day of May 2003.

_____                                    _____
WITNESS                                                              JEFFREY L. BAYKO


COMMONWEALTH OF MASACHUSETTS

ESSEX, ss.                                                                              May 9, 2003
        Then personally appeared the above-named JEFFREY L. BAYKO, and acknowledged
the foregoing instrument to be his free act and deed, before me,

                                                            _____
                                                            NOTARY PUBLIC
                                                            My Commission expires
                                                            12/26/08

                        Gary Evan Evans
                        NOTARY PUBLIC
                    My commission expires Dec. 26, 2008

**Commonwealth of Massachusetts**
**The Trial Court**

_Essex_ Division    Probate and Family Court Department    Docket No. _01D0875DV_

**Temporary Order**

_Jeffrey L. Bayko, Jr._ , Plaintiff

v.

_Lisa J. Bayko_ , Defendant

Pending a hearing on the merits or until further order of the court, it is ordered that:

1) ☐ plaintiff/defendant be and hereby is prohibited from imposing any restraint on the personal liberty of plaintiff/defendant

2) ☐ plaintiff/defendant have the care and custody of _____

the minor child_____ of the parties

3) ☐ plaintiff/defendant be given the following visitation right(s): _____

4) ☐ plaintiff/defendant pay to his/her spouse the sum of_____ forthwith

and the further sum of_____ on each and every _____

hereafter, beginning on_____ , for his/her support and that of the minor child_____

5) ☐ said payments to be made to the Probation Department and forwarded to the Department of Public

Welfare/the plaintiff/defendant/the applicable city or town of _____

6) ☒ the parties shall comply with a stipulation ~~or agreement~~ of the parties dated _July 2, 2003_
which is filed with the Court and expressly made a part of this order

7) ☐ plaintiff/defendant pay reasonable medical, dental and hospital expenses of his/her spouse and minor

child_____ and maintain existing medical and hospital insurance

8) ☐ plaintiff/defendant vacate the marital home at _____
(Street and No.)        (City or Town)        (Zip)

for a period of _____ day(s) commencing on _____

9) ☒ _All prior orders not inconsistent with
the above remain in full force and effect._

Date _July 2, 2003_                    _____
                                   JUSTICE OF THE PROBATE AND FAMILY COURT

CJ-D-401 (6/88)

_____ **Division**

**Docket No.** _____

_____ , Plaintiff

v.

_____ . Defendant

**Temporary Order**

169

FILED JUL 2 2003

Commonwealth of Massachusetts

Essex, SS.                                    Docket no. 010 0825
                                                        DVI

Jeffrey Bayko,
        Plaintiff

V.

Lisa Bayko,
        Defendant

Stipulation of Parties
Dated: July 2, 2003

~~Both~~ With agrees to the Plaintiff's motion
for temporary orders, the parties agree that
~~the Plaintiff's~~ any unnamed medicals
+ college expenses owed by the Plaintiff
will be paid out of the monies held in
the escrow account (see our date 5/1/03).
~~All remaining~~ The balance of funds
will be held in the escrow account
until further order of the court.

_[signatures]_

Jeffrey Bayko                          Lisa Bayko
   Plaintiff                              Defendant



# CHARLES D. ROTONDI
Attorney at Law

79 STATE STREET, NEWBURYPORT, MA 01950
TELEPHONE (978) 462-9393
FACSIMILE (978) 462-2475

## FACSIMILE TRANSMISSION

DATE:  July 31, 2003

TO:  Gary Evans

FAX NO: (978) 887-3684

FROM: Chuck Rotondi

TOTAL NUMBER OF PAGES (including cover sheet): 2

RE:  Bayko Closing

### IF YOU DO NOT RECEIVE ALL THE PAGES
### PLEASE CALL (978) 462-9393 AS SOON AS POSSIBLE

ADDITIONAL MESSAGE:

This communication is intended for the use of the addressee named herein and may contain legally privileged and confidential information. If you are not the intended recipient of this facsimile, you are hereby notified that any examination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone and return the original communication to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and returning the communication to us. Thank you.

## CHARLES D. ROTONDI
Attorney at Law

79 STATE STREET, NEWBURYPORT, MA 01950
TELEPHONE (978) 462-9393
FACSIMILE (978) 462-2475

July 31, 2003

Attorney Gary Evans
58 Main Street
Topsfield, MA 01983

Re:    Bayko Closing

Dear Gary:

In my review of the title in planning for the Bayko closing, I found two outstanding mortgages that you put on record on behalf of Michael Bayko and Helen Bayko. I am sure that you are aware that my client never signed the instruments and never agreed to putting the mortgages on record. The result of this is that there is a cloud in title and Attorney Chris Welch has made it quite clear that both of these mortgages must be discharged prior to closing. I would request that you obtain a discharge of mortgage on both of these mortgages prior to closing so that we may proceed to sell this property on Tuesday, August 5, 2003. I have already agreed to release my attorney's lien and I understand that Attorney Hans Hailey is also agreeing to release his attorney's lien in order to allow the sale to take place.

As you are well aware, Jeffrey's personal debt to his parents have nothing to do with Lisa, and his parents will simply have to look to Jeffrey's net proceeds from the sale, if any, to get paid. As you know, the Court Order is very specific and Lisa must be paid under paragraph (G) of the Separation Agreement following the negotiation and payment of joint marital debt.

I trust that you will do the right thing in this case and immediately secure discharges from Mr. and Mrs. Bayko so that the closing can take place.

Sincerely,

Charles D. Rotondi

CDR/jms

cc:    Attorney Nancy Von Kittlitz

## Commonwealth of Massachusetts
### The Trial Court
Essex _____ Division    . Probate and Family Court Department    Docket No. ___01D0875DV1___

☒ Civil
**Complaint for**    **Contempt**
☐ Criminal

Lisa J. Bayko _____ , Plaintiff

v.

Jeffrey L. Bayko, Sr. _____ , Defendant

1) Plaintiff, who resides at ___7A Graham Avenue, Newbury, MA 01951___

was - is - the spouse of defendant, who now resides at ___P.O. Box 289, Boxford, MA___

01921

2) By judgment - order - of the Court, dated___May 24, 2002___ ,defendant was ordered:

☒ to pay ~~alimony~~ - support of minor children - in the sum of $ _____
forthwith and the further sum of $___250.00___ _____ weekly - monthly - thereafter
☐ to grant plaintiff visitation rights with _____

☐ . not to impose any restraint on the personal liberty of plaintiff
☐ to pay health insurance premiums for the plaintiff and/or minor child(ren)
☐ to pay reasonable medical and dental expenses
☐ _____

and said judgment - order - is still in force.

3) Defendant has not obeyed that judgment - order - and
☒ is in arrears of court-ordered support payments
☒ there now remains due and unpaid to plaintiff the sum of $ ___18,209.71___
plus such further amounts as may accrue to the date of hearing
☐ plaintiff has been denied visitation rights on _____

☒ has violated the order on ~~July 19, 2002 and May 25, 2003~~
_____ by granting mortgages against the
marital home to his parents, Michael and Helen Bayko (copies.
attached) in violation of the Separation Agreement and order of
the Court pursuant to Section J, par. 2 of said Separation
Agreement. Said mortgages were granted without knowledge and
permission of the Plaintiff joint owner, Lisa J. Bayko.

4) Wherefore, plaintiff requests that defendant be required to appear before this Court to show cause why said defendant should not be adjudged in contempt of Court and for such other relief as to said Court may seem just.

Date ___August 13, 2003___        Name ___Charles D. Rotondi___

_____
PRINT NAME
Address ___79 State Street___

___Newburyport, MA 01950___

Tel. No. ( ___978___ ) ___462-9393___

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT
THE PROBATE AND FAMILY COURT DEPARTMENT

Essex Division                                          Docket Number: 03E 0076-GC1

| |
| --- |
| Lisa Bayko,<br>        Plaintiff<br><br>v.<br><br>Jeffery L. Bayko, Sr.,<br>Helen Bayko,<br>Michael Bayko,<br>Gary Evans<br>        Defendant |

**Memorandum of Decision**
**On Helen and Michael Bayko's Motion to Dismiss (filed May 13, 2004)**
**and Jeffrey Bayko's Motion to Dismiss (filed May 24, 2004)**

On May 13, 2004, the Defendants, Helen and Michael Bayko, filed a Motion to Dismiss

the Plaintiff's, Lisa Bayko, Amended Complaint in Equity to Set Aside Fraudulent Conveyance,

To Declare the Mortgages between Jeffery L. Bayko and Helen and Michael Bayko Null and

Void and to Enforce the Terms of the Judgment of This Court (hereinafter "Amended

Complaint") for lack of subject matter jurisdiction.[1]  On May 24, 2004, Jeffrey Bayko and Gary

Evans also filed a Motion to Dismiss the Plaintiff's Complaint for Reasons of Insufficiency of

Process, Insufficiency of Service of Process, and Failure to State a Claim Upon Which Relief

Can be Granted.  This Memorandum will address subject matter jurisdiction only.

---

[1] The defendants, Helen and Michael Bayko, filed two similar Motions to Dismiss for Lack of Subject
Matter Jurisdiction, the first, on September 10, 2003, the second, on April 22, 2004.  The May 13, 2004, Complaint
also asks for the rescission of Judge Cronin's order on September 10, 2003, that surplus funds be held in escrow.
Said request will be resolved indirectly through this decision.  Also on May 13, 2004, the Plaintiff filed a Motion to
Amend and the Amended Complaint, which was allowed.  The Court will treat the Defendants' Motions to Dismiss
as related to the most recently Amended Complaint.

The Plaintiff filed a Complaint seeking equitable relief claiming that the grant of two

mortgages by her former husband, Jeffrey Bayko, to his parents, the Defendants Helen and

Michael Bayko, that the Plaintiff's were fraudulent. The Plaintiff also seeks relief in this Court

from actions that she claims amount to breach of contract, breach of fiduciary duty and legal

malpractice.

Fraudulent Conveyance Counts

Two of the Plaintiff's Counts claim Fraudulent Conveyance pursuant to G. L. c. 109A,

the Uniform Fraudulent Transfer Act. Only the Supreme Judicial Court and the Superior Court

have jurisdiction over statutory claims for fraudulent conveyance. See G. L. c. 214 §3 (8); Foster

v. Evans, 384 Mass 687, 689 (1981). The Probate and Family Court, under G. L. c. 215, § 6,

only has jurisdiction over nonstatutory creditor's bills,[2] meaning those actions brought by

creditors "who have in vain attempted at law to obtain satisfaction of [their] judgments, and who

sue in equity for the purpose of reaching property which could not be taken on execution at law."

Id. at 690, citing Pettibone v. Toledo, Cincinnati & St. Louis R.R., 148 Mass. 411, 417 (1889).

While is it true that "the probate and family court department shall have original and concurrent

jurisdiction with the supreme judicial court and the superior court department of all cases and

matters of equity cognizable under the general principles of equity jurisprudence . . ." (G. L. c.

215, § 6), a statutory claim for fraudulent conveyance is not cognizable under the general

principles of equity jurisprudence. See Blumenthal v. Blumenthal, 303 Mass. 275, 278 (1939).

As such, this Court has no jurisdiction over the Plaintiff's statutory claim for fraudulent

---

[2] A "creditor's bill" is an equitable remedy similar to a bill to reach and apply. Foster, 384 Mass. at 691. A bill to reach and apply is governed by G. L. c. 214, § 3, and can only be brought in the Supreme Judicial Court or the Superior Court, as it is a statutory remedy. Id. at 689. Unlike a creditor's bill, the statutory action does not require a creditor to reduce his claim to a judgment or to exhaust legal remedies. Id. at 692.

conveyance.

In Foster v. Evans, the Probate Court relied on G. L. c. 214, § 3 and G. L. c. 215, § 6, to confer jurisdiction over the Plaintiff's claim to reach and apply an interest in the property of her former husband that he had allegedly fraudulently conveyed to his new wife. 384 Mass. at 688. The Supreme Judicial Court held that the Probate Court's reliance on G. L. c. 214, § 3, as conferring jurisdiction was misplaced, but that the Probate Court did have "jurisdiction [over] nonstatutory creditors' actions under G. L. c. 215, § 6, and that the essential elements of a nonstatutory action were before the Probate Court." Id. at 689. As such, the Probate Court in that case was able to afford the wife the relief she requested.

In the current case, the Plaintiff's claims for Fraudulent Conveyance were plead specifically pursuant to a statute (G. L. c. 109A). While Plaintiff may assert that the essential elements of a nonstatutory action may exist, conferring jurisdiction over the Plaintiff's claims under G. L. c. 215, § 6, would not alleviate the problem of this Court's lack of jurisdiction over the numerous other parties who assert an alleged interest in the surplus proceeds from the sale of the parties' marital home.[3] Thus, if this Court exercised its discretion to construe the Plaintiff's claim for fraudulent conveyance as a nonstatutory creditor's bill action under G. L. c. 215, § 6 (as the Court did in Foster v. Evans), and decided whether there was in fact a fraudulent conveyance, it would still be without authority to distribute the surplus proceeds to all rightfully entitled parties. Ultimately, the Plaintiff is seeking her share of the proceeds from the sale of the marital home, and unfortunately, jurisdictional hurdles and numerous parties in interest make this an inappropriate forum to afford her the relief she requests.

---

[3] For the lengthy list of parties/entities in interest, see GMAC Mortgage Corporation's Motion, filed on May 26, 2004.

### Breach of Contract, Breach of Fiduciary Duty, and Malpractice Counts

Another of the Plaintiff's Counts alleges breach of contract by Defendant Jeffrey L. Bayko for "intentionally encumbering the assets of the Plaintiff" in violation of the parties' separation agreement and seeks monetary damages therefor. The parties' separation agreement was incorporated into a Judgment of Divorce Nisi issued by this Court and, in relevant part, survived as an independent contract. (See Article IV, paragraph C). While the Probate and Family Court has jurisdiction to specifically enforce or to modify a surviving separation agreement, it does not have jurisdiction to determine whether there has been a breach of the contract or to assess damages. As such, the Court does not have jurisdiction to determine whether the Defendant Jeffrey Bayko breached the parties' contract, or to assess money damages.

The Plaintiff also seeks relief under a second breach of contract claim against Attorney Gary Evans, in addition to a Breach of Fiduciary Duty and a Malpractice claim against Attorney Evans, and monetary damages therefor. A determination of whether a contract existed between the Plaintiff and Attorney Evans is not within the equity jurisdiction of this Court, and, further, provided a contractual relationship is found, an assessment of damages is also not within the Probate and Family Court's general grant of equity jurisdiction. Nor are malpractice claims heard in this Court. As such, this Court does not have jurisdiction over any of these claims.

The issues in the instant case are tangled and thorny; furthermore, the Plaintiff in the instant case is in need of a remedy. After thorough examination of the pleadings and the relevant law, however, this Court finds that since there are several parties in interest over which this Court has no jurisdiction, and given the constraints of its equity jurisdiction, the relief sought by the Plaintiff in the Amended Complaint in Equity cannot be granted by the Probate and Family Court.

For the foregoing reasons, this Court does not have subject matter jurisdiction over the

Plaintiff's claims for relief, and, therefore, the Defendants' Motions to Dismiss are ALLOWED.

As a result of this decision, Orders shall enter this date as to the following pending

Motions:

1) Lisa Bayko's Amended Complaint in Equity to Set Aside the Fraudulent Conveyance, To Declare Mortgages Between Jeffrey L. Bayko, Sr. and Helen and Michael Bayko Null and Void and To Enforce the Terms of the Judgment (filed April 30, 2004) is DISMISSED.

2) Helen and Michael Bayko's Motion to Dismiss the Plaintiff's, Lisa Bayko, Amended Complaint in Equity to Set Aside Fraudulent Conveyance, To Declare the Mortgages between Jeffery L. Bayko and Helen and Michael Bayko Null and Void and to Enforce the Terms of the Judgment of This Court (filed May 13, 2004) is ALLOWED.

3) Jeffrey Bayko and Gary Evans' Motion to Dismiss the Plaintiff's Complaint for Reasons of Insufficiency of Process, Insufficiency of Service of Process, and Failure to State a Claim Upon Which Relief Can be Granted (filed May 24, 2004) is ALLOWED, for the reasons set forth in this Memorandum.

4) Helen and Michael Bayko's Motion to Dismiss for Lack of Subject Matter Jurisdiction (filed September 10, 2003), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

5) Helen and Michael Bayko's Motion to Dismiss for Lack of Subject Matter Jurisdiction (filed April 22, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

6) Helen and Michael Bayko's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (filed April 22, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

7) Helen and Michael Bayko's Motion to Dismiss for Failure to Join a Necessary Party (filed May 13, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

8) Helen and Michael Bayko's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (filed May 13, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

9) Lisa Bayko's Motion to Consolidate the Complaint in Equity dated August 13,

2003 and the Complaint for Contempt dated August 13, 2003 (filed April 30, 2004), is DENIED.

10) Lisa Bayko's Motion to Amend the Complaint in Equity (filed April 30, 2004) is ALLOWED.

11) Lisa Bayko's Motion to Have Her Share of the Proceeds of the Marital Home Directed to Her (filed April 30, 2004) is DENIED, without prejudice.

12) Lisa Bayko's Motion to Limit Jeffrey Bayko's Damages in the Complaint in Equity to Those That Were Not Discharged in the Bankruptcy (filed April 30, 2004) is DENIED, without prejudice.

13) Lisa Bayko's Motion for Allowance of Attorney's Fees (filed April 30, 2004) is DENIED, without prejudice.

14) Lisa Bayko's Motion to Strike the Appearance of Gary Evans as Attorney for Jeffrey Bayko (filed April 30, 2004) is DENIED, without prejudice.

15) GMAC Mortgage Corporation's Motion to Intervene to Deposit Funds with Court and/or For Further Direction (filed May 26, 2004) is DENIED. However, IT IS FURTHER ORDERED, that consistent with GMAC's request for relief, it is not required to deposit proceeds from the foreclosure of the marital home per this Court's Order dated September 10, 2003, and is directed to commence an Interpleader Action in Superior Court for purposes of disposing of the surplus funds. Upon filing that Interpleader action, this Court's Order dated September 10, 2003 regarding holding proceeds in escrow shall be vacated.

Date: _September 15, 2004_

John P. Cronin, Justice
Probate and Family Court Department

## Commonwealth of Massachusetts
### The Trial Court

| Essex    Division | Probate and Family Court Department | Docket No. 01D0875-DV1 |

Amended

Sua Sponte    Order — ~~Judgment~~ on Complaint for Civil/~~Criminal~~ Contempt

filed on ___August 23, 2003___

Lisa Bayko _____ ,Plaintiff

v.

Jeffrey Bayko _____ ,Defendant

I.    After hearing, it is adjudged that the defendant is:

☐    ~~NOT GUILTY of Contempt of this Court.~~

☒    GUILTY of Contempt of this Court for having willfully:

☒  A.    neglected and refused to pay child support/~~alimony~~, the arrearage of which is fixed at ___$28,859.89___ .

☐  B.    neglected and refused to pay health insurance premiums for the plaintiff and/or minor child(ren)

☐  C,    neglected and refused to pay medical bills in the amount of $_____

☐  D.    neglected and refused to allow the plaintiff visitation with the minor child(ren) on.

_____

_____

☐  E.    neglected and refused to report to the Probation Department regarding his/her job seeking efforts.

☐  F.    neglected and refused to pay the attorney fees owed to plaintiff's attorney in the amount of $_____.

☒  G.    1.  For conveying mortgages to Helen Bayko and Michael Bayko on 7-19-02 ($46,360.00; Book 19056, Page 153) and 5-25-03 ($6,300.00; Book 21193, Page 386) against Jeffrey Bayko's interest in the marital home at 7A Graham Avenue, Newbury, MA in violation of Article III, Section J, Paragraph 2 of the separation agreement dated 5-24-02; and said mortgages are invalid as against the plaintiff.
2.    Failure to pay college tuitions in the amount of $2,755.52 (order of July 2002).

(OVER)

CJ-D 404 (10/96)

II.   It is ordered that:

[x]   A.   the defendant pay $____250.00_____ weekly/monthly ($xxxxxxxxxxxxxxxxxxxx
           of which shall be applied against the arrearage). in child support.

[ ]   B.   the defendant pay $_____ weekly/monthly towards the arrearage of
           $_____.

[ ]   C.   the parties shall comply with the stipulation dated_____
           which is incorporated and merged into this order/judgment.

[ ]   D.   the defendant shall report in person to the Probation Department of this Court
           each   week   with   evidence   of   having   sought   employment   from   at
           least _____ employers. The defendant shall provide the Probation
           Department with the name, address, and telephone number of the employers and a
           copy of his/her job application or other proof of having actually applied for work.
           VIOLATION OF THIS PARAGRAPH SHALL BE DEEMED CRIMINAL CONTEMPT OF
           COURT AND MAY SUBJECT THE DEFENDANT TO A JAIL SENTENCE OF UP TO
           SIX MONTHS.

[x]   E.   the defendant shall pay attorney fees in the amount of $___4,950.00_____
           and the cost of service of process which was necessary on this complaint, to wit,
           $__75.00 for a total of $5,025.00 on or before November 1, 2004.

[ ]   F.

           |                              |                              |
           |------------------------------|------------------------------|
           |                              |                              |
           |                              |                              |
           |                              |                              |
           |                              |                              |


III.   It is further ordered that:

[x]   A.   the defendant be committed to jail for_____150 days_____ days or until he/she shall
           purge himself/herself of said contempt by payment of $___33,809.89____ OR until
           further order of the Court OR until he/she be otherwise discharged by due course of
           law.

[x]   B.   this sentence be suspended until _____November 1, 2004_____.

[x]   C.   this matter is continued to _____November 1, 2004 unless sooner apprehended._____
           Except as provided herein, all prior orders of this court are
           ratified and confirmed.


Date___February 9, 2005___                    _____
       as of September 23, 2004               Justice of the Probate and Family Court

231

F I L E D  NOV 1 6 2004

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

PROBATE & FAMILY COURT
DOCKET NO. 01D 0875 DV1

LISA BAYKO,                )
           Plaintiff    )
                    )
v.                         )
                    )
JEFFREY BAYKO,             )
           Defendant    )
                    )

Dec 2 , ss, Probate & Family Court
20 0 4

The within action is hereby ~~allowed~~ denied

Peter C. DiGangi, Justice of Probate & Family Court

## MOTION FOR RECONSIDERATION
of
## ORDER FOR CIVIL CONTEMPT
ISSUED BY JUDGE PETER C. DI GANGI
on
SEPTEMBER 23, 2004

Now come Michael Bayko and Helen Bayko, the owners of certain mortgages which Judge Peter

C. DiGangi declared invalid and ask for reconsideration. As reasons therefore:

1) Michael and Helen Bayko were neither joined nor given notice and an opportunity to be heard
before terminating their property rights.

The Order in question purports to deprive Michael Bayko and Helen Bayko (both in their

eighties) of valuable property rights. The September 23, 2004 Order was issued without notice to

Mr. and Mrs. Bayko in a matter in which they have never been joined. While the grounds for the

decision have not been recited, it may be surmised that the Court may not have been informed

that these mortgages secured actual cash advances made to Jeffrey Bayko, or on his behalf, or

that many of the funds advanced were used to pay child support to Lisa Bayko. (For example,

documents subpoenaed to the Probate and Family Court by Lisa Bayko's counsel in September of

## Commonwealth of Massachusetts
### The Trial Court
__Essex__ __Division__    Probate and Family Court Department    **Docket No.** 01D-0875-DV1

### ~~Order~~ — Judgment on Complaint for Civil/~~Criminal~~ Contempt

filed on ___9-16-05___

Lisa Bayko ,Plaintiff

v.

Jeffrey Bayko ,Defendant

I.    After hearing, it is adjudged that the defendant is:

☐    NOT GUILTY of Contempt of this Court.

☒    GUILTY of Contempt of this Court for having willfully:

☒    A.    neglected and refused to pay child support/~~alimony~~, the arrearage of which is fixed at   __$42,784.88 including $2,500.00 accrued since July 2005.__

☐    B.    neglected and refused to pay health insurance premiums for the plaintiff and/or minor child(ren)

☐    C.    neglected and refused to pay medical bills in the amount of $_____.

☐    D.    neglected and refused to allow the plaintiff visitation with the minor child(ren) on

_____

_____

☐    E.    neglected and refused to report to the Probation Department regarding his/her job seeking efforts.

☐    F.    neglected and refused to pay the attorney fees owed to plaintiff's attorney in the amount of $_____.

☐    G.    _____

_____

_____

_____

_____

(OVER)

CJ-D 404 (10/96)

**II.**    It is ordered that:

☐    A.    the defendant pay $_____ weekly/monthly ($_____
of which shall be applied against the arrearage).

☐    B.    the defendant pay $_____ weekly/monthly towards the arrearage of
$_____.

☐    C.    the parties shall comply with the stipulation dated_____
which is incorporated and merged into this order/judgment.

☐    D.    the defendant shall report in person to the Probation Department of this Court
each   week   with   evidence   of   having   sought   employment   from   at
least_____ employers.   The   defendant   shall   provide   the   Probation
Department with the name, address, and telephone number of the employers and a
copy of his/her job application or other proof of having actually applied for work.
VIOLATION OF THIS PARAGRAPH SHALL BE DEEMED CRIMINAL CONTEMPT OF
COURT AND MAY SUBJECT THE DEFENDANT TO A JAIL SENTENCE OF UP TO
SIX MONTHS.

☐    E.    the defendant shall pay attorney fees in the amount of $_____
and the cost of service of process which was necessary on this complaint, to wit,
$_____.

☐    F.    _____
_____
_____
_____
_____

**III.**    It is further ordered that:

☒    A.    the defendant be committed to jail for _____150_____ days or until he/she shall
purge him/herself of said contempt by payment of $ 2,500.00 OR until
further order of the Court OR until he/she be otherwise discharged by due course of
law.   Payment shall be payable to the Department of Revenue for
plaintiff.

☐    B.    this sentence be suspended until_____

☐    C.    this matter is continued to _____

Date ___October 18, 2005___

10-18 05

_____
Justice of the Probate and Family Court

03/15/2006 WED 10:58 FAX 9784658424 Institution for Savings    ☒002/012

Mass DOR - CSE - Payment History - Case Summary    Page 1 of 1





**Mas**

**Department of Revenue**
COMMONWEALTH OF MASSACHUSETTS

*Child Support Enfon*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Privac |

▶Case Summary    ▶Request Official Copy    ▶Payment Status    ▶Payments By Case

**You are currently logged in as LISA BAYKO.**

Below is a breakdown of past due support and case summary information.

This data is current as of 3/15/2006.

---

**CASE #0003063837 with JEFFREY BAYKO (Parent Paying Support)**

**Case Opened:**    06/06/2001

**Current Status:**    Court Order Established

| TYPE OF SUPPORT | FREQUENCY | AMOUNT |
|---|---|---|
| COURT ORDER | Weekly | $250.00 |
| PAYMENT TOWARD ARREARS | Weekly | $62.50 |

| PAST DUE | AMOUNT |
|---|---|
| Support Owed to Parent | $48,034.88 |
| Support Owed to Commonwealth | $0.00 |
| Interest Owed to Parent* | $8,857.74 |
| Interest Owed to Commonwealth* | $0.00 |

*Interest balances are updated at the end of each month.

Click here for Information for Parents About Disbursements of Child Support Payments.

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 10:58 FAX 9784658424 Institution for Savings                    ☒003/012

Mass DOR - CSE - Payment History - Payment Source                    Page 1 of 1



**COMMONWEALTH OF MASSACHUSETTS**
# Department of Revenue

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶Case Summary          ▶Request Official Copy          ▶Payment Status          ▶Payments By Case

**You are currently logged in as LISA BAYKO.**

---

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 10/18/2002 | $3,700.00 | CASHED | 0028245523 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 10/01/2002 | $3,700.00 | PARENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source                    Page 1 of 1

 COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

 **Child Support Enforc**

**Mas**

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|--------------------|--------------------|------------------|-----------|---------|-------|

▶Case Summary      ▶Request Official Copy      ▶Payment Status      ▶Payments By Case

**You are currently logged in as LISA BAYKO.**

---

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 03/07/2003 | $44.31 | CASHED | 0029180987 | |

| DATE | AMOUNT | SOURCE | | |
|------|--------|--------|--|--|
| 02/14/2003 | $44.31 | ENFORCEMENT | | |

---

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 10:59  FAX 9784658424 Institution for Savings                    @005/012

Mass DOR - CSE - Payment History - Payment Source                    Page 1 of 1





**Mas**

**COMMONWEALTH OF MASSACHUSETTS**
## Department of Revenue

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▶ Case Summary        ▶ Request Official Copy        ▶ Payment Status        ▶ Payments By Case

**You are currently logged in as LISA BAYKO.**

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 03/12/2003 | $501.00 | CASHED | 0029212689 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 02/19/2003 | $501.00 | ENFORCEMENT |

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 10:59  FAX 9784658424 Institution for Savings                    @006/012

Mass DOR - CSE - Payment History - Payment Source                              Page 1 of 1

 

COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶Case Summary     ▶Request Official Copy     ▶Payment Status     ▶Payments By Case

**You are currently logged in as LISA BAYKO.**

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 03/13/2003 | $451.59 | CASHED | 0029221073 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 02/20/2003 | $451.59 | ENFORCEMENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE – Payment History - Payment Source                    Page 1 of 1

 COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

    **Mas**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶Case Summary        ▶Request Official Copy        ▶Payment Status        ▶Payments By Case

You are currently logged in as LISA BAYKO.

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 05/22/2003 | $6,300.00 | CASHED | 0029693704 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 05/08/2003 | $6,300.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 10:59  FAX 9784658424 Institution for Savings          ☒008/012

Mass DOR - CSE - Payment History - Payment Source          Page 1 of 1


COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**


*Child Support Enforc*

Mas

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▸Case Summary          ▸Request Official Copy          ▸Payment Status          ▸Payments By Case

**You are currently logged in as LISA BAYKO.**

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 12/26/2003 | $400.00 | CASHED | 0031034172 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 12/26/2003 | $400.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 10:59 FAX 9784658424 Institution for Savings            ☒009/012

Mass DOR - CSE - Payment History - Payment Source                     Page 1 of 1

 

COMMONWEALTH OF MASSACHUSETTS
## Department of Revenue

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶ Case Summary    ▶ Request Official Copy    ▶ Payment Status    ▶ Payments By Case

**You are currently logged in as LISA BAYKO.**

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 02/24/2004 | $552.00 | CASHED | 0031390475 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 02/24/2004 | $552.00 | PARENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 11:00  FAX 9784658424 Institution for Savings    ✍010/012

Mass DOR - CSE - Payment History - Payment Source    Page 1 of 1

  

COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶Case Summary    ▶Request Official Copy    ▶Payment Status    ▶Payments By Case

You are currently logged in as LISA BAYKO.

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 03/08/2004 | $1,112.94 | CASHED | 0031473977 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 03/08/2004 | $1,112.94 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 11:01 FAX 9784658424 Institution for Savings                    ☒002/002

Mass DOR - CSE - Payment History - Payment Source                              Page 1 of 1

  

**COMMONWEALTH OF MASSACHUSETTS**
**Department of Revenue**

*Child Support Enforcement*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Privacy |
|------|--------------------|--------------------|-----------------|------------|---------|---------|

▶ Case Summary        ▶ Request Official Copy        ▶ Payment Status        ▶ Payments By Case

**You are currently logged in as LISA BAYKO.**

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 10/04/2005 | $25.00 | TRANSFERRED TO BANK | 0023657327 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 10/04/2005 | $25.00 | PARENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 11:00  FAX 9784658424 Institution for Savings                        ☒011/012

Mass DOR - CSE - Payment History - Payment Source                                    Page 1 of 1

  

**Mas**

## COMMONWEALTH OF MASSACHUSETTS
## Department of Revenue

*Child Support Enforc*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|--------------------|--------------------|-----------------|-----------|---------|-------|

▶Case Summary      ▶Request Official Copy      ▶Payment Status      ▶Payments By Case

**You are currently logged in as LISA BAYKO.**

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 05/12/2004 | $1,770.14 | CASHED | 0031871040 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 04/21/2004 | $1,770.14 | ENFORCEMENT |

Copyright © 2002 Department of Revenue. All rights reserved.

03/15/2006 WED 11:00  FAX 9784658424 Institution for Savings            🏛012/012

Mass DOR - CSE - Payment History - Payment Source                      Page 1 of 1



**COMMONWEALTH OF MASSACHUSETTS**
# Department of Revenue



*Child Support Enforc*                                                    **Mas**

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Privac |
|------|------|------|------|------|------|------|

▶ Case Summary     ▶ Request Official Copy     ▶ Payment Status     ▶ Payments By Case

**You are currently logged in as LISA BAYKO.**

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 09/27/2005 | $25.00 | TRANSFERRED TO BANK | 0023598778 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 09/27/2005 | $25.00 | PARENT |

---

Copyright © 2002 Department of Revenue, All rights reserved.

03/15/2006 WED 11:02  FAX 9784658424 Institution for Savings                    🏦001/001

Mass DOR - CSE - Payment History - Payment Source                              Page 1 of 1





COMMONWEALTH OF MASSACHUSETTS
# Department of Revenue

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|---------------------|----------------------|------------------|------------|---------|-------|

▶Case Summary        ▶Request Official Copy        ▶Payment Status        ▶Payments By Case

**You are currently logged in as LISA BAYKO.**

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 10/08/2005 | $25.00 | TRANSFERRED TO BANK | 0023692646 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 10/08/2005 | $25.00 | PARENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.