### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. <u>05-11746 GAO</u>

_____
                                              )
GMAC MORTGAGE CORPORATION,                    )
                              Plaintiff,      )
                                              )
v.                                            )
                                              )
JEFFREY L. BAYKO, SR., LISA J. BAYKO,         )
HELEN E. BAYKO, MICHAEL J. BAYKO,             )
HANS R. HAILEY, AND THE UNITED STATES         )
OF AMERICA,                                   )
                              Defendants      )
_____)

### MICHAEL J. AND HELEN E. BAYKO'S
### OPPOSITION
### TO
### LISA BAYKO'S MOTION FOR SUMMARY JUDGMENT

Now come Michael and Helen Bayko and oppose Lisa Bayko's Motion for Summary Judgment.

**Brief Summary of Case**

1) Lisa Bayko admits to sufficient facts in her Motion for Summary Judgment that this Court should both deny her motion and grant Summary Judgment for Michael and Helen Bayko. Michael and Helen Bayko are the parents of Jeffrey Bayko; during the course of Jeffrey's divorce, they lent him money which was used at least in significant part to pay child support and pay his lawyers. They secured these loans with mortgages on Jeffrey's interest in his house.

2) Lisa Bayko has already received much of the money advanced by Michael and Helen Bayko. (*See for example, Exhibit 1, a check from Michael and Helen to the Department of Revenue to pay back child support.*) Lisa now wants to be paid twice. She wants to void Michael and Helen's mortgage and take the proceeds of the sale by GMAC (after it foreclosed on a prior mortgage). Voiding the mortgage would result in a double payment to Lisa. She would have

kept the money which she received out of the funds borrowed from Michael and Helen Bayko and she would also receive the funds which result from the sale of the real property which secured their loans.

3) Lisa's Motion for Summary Judgment pursues two theories. The first theory is that the Essex County Probate and Family Court has already decided the matter of the mortgage owned by Michael and Helen. However, as Lisa admits, Michael and Helen were never parties to the divorce where the Essex County Probate and Family Court purportedly invalidated their mortgage, nor were they given notice or an opportunity to be heard.

4) Lisa's first attempt to revoke the mortgages came in an 'Emergency Ex Parte Motion to Revoke Mortgages' which she filed, without notice to Michael and Helen, in the matter of the divorce of Lisa J. Bayko and Jeffrey L. Bayko, Sr. Michael and Helen were never parties to the divorce. In response to the first Ex Parte Motion Justice John C. Cronin (the trial judge assigned to this case) ordered:

*This motion in the parties divorce-contempt action is denied without prejudice. Based on the limited and highly contested evidence heard on 8-21-03, it appears that considerable discovery is needed, and that this relief may be more appropriately sought in the Equity action which is alleged to be pending.* *See Exhibit 2, Order of Justice John C. Cronin dated 8/21/03*

Lisa then filed a 'Complaint in Equity to Set Aside Fraudulent Conveyance, to Declare the Mortgages Between Jeffrey L. Bayko and Helen & Michael Bayko Null and Void and to Enforce the Terms of a Judgement of This Court.' Upon service, Michael and Helen immediately moved to dismiss the matter based, inter alia, on lack of subject matter jurisdiction. Their motion was renewed several times. On September 15, 2004, Justice John C. Cronin of the Essex County Probate and Family Court granted Michael and Helen Bayko's Motion to Dismiss for lack of subject matter subject matter jurisdiction. *See Exhibit 3, Memorandum of Decision of Justice John C. Cronin dated September 15, 2004.*

The problem arose after the matter had been dismissed, and after GMAC Mortgage Corporation had filed the first Interpleader action in Superior Court. On September 25, 2004, ten days after

Judge Cronin found the Essex Probate and Family Court lacked subject matter jurisdiction, Judge Peter C. DiGangi, a new, inexperienced, judge sitting on temporary assignment to the Essex Probate and Family Court, after another Ex-Parte hearing in the extended divorce between Lisa and Jeffrey told Atty. Faro to 'draft an Order and I'll sign it'.[1]   The Order purportedly revoked the mortgages.  There was no oral argument before Judge DiGangi regarding the mortgages and it appears he had no idea of Judge Cronin's prior decisions in the divorce and equity matters.  It is uncontested that neither Michael Bayko nor Helen Bayko were given notice of the hearing before Judge DiGangi and they had no opportunity to heard before the Order issued.  It is undisputed that neither Michael Bayko nor Helen Bayko have ever been a party to the divorce in which the Order issued.  It is also undisputed that the equity action had already been dismissed by Judge Cronin upon his finding that the Court lacked subject matter jurisdiction to grant the remedy requested.

6) The second theory that Lisa Bayko pursues is that Michael and Helen Bayko had actual notice of the Judgment of Divorce Nisi in the divorce of Lisa Bayko v. Jeffrey Bayko.  Significantly she recognizes that the real issue is whether they had actual knowledge of the contents of the Settlement Agreement and yet does not allege that either Michael or Helen knew of the contents of the Settlement Agreement or the specific terms of the divorce.  In her Statement of Facts here, paragraph #5, seeking Summary Judgment against Hans Hailey, Lisa alleges "On or after May 24, 2002, the Defendant Hans Hailey had actual notice of the parties' divorce **and terms of the separation agreement**." [emphasis added].   In contrast, in paragraph #7 Lisa's allegations of Michael and Helen's knowledge is much less specific.  She alleges that "On and before June, 2001 and continuing thereafter, the Defendant's Michael Bayko and Helen Bayko had actual notice of the Defendant Jeffrey L. Bayko's divorce."  Whether Michael and Helen knew their son was being sued for divorce in June of 2001 (almost a year before the Settlement Agreement was executed) is not relevant.   What is relevant is the question of  whether they had actual notice of the terms of a Settlement Agreement, which agreement was incorporated into an Order of the Essex County Probate and Family on May 24, 2002.  They did not.  *(See Exhibit 4, Affidavit of Michael Bayko and Exhibit 5, Affidavit of Helen Bayko.)*

---

[1] Judge DiGangi has since become an permanent Justice at the Essex County Probate and Family Court.

7) Further, even if Michael and Helen had known the terms of the Settlement Agreement, it appears that the sums ordered in the Settlement Agreement have probably already been paid. (Discovery requests on this subject have been rejected. Lisa Bayko's stated position is that the only relevant document is a Department of Revenue statement with attachments which purportedly shows an amount as due and payable in 2006. She refuses to provide any further accounting. In the event that this matter goes to trial, Michael and Helen Bayko will seek to exclude any accounting except that provided in discovery. They will also seek to exclude any evidence of liabilities incurred after the mortgages were filed arguing generally that a divorce does not result in a priority lien for child support, whether or not due, for the twenty or twenty-five years that a child may require support, which lien, whether or not recorded, would predate, and effectively preclude the supporting parent from obtaining a mortgage or otherwise securing a debt.) *See generally, Exhibit 6, "Defendant Lisa Bayko's Answers to Interrogatories Propounded by the Defendants Helen Bayko and Michael Bayko's [sic]", Exhibit 7, documents produced at the Massachusetts Department of Revenue Accounting, Exhibit 8, April 6, 2006 letter from Atty. Timothy D. Sullivan to Atty. Christine Faro again seeking an accounting and a discovery conference and Exhibit 9, Atty. Christine Faro's April 13, 2006 letter to Atty. Timothy D. Sullivan following the discovery conference.*

OBJECTIONS TO 'FACTS' ALLEGED BY LISA BAYKO IN 'STATEMENT OF FACTS' IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

As detailed below, Michael Bayko and Helen Bayko specifically contest the admission of the following 'facts' alleged by Lisa Bayko as untrue, unproved, or irrelevant to matters before this Court and ask that the Court strike the contested 'facts'.

1) In paragraph 3 (E) Ms. Bayko alleges that
*"From the proceeds of the sale of the marital home, $66,000.00 shall be given to Attorney Gary Evans to be held in escrow. Attorney Gary Evans shall negotiate payment of the "marital debt". He shall than [sic] pay the "marital debt" and, after deducting his fees for those services, pay the remaining portion in equal shares to the parties. "Marital debt" shall mean those liabilities listed on the financial statement of the Husband filed on May 31, 2001. "*

a)  This statement clearly contemplates that an excess balance will remain after payment of $66,000 and payment of Atty. Evans fees.  Yet, in her Affidavit, submitted as Addendum A to the Motion for Summary Judgment, Lisa Bayko seeks $33,000 as "Joint Credit Card Debts:Separation Agreement".

b) The Separation Agreement terms cited here directly conflict with those cited by Lisa Bayko in her Affidavit filed in support of this motion.  There she claims that she is to take $116,457.95 under the 'separation agreement' and includes items which did not arise until well after execution of the 'separation agreement' and the filing of the mortgage  (e.g. 'College Tuitions; Separations Agreement and Order dated July 7, 2003).  The Settlement Agreement is a document which speaks for itself.  It is an exhibit to Lisa's motion.  However, there appears to be no way that it could be read to secure $116,457.95 much less that amount plus the amounts which Lisa has already been paid.

c) Clearly some payments have been made pursuant to the divorce.  Yet, Lisa refuses to provide an account or otherwise show the application of any payments.

2) Paragraph 10:  In her Statement of Facts, Lisa Bayko alleges that the July 19, 2002 mortgage was drafted by Atty. Gary Evans.  She offers no evidence to prove this point.

3) Paragraph 11: Lisa alleges that the July 19, 2002 mortgage is not supported by adequate consideration.  The only proof she offers of this is to refer to Exhibit 7 from Michael and Helen Bayko's March 15, 2006 'Verified Motion for Partial Summary Judgment'.  Exhibit 7 supports the May 9, 2003 mortgage not the July 19, 2002 mortgage.  Further, both Michael and Helen Bayko have verified, under oath that '[t]hese mortgages secure actual loans and advances made by Michael J. Bayko and Helen E. Bayko to Jeffrey L. Bayko."  They support these claims with documents produced as Exhibits 5 & 6 to their motion.  *See paragraph 5 of Michael and Helen Bayko's March 16, 2006 Verified Motion for Partial Summary Judgment and exhibits 5 and 6 to that motion.*

4) Paragraph 12 is irrelevant and essentially unsupported.  It appears from the document offered

as an Exhibit that Lisa Bayko was released from a tax lien.  Any further allegations here are without proof.  Further, the actions of Jeffrey Bayko with regard to his tax returns is not relevant to whether liens were perfected.

5) Paragraph 14:  Judge Kagan's May 1, 2003 Order came almost a year after the Bayko's perfected their $46,360.00 mortgage.  It came in a matter in which they were not parties, were not given notice and were not given an opportunity to be heard.  It therefore cannot affect the property rights of Michael and Helen Bayko.

6) Paragraph 15:  Lisa Bayko has provided no evidence that Atty. Gary Evans drafted this mortgage.  Further, the mortgage face amount is $6,300.00 not $6,304.00.

7) Paragraph 16:  Neither Helen nor Michael Bayko are parties to either the stipulation referenced in this paragraph or the Divorce is which this Order allegedly issued.  Further, the Order allegedly issued more than a year after they perfected their mortgage.  The statement is at best irrelevant.

8) Paragraph 17:  The statement here appears to be not completely true.  At the very least, Lisa Bayko was on notice that the mortgage was contemplated by April 16, 2002.
In response to a Request for Documents, Lisa produced a April 16, 2002 letter from Atty. Hans R. Hailey (representing Jeffrey) to Atty. Charles Rotondi (representing Lisa).  In this letter, Atty. Hailey discusses an amount of $41,200 then due to Michael and Helen Bayko and informs Atty. Rotondi that this will be secured with a mortgage against Jeff's interest in the property.  That letter included a spreadsheet faxed from Evans & Evans on April 11, 2002.  The letter was acknowledged by a return letter dated April 22, 2002 from Atty. Rotondi to Atty. Hailey.  *See Exhibit 10, April 16, 2002 letter from Atty. Hans R. Hailey to Atty. Charles Rotondi w/ attached spreadsheet and Exhibit 11, April 22, 2002 letter from Atty. Charles Rotondi to Atty. Hans Hailey.*

9) Paragraph 18: It is not relevant that Lisa filed a Complaint for Contempt against Jeffrey more than a year after the mortgage was recorded, in an action where Michael and Helen were not

parties.

10) Paragraph 19:  Contrary to the allegation here, the Complaint in Equity was dismissed <u>with prejudice</u>.   There is no doubt as to the intent of Judge Cronin in this matter as he dismissed 'without prejudice' certain other matters in the same Memorandum of Decision (e.g Lisa Bayko's Motion to Strike the Appearance of Gary Evans.)

11) Paragraph 20.  This paragraph misrepresents the fact.  As soon as Michael and Helen Bayko engaged counsel, they offered to have the sale go through and escrow the proceeds.  (*See Exhibit 12, August 26, 2003 letter from Atty. Timothy D. Sullivan to Atty.s Charles D. Rotondi, Atty. Chrisine Faro, Atty. Laura Martin, Atty. Gary Evans and Atty. Hans Hailey.*)

12) Paragraph 23:  This allegation is irrelevant as the contempt referred to is against Jeffrey Bayko and not against Helen or Michael Bayko.

13) Paragraph 24:  This allegation is irrelevant.  Again, the contempt is against Jeffrey Bayko, not against Helen or Michael Bayko.

14) Paragraph 25:  This allegation is incorrect.  Michael and Helen Bayko filed a Special Appearance.  (*See Exhibit 13.*)  They did not try to intervene.  The distinction is important as they retained their status as non-parties to the divorce.

15) Paragraph 28:  The allegation is irrelevant.  Once again the allegation is that Jeffrey Bayko was in contempt of an order of the Court (this contempt more than three years after the mortgages).  Michael and Helen Bayko were not parties to the divorce or the contempt.

16) Paragraph 29:  Whether Jeffrey Bayko owed $48,034.88 to Lisa Bayko on March 16, 2004 is not relevant to this matter.  What is relevant is whether Michael and Helen Bayko had actual notice of the separation agreement on July 19, 2002 (they did not).  If they had actual knowledge, it is only relevant what amount was owed under the separation agreement on July 19, 2002 and which remains unpaid.

17) Paragraph 30:  This sounds more like an allegation or count rather than a 'statement of fact'. Nevertheless, the numbers stated have no relationship to Separation Agreement or the situation at the time of the recording of the mortgage.   The numbers are based on the Affidavit of Lisa Bayko submitted as an exhibit to her Motion for Summary Judgment.  The Separation Agreement is a legal document and speaks for itself.  Clearly it does not provide for the payment to Lisa Bayko of $116,457.95.  What is interesting though is the fact that Lisa Bayko makes claims to this money without any offset for payments made by Jeffrey Bayko.


OBJECTION TO CLAIMS OF CONTRIBUTION FOR DEPARTMENT OF REVENUE AND INTERNAL REVENUE SERVICE PAYMENTS

In her claim for relief, Lisa Bayko seeks contribution for payments that she made to the Department of Revenue and for a reserve set aside to cover a claim by the Internal Revenue Service against Lisa Bayko.  With regard to the claim for contribution on the DOR claim, Lisa Bayko wanted to get her money out early.  Michael and Helen Bayko did not agree to letting her get paid and then to use that money to fund the litigation against their interest.  The way the matter was resolved is that Lisa agreed to pay the DOR out of her proceeds alone.  Michael and Helen agreed only on that condition.  Lisa has realized the benefit of her bargain as she took her money a year ago.  Michael and Helen have suffered continuing protracted litigation funded by that distribution.  Allowing Lisa to set aside that agreement now would be unfair.  *(See Exhibit 14, May 2, 2005 Letter from Atty. David Rosen to the parties to United States District Court for District of Massachusetts case # 04-12448-AO.)*  The claim by the Internal Revenue is against Lisa Bayko.  To the extent that the claim succeeds, it should not affect the rights of Michael and Helen Bayko.


SUMMARY

Michael and Helen Bayko have made loans and properly secured them with recorded mortgages against Jeffrey Bayko's interest.  They have done nothing illegal, immoral, or improper.  Much of the money that they lent was paid by their son to Lisa Bayko.   Michael and Helen have never been a party to the divorce and did not have any knowledge regarding the separation agreement or terms of the divorce.  Their affidavits filed here and their Verified Motion for Partial Summary Judgment previously filed attest to these facts.  Lisa admits Michael and Helen have never been

parties to the divorce.  Further, she offers absolutely no evidence tending to suggest they knew the terms of the settlement agreement or the divorce.  Lisa doesn't even allege that Michael and Helen knew the terms, only that they knew that she was getting a divorce.

Without the same parties or privity there is no res judicata.  The statutory link to the actual notice exception fails as the Order arose under M.G.L. c. 208 and the M.G.L. c. 209 §32D only applies to claims under chapter 209.  Even if actual notice were pled to support an equitable claim (which it has not been), that claim would fail.  There was no actual notice.

This Motion for Summary Judgment should be denied.  Further, Michael and Helen Bayko should be given Summary Judgment on their claims.

Date:   6/2/06                          Respectfully submitted,
                                        Helen E. Bayko and Michael J. Bayko,
                                        By their attorney,

                                        /s Timothy D. Sullivan

                                        Timothy D. Sullivan, Esq.
                                        AndoverLaw, P.C.
                                        451 Andover Street, Suite 185
                                        North Andover, MA 01845
                                        (978) 794-0360
                                        BBO No. 563244

Commonwealth of Massachusetts
Department of Revenue
Child Support Enforcement Division

Make checks payable to: Commonwealth of Massachusetts
Mail checks to: Department of Revenue
Child Support Enforcement Division

P.O. BOX 55144
Boston, MA 02205-5144

| COURT | DATE |
| --- | --- |
| Probate Court | 5/2/03 |

YOUR NAME
Lisa Boyko

SOCIAL SECURITY #
03-46-7.969

CUSTODIAL PARENT'S NAME

SOCIAL SECURITY #

AMOUNT OF PAYMENT
$ 6,300.00

P.O. BOX 55144
Boston, MA 02205-5144

NEWBURYPORT BANK
The Newburyport Five Cents Savings Bank
Newburyport, Mass.

21817

53-7150/2113

REMITTER
MICHAEL BOYKO

DATE  05/02/03

PAY TO THE ORDER OF  **** DEPARTMENT OF REVENUE ****    $  6,300.00

THE SUM OF $6,300 dols 0 cts    DOLLARS

THIS DOCUMENT HAS A MICRO-PRINT SIGNATURE LINE, AUTHENTIC WATERMARK AND CHLOROSTAIN PAPER; ABSENCE OF THESE FEATURES WILL INDICATE A COPY

VOID AFTER 1 YEAR
OFFICIAL CHECK

AUTHORIZED SIGNATURE
Mary Ellen Folley

⑈021817⑈ ⑆211371502⑈ 5900 101 6⑈

DOR/CSE OFFICE
ESSEX PROBATE COURT
36 FEDERAL ST, 2ND FLOOR
SALEM, MA 01970



EXHIBIT
1

PROBATE AND FAMILY COURT DEPARTMENT

Essex ss.                                                    Docket No. 01D0875DV1

| | |
|---|---|
| LISA J. BAYKO, )<br>Plaintiff )<br> )<br> )<br> )<br> )<br>JEFFREY L. BAYKO, SR., )<br>Defendant ) | **EMERGENCY EX PARTE MOTION**<br>**TO REVOKE MORTGAGES** |

Now comes the Plaintiff in the above-entitled case and by her attorney,

Charles D. Rotondi, moves that the Court revoke two mortgages (copies

attached hereto, Plaintiff's Exhibit #1A and #1B) from the defendant, Jeffrey L.

Bayko, Sr.. to his parents, Michael J. Bayko and Helen E. Bayko, dated July 19,

2002, in the amount of $46,360.00, and May 25, 2003, in the amount of

$6,304.00.

As grounds therefore, the Plaintiff states the following:

1.    A Separation Agreement regarding the above-described case was duly

signed and accepted by the Essex County Probate Court on May 24,

2002, before Justice Cronin (copy attached, Plaintiff's Exhibit #2).

(a)    The Separation Agreement called for the sale of the marital home

at 7A Graham Avenue, Newbury, Massachusetts. and following

the sale, the Plaintiff wife was going to be paid certain child

support and other monies per Section G.

**CHARLES D. ROTONDI**
Attorney at Law
79 State Street
Newburyport, MA 01950

(978) 462-9393

1

PROBATE & FAMILY C

20

allowed

The within action is hereby denied –

Justice of Probate & Family Court

*[Handwritten in left margin:]* ORDER: This Motion to This Parties Dispute – Challenged action is Denied, without prejudice. Based on the limited and highly contested evidence heard on P-21-03, it appears that 1GO Considerable Discovery is needed, and that this Relief, and the Equity action to which it is more appropriately brought in the pending.

*[Handwritten signature and date: 8/21/03]*

EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT
THE PROBATE AND FAMILY COURT DEPARTMENT

Essex Division

Docket Number: 03E 0076-GC1

Lisa Bayko,
    Plaintiff

v.

Jeffery L. Bayko, Sr.,
Helen Bayko,
Michael Bayko,
Gary Evans
    Defendant

### Memorandum of Decision
**On Helen and Michael Bayko's Motion to Dismiss (filed May 13, 2004)
and Jeffrey Bayko's Motion to Dismiss (filed May 24, 2004)**

On May 13, 2004, the Defendants, Helen and Michael Bayko, filed a Motion to Dismiss

the Plaintiff's, Lisa Bayko, Amended Complaint in Equity to Set Aside Fraudulent Conveyance,

To Declare the Mortgages between Jeffery L. Bayko and Helen and Michael Bayko Null and

Void and to Enforce the Terms of the Judgment of This Court (hereinafter "Amended

Complaint") for lack of subject matter jurisdiction.[1]  On May 24, 2004, Jeffrey Bayko and Gary

Evans also filed a Motion to Dismiss the Plaintiff's Complaint for Reasons of Insufficiency of

Process, Insufficiency of Service of Process, and Failure to State a Claim Upon Which Relief

Can be Granted.  This Memorandum will address subject matter jurisdiction only.

---

[1] The defendants, Helen and Michael Bayko, filed two similar Motions to Dismiss for Lack of Subject Matter Jurisdiction, the first, on September 10, 2003, the second, on April 22, 2004.  The May 13, 2004, Complaint also asks for the rescission of Judge Cronin's order on September 10, 2003, that surplus funds be held in escrow. Said request will be resolved indirectly through this decision.  Also on May 13, 2004, the Plaintiff filed a Motion to Amend and the Amended Complaint, which was allowed.  The Court will treat the Defendants' Motions to Dismiss as related to the most recently Amended Complaint.

EXHIBIT
3

The Plaintiff filed a Complaint seeking equitable relief claiming that the grant of two mortgages by her former husband, Jeffrey Bayko, to his parents, the Defendants Helen and Michael Bayko, that the Plaintiff's were fraudulent. The Plaintiff also seeks relief in this Court from actions that she claims amount to breach of contract, breach of fiduciary duty and legal malpractice.

<u>Fraudulent Conveyance Counts</u>

Two of the Plaintiff's Counts claim Fraudulent Conveyance pursuant to G. L. c. 109A, the Uniform Fraudulent Transfer Act. Only the Supreme Judicial Court and the Superior Court have jurisdiction over statutory claims for fraudulent conveyance. See G. L. c. 214 §3 (8); <u>Foster v. Evans</u>, 384 Mass 687, 689 (1981). The Probate and Family Court, under G. L. c. 215, § 6, only has jurisdiction over nonstatutory creditor's bills,[2] meaning those actions brought by creditors "who have in vain attempted at law to obtain satisfaction of [their] judgments, and who sue in equity for the purpose of reaching property which could not be taken on execution at law." <u>Id.</u> at 690, citing <u>Pettibone v. Toledo, Cincinnati & St. Louis R.R.</u>, 148 Mass. 411, 417 (1889). While is it true that "the probate and family court department shall have original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence . . ." (G. L. c. 215, § 6), a statutory claim for fraudulent conveyance is not cognizable under the general principles of equity jurisprudence. See <u>Blumenthal v. Blumenthal</u>, 303 Mass. 275, 278 (1939). As such, this Court has no jurisdiction over the Plaintiff's statutory claim for fraudulent

---

[2] A "creditor's bill" is an equitable remedy similar to a bill to reach and apply. <u>Foster</u>, 384 Mass. at 691. A bill to reach and apply is governed by G. L. c. 214, § 3, and can only be brought in the Supreme Judicial Court or the Superior Court, as it is a statutory remedy. <u>Id.</u> at 689. Unlike a creditor's bill, the statutory action does not require a creditor to reduce his claim to a judgment or to exhaust legal remedies. <u>Id.</u> at 692.

conveyance.

In <u>Foster v. Evans</u>, the Probate Court relied on G. L. c. 214, § 3 and G. L. c. 215, § 6, to

confer jurisdiction over the Plaintiff's claim to reach and apply an interest in the property of her

former husband that he had allegedly fraudulently conveyed to his new wife. 384 Mass. at 688.

The Supreme Judicial Court held that the Probate Court's reliance on G. L. c. 214, § 3, as

conferring jurisdiction was misplaced, but that the Probate Court did have "jurisdiction [over]

nonstatutory creditors' actions under G. L. c. 215, § 6, and that the essential elements of a

nonstatutory action were before the Probate Court." <u>Id.</u> at 689.  As such, the Probate Court in

that case was able to afford the wife the relief she requested.

In the current case, the Plaintiff's claims for Fraudulent Conveyance were plead

specifically pursuant to a statute (G. L. c. 109A).  While Plaintiff may assert that the essential

elements of a nonstatutory action may exist, conferring jurisdiction over the Plaintiff's claims

under G. L. c. 215, § 6, would not alleviate the problem of this Court's lack of jurisdiction over

the numerous other parties who assert an alleged interest in the surplus proceeds from the sale of

the parties' marital home.[3]  Thus, if this Court exercised its discretion to construe the Plaintiff's

claim for fraudulent conveyance as a nonstatutory creditor's bill action under G. L. c. 215, § 6 (as

the Court did in <u>Foster v. Evans</u>), and decided whether there was in fact a fraudulent conveyance,

it would still be without authority to distribute the surplus proceeds to all rightfully entitled

parties.  Ultimately, the Plaintiff is seeking her share of the proceeds from the sale of the marital

home, and unfortunately, jurisdictional hurdles and numerous parties in interest make this an

inappropriate forum to afford her the relief she requests.

---

[3] For the lengthy list of parties/entities in interest, see GMAC Mortgage Corporation's Motion, filed on
May 26, 2004.

Breach of Contract, Breach of Fiduciary Duty, and Malpractice Counts

Another of the Plaintiff's Counts alleges breach of contract by Defendant Jeffrey L. Bayko for "intentionally encumbering the assets of the Plaintiff" in violation of the parties' separation agreement and seeks monetary damages therefor. The parties' separation agreement was incorporated into a Judgment of Divorce Nisi issued by this Court and, in relevant part, survived as an independent contract. (See Article IV, paragraph C). While the Probate and Family Court has jurisdiction to specifically enforce or to modify a surviving separation agreement, it does not have jurisdiction to determine whether there has been a breach of the contract or to assess damages. As such, the Court does not have jurisdiction to determine whether the Defendant Jeffrey Bayko breached the parties' contract, or to assess money damages.

The Plaintiff also seeks relief under a second breach of contract claim against Attorney Gary Evans, in addition to a Breach of Fiduciary Duty and a Malpractice claim against Attorney Evans, and monetary damages therefor. A determination of whether a contract existed between the Plaintiff and Attorney Evans is not within the equity jurisdiction of this Court, and, further, provided a contractual relationship is found, an assessment of damages is also not within the Probate and Family Court's general grant of equity jurisdiction. Nor are malpractice claims heard in this Court. As such, this Court does not have jurisdiction over any of these claims.

The issues in the instant case are tangled and thorny; furthermore, the Plaintiff in the instant case is in need of a remedy. After thorough examination of the pleadings and the relevant law, however, this Court finds that since there are several parties in interest over which this Court has no jurisdiction, and given the constraints of its equity jurisdiction, the relief sought by the Plaintiff in the Amended Complaint in Equity cannot be granted by the Probate and Family Court.

For the foregoing reasons, this Court does not have subject matter jurisdiction over the Plaintiff's claims for relief, and, therefore, the Defendants' Motions to Dismiss are ALLOWED.

As a result of this decision, Orders shall enter this date as to the following pending Motions:

1)  Lisa Bayko's Amended Complaint in Equity to Set Aside the Fraudulent Conveyance, To Declare Mortgages Between Jeffrey L. Bayko, Sr. and Helen and Michael Bayko Null and Void and To Enforce the Terms of the Judgment (filed April 30, 2004) is DISMISSED.

2)  Helen and Michael Bayko's Motion to Dismiss the Plaintiff's, Lisa Bayko, Amended Complaint in Equity to Set Aside Fraudulent Conveyance, To Declare the Mortgages between Jeffery L. Bayko and Helen and Michael Bayko Null and Void and to Enforce the Terms of the Judgment of This Court (filed May 13, 2004) is ALLOWED.

3)  Jeffrey Bayko and Gary Evans' Motion to Dismiss the Plaintiff's Complaint for Reasons of Insufficiency of Process, Insufficiency of Service of Process, and Failure to State a Claim Upon Which Relief Can be Granted (filed May 24, 2004) is ALLOWED, for the reasons set forth in this Memorandum.

4)  Helen and Michael Bayko's Motion to Dismiss for Lack of Subject Matter Jurisdiction (filed September 10, 2003), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

5)  Helen and Michael Bayko's Motion to Dismiss for Lack of Subject Matter Jurisdiction (filed April 22, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

6)  Helen and Michael Bayko's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (filed April 22, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

7)  Helen and Michael Bayko's Motion to Dismiss for Failure to Join a Necessary Party (filed May 13, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

8)  Helen and Michael Bayko's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (filed May 13, 2004), is DENIED, in light of the allowance of the Motion To Dismiss at Paragraph 2 above.

9)  Lisa Bayko's Motion to Consolidate the Complaint in Equity dated August 13.

2003 and the Complaint for Contempt dated August 13, 2003 (filed April 30, 2004), is DENIED.

10) Lisa Bayko's Motion to Amend the Complaint in Equity (filed April 30, 2004) is ALLOWED.

11) Lisa Bayko's Motion to Have Her Share of the Proceeds of the Marital Home Directed to Her (filed April 30, 2004) is DENIED, without prejudice.

12) Lisa Bayko's Motion to Limit Jeffrey Bayko's Damages in the Complaint in Equity to Those That Were Not Discharged in the Bankruptcy (filed April 30, 2004) is DENIED, without prejudice.

13) Lisa Bayko's Motion for Allowance of Attorney's Fees (filed April 30, 2004) is DENIED, without prejudice.

14) Lisa Bayko's Motion to Strike the Appearance of Gary Evans as Attorney for Jeffrey Bayko (filed April 30, 2004) is DENIED, without prejudice.

15) GMAC Mortgage Corporation's Motion to Intervene to Deposit Funds with Court and/or For Further Direction (filed May 26, 2004) is DENIED. However, IT IS FURTHER ORDERED, that consistent with GMAC's request for relief, it is not required to deposit proceeds from the foreclosure of the marital home per this Court's Order dated September 10, 2003, and is directed to commence an Interpleader Action in Superior Court for purposes of disposing of the surplus funds. Upon filing that Interpleader action, this Court's Order dated September 10, 2003 regarding holding proceeds in escrow shall be vacated.

Date: _September 15, 2004_

_John P. Cronin_

John P. Cronin, Justice
Probate and Family Court Department

## UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

DOCKET NO. <u>05-11746 GAO</u>

|  |  |
|---|---|
| GMAC MORTGAGE CORPORATION, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| JEFFREY L. BAYKO, SR., LISA J. BAYKO, | ) |
| HELEN E. BAYKO, MICHAEL J. BAYKO, | ) |
| HANS R. HAILEY AND THE UNITED | ) |
| STATES OF AMERICA, | ) |
| Defendants | ) |

## <u>AFFIDAVIT OF MICHAEL J. BAYKO</u>

NOW COMES, Michael Bayko, of 7 Graham Avenue, Newbury, Massachusetts and being duly sworn under pains and penalties of perjury, do state the following:

1.   I am 85 years old and my wife, Helen Bayko, is 81 years old.

2.   I have resided and owned 7 Graham Avenue since December of 1951.

3.   My wife and I gave a lot adjacent to my house to my son, Jeffrey Bayko ("Jeffrey"), and his wife, Lisa Bayko ("Lisa"), in 1985 for less than fair market. My wife and I gave Lisa and Jeffrey an easement for a driveway shortly before Lisa filed for divorce.

4.   My wife and I have never been parties in Jeffrey and Lisa's divorce proceedings, including any Complaints for Contempt.

5.   My wife and I did not participate nor did we file an appearance in Jeffrey and Lisa's divorce proceedings, including any Complaints for Contempt.

6.   My wife and I did not receive notice nor did we have an opportunity to be heard with regard to any of Jeffrey and Lisa's divorce proceedings including any Complaints for Contempt.



7.   Jeffrey did not consult or discuss with us the financial details of his divorce proceedings other than to tell us he had no money and ask us for loans at various times during his divorce.

8.   At the time the loans were made, Jeffrey promised us that we would be repaid from his share of the house when it was sold.

9.   Jeffrey promised to give us a mortgage on his share of the house to guarantee that we would be repaid.

10.  Finally, in July, 2002, Jeffrey executed a promissory note and mortgage in the amount of $46,360.00.  This is the amount that Jeffrey had borrowed from us up to that date.

11.  In May, 2003, my wife and I loaned Jeffrey another $6,300.00 and he gave us another mortgage and note against his share of the house.

12.  My wife and I did not have a lawyer represent us for any of the financial transactions. The mortgages and notes were prepared by a lawyer working for Jeffrey.

13.  Jeffrey knew that my wife and I were greatly distressed by his divorce.

14.  At some point, my wife and I were told that Jeffrey and Lisa were divorced.

15.  In the summer of 2003, Jeffrey and Lisa's house was under agreement to be sold.

16.  We understood that the loans would be repaid at the closing.

17.  Shortly before the closing, my wife and I learned that Lisa wanted us to give up our mortgages and let her take our money.

18.  Prior to Lisa filing a lawsuit in Probate Court against us, we had not seen the Separation Agreement and did not know the financial terms of any agreement between Lisa and Jeffrey or the terms of their divorce.

And further affiant saith not.

_Michael J. Bayko_
Michael Bayko

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                                    May 31, 2006

Then came, <u>Michael Bayko</u>, a person identified by his driver's license, and acknowledged the foregoing Affidavit to be his free act and deed, before me,

_____

Timothy D. Sullivan
Notary Public
My commission expires:
6/20/2008

# UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

DOCKET NO. <u>05-11746 GAO</u>

---

GMAC MORTGAGE CORPORATION, )
                              )
                    Plaintiff, )
                              )
v.                            )
                              )
JEFFREY L. BAYKO, SR., LISA J. BAYKO, )
HELEN E. BAYKO, MICHAEL J. BAYKO, )
HANS R. HAILEY AND THE UNITED )
STATES OF AMERICA, )
                              )
                    Defendants )
                              )

---

## <u>AFFIDAVIT OF HELEN E. BAYKO</u>

NOW COMES, Helen E. Bayko, of 7 Graham Avenue, Newbury, Massachusetts and being duly sworn under pains and penalties of perjury, do state the following:

1.   I am 81 years old and my husband, Michael Bayko, is 85 years old.

2.   I have resided and owned 7 Graham Avenue since December of 1951.

3.   My husband and I gave a lot adjacent to my house to my son, Jeffrey Bayko ("Jeffrey"), and his wife, Lisa Bayko ("Lisa"), in 1985 for less than fair market. My husband and I gave Lisa and Jeffrey an easement for a driveway shortly before Lisa filed for divorce.

4.   My husband and I have never been parties in Jeffrey and Lisa's divorce proceedings, including any Complaints for Contempt.

5.   My husband and I did not participate nor did we file an appearance in Jeffrey and Lisa's divorce proceedings, including any Complaints for Contempt.

6.   My husband and I did not receive notice nor did we have an opportunity to be heard with regard to any of Jeffrey and Lisa's divorce proceedings including any Complaints for Contempt.

**EXHIBIT**

**5**

7.  Jeffrey did not consult or discuss with us the financial details of his divorce proceedings other than to tell us he had no money and ask us for loans at various times during his divorce.

8.  At the time the loans were made, Jeffrey promised us that we would be repaid from his share of the house when it was sold.

9.  Jeffrey promised to give us a mortgage on his share of the house to guarantee that we would be repaid.

10. Finally, in July, 2002, Jeffrey executed a promissory note and mortgage in the amount of $46,360.00. This is the amount that Jeffrey had borrowed from us up to that date.

11. In May, 2003, my husband and I loaned Jeffrey another $6,300.00 and he gave us another mortgage and note against his share of the house.

12. My husband and I did not have a lawyer represent us for any of the financial transactions. The mortgages and notes were prepared by a lawyer working for Jeffrey.

13. Jeffrey knew that my husband and I were greatly distressed by his divorce.

14. At some point, my husband and I were told that Jeffrey and Lisa were divorced.

15. In the summer of 2003, Jeffrey and Lisa's house was under agreement to be sold.

16. We understood that the loans would be repaid at the closing.

17. Shortly before the closing, my husband and I learned that Lisa wanted us to give up our mortgages and let her take our money.

18. Prior to Lisa filing a lawsuit in Probate Court against us, we had not seen the Separation Agreement and did not know the financial terms of any agreement between Lisa and Jeffrey or the terms of their divorce.

And further affiant saith not.

_Helen E. Bayko_

Helen E. Bayko

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                    May 31, 2006

Then came, <u>Helen E. Bayko</u>, a person known to me, and acknowledged the foregoing Affidavit to be her free act and deed, before me,

_____

Timothy D. Sullivan
Notary Public
My commission expires:
6/20/2008

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11746 GAO

|  |  |
|---|---|
| GMAC MORTGAGE CORPORATION,<br>Plaintiff<br><br>V.<br><br>JEFFREY L. BAYKO, LISA J. BAYKO,<br>HELEN E. BAYKO, MICHAEL J. BAYKO,<br>HANS HAILEY, AND THE UNITED<br>STATES OF AMERICA,<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT LISA BAYKO'S ANSWERS TO THE
INTERROGATORIES PROPOUNDED BY THE DEFENDANTS
HELEN BAYKO AND MICHAEL BAYKO'S**

**INTERROGATORY NO. 1**

In the document entitled, *"Answer and Cross-Claim of the Defendant Lisa J. Bayko"* filed in the United States District Court for the District of Massachusetts, You state in Number 20 that You have a *"Judgment of Divorce Nisi entered on May 24, 2002 which ordered that the defendant / plaintiff in Cross-Claim, Lisa Bayko was to take out of the Defendant Jeffrey Bayko's share of proceeds of the marital home Child Support arrears in the amount of $42,000.00 ...".*

    a. Identify the exact page, paragraph, clause and line in Your Separation Agreement on which You rely to make this monetary Claim.
    b. Identify all documents which support Your specific monetary claim, including but not limited to invoices, bills canceled checks, bank statements, settlement statements and the like.
    c. Provide a detailed accounting including but not limited to the due date of child support payments, the amount due, the amount paid or past amount due as the case may be; and
    d. Identify all Documents relied upon in answer C.



**EXHIBIT**

6

**ANSWER NO. ONE**

a.    Judgment of Divorce Nisi dated May 24, 2002;
      Separation Agreement dated May 24, 2002, including without
      implied limitation paragraph G (a) and (c).

b.    Judgment of Divorce Nisi dated May 24, 2002;
      Separation Agreement dated May 24, 2002, including without
      implied limitation paragraph G (a) and (c).
      Order dated July 11, 2002;
      Contempt Judgment dated May 1, 2003, without implied limitation
      paragraph F;
      Order and Stipulation dated July 2, 2003;
      Amended Contempt Judgment dated February 9, 2005;
      Contempt Judgment dated October 18, 2005; and
      Department of Revenue accounting as of March 2006

      In addition Mr. Bayko owes uninsured medical expenses which he
      agreed to pay out of his share of the house proceeds (See
      Stipulation of the Parties and Order of the Court dated July 2,
      2003), as follows:

      **Doctors:**

      | | | |
      |---|---|---|
      | Jill | $ 50.74 / 2 | $25.37 |
      | Tyler | $ 50.74 / 2 | $25.37 |
      | Chris | $230.74 / 2 | $115.37 |
      | Corey | $119.54 /2 | $109.27 |

      **Dental**

      | | | |
      |---|---|---|
      | Chris & Corey | $748.28 /2 | $374.14 |
      | Orthodontist | $ 90.00 /2 | $ 45.00 |

      **Medication**

      | | | |
      |---|---|---|
      | Tyler | $1,717.62 | $858.81 |

c.    The Defendant objects to the Defendants, Helen Bayko and
      Michael Bayko's request as being overly broad, irrelevant, unduly
      burdensome and unlikely to lead to admissible evidence.  The
      defendant further states that the information sought by the

Defendants has been reduced to Judgment (s) and /or Contempt Judgment(s) of the Probate and Family Court and therefore any attempt to re-litigate said matter would be barred by the doctrine of res judicata.

Without waiving her objection, the Defendant Lisa Bayko is producing the accounting of The Massachusetts Department of Revenue as of March 2006, Amended Contempt Judgment dated February 9, 2005;Contempt Judgment dated October 18, 2005.

**Doctors:**

| Jill | $ 50.74 / 2 | $25.37 |
|------|------------|--------|
| Tyler | $ 50.74 / 2 | $25.37 |
| Chris | $230.74 / 2 | $115.37 |
| Corey | $119.54 /2 | $109.27 |

**Dental**

| Chris & Corey | $748.28 /2 | $374.14 |
|---------------|-----------|---------|
| Orthodontist | $ 90.00 /2 | $ 45.00 |

**Medication**

| Tyler | $1,717.62 | $858.81 |
|-------|-----------|---------|

    d.    See answer to answer 1(c) above.

The Plaintiff reserves the right to supplement this Answer.

## INTERROGATORY NO. 2

In the document entitled, *"Answer and Cross-Claim of the Defendant Lisa J. Bayko"* filed in the United States District Court for the District of Massachusetts, You state in Number 20 that You have a *"Judgment of Divorce Nisi entered on May 24, 2002 which ordered that the defendant / plaintiff in Cross-Claim, Lisa Bayko was to take out of the Defendant Jeffrey Bayko's share of proceeds of the marital home Child Support paid in advance in the $13,000.00 ...".*

    a.  Identify the exact page, paragraph, clause and line in Your Separation Agreement on which You rely to make this monetary Claim.

    b.  Identify all documents, Orders, Agreements on which you rely to make this monetary claim.

   c. Identify all documents which support Your specific monetary claim, including but not limited to invoices, bills canceled checks, bank statements, settlement statements and the like.

   d. Provide a detailed accounting including but not limited to the due date of child support payments, the amount due, the amount paid or past amount due as the case may be; and

   e. Identify all documents relied upon in answer "d".


## ANSWER NO. TWO

    a.    Judgment of Divorce Nisi dated May 24, 2002;
          Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (c).

    b.    Judgment of Divorce Nisi dated May 24, 2002;
          Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (a) and (c).
          Order dated July 11, 2002;
          Contempt Judgment dated May 1, 2003, without implied limitation paragraph F;
          Order and Stipulation dated July 2, 2003;
          Amended Contempt Judgment dated February 9, 2005;
          Contempt Judgment dated October 18, 2005; and
          Department of Revenue accounting as of March 2006

    c.    The Defendant objects to the Defendants, Helen Bayko and Michael Bayko's request as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. The defendant further states that the information sought by the Defendants has been reduced to Judgment (s) and /or Contempt Judgment(s) of the Probate and Family Court and therefore any attempt to re-litigate said matter would be barred by the doctrine of res judicata.

          Without waiving her objection, the Defendant Lisa Bayko is producing the accounting of The Massachusetts Department of Revenue as of March 2006, Amended Contempt Judgment dated February 9, 2005;Contempt Judgment dated October 18, 2005.

    d.    The Defendant objects to the Defendants, Helen Bayko and Michael Bayko's request as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. The defendant further states that the information sought by the

Defendants has been reduced to Judgment(s) and /or Contempt Judgment(s) of the Probate and Family Court and therefore any attempt to re-litigate said matter would be barred by the doctrine of res judicata.

Without waiving her objection, the Defendant Lisa Bayko is producing the accounting of The Massachusetts Department of Revenue as of March 2006, Amended Contempt Judgment dated February 9, 2005;Contempt Judgment dated October 18, 2005.

e.     See answer to answer 2(c)(d) above.

The Plaintiff reserves the right to supplement this Answer.

## INTERROGATORY NO. 3

In the document entitled, *"Answer and Cross-Claim of the Defendant Lisa J. Bayko"* filed in the United States District Court for the District of Massachusetts, You state in Number 20 that You have a *"Judgment of Divorce Nisi entered on May 24, 2002 which ordered that the defendant / plaintiff in Cross-Claim, Lisa Bayko was to take out of the Defendant Jeffrey Bayko's share of proceeds of the marital home....[c]ollege tuitions for the minor children in the amount of $4,710.00 ...".*

a.  Identify the exact page, paragraph, clause and line in Your Separation Agreement on which You rely to make this monetary Claim.
b.  Identify all documents, Orders, Agreements on which you rely to make this monetary claim.
c.  Identify all documents which support Your specific monetary claim, including but not limited to enrollment information, invoices, bills, canceled checks, bank statements and the like.
d.  Provide a detailed accounting including but not limited to the due date of tuition payment, payor, payee, the amount due, the amount paid or past due as the case may be; and
e.   Identify all documents relied upon in answer "d".

## ANSWER NO. 3

a.     Judgment of Divorce Nisi dated May 24, 2002;
       Separation Agreement dated May 24, 2002, including without
       implied limitation paragraph K.

b.     Judgment of Divorce Nisi dated May 24, 2002;
       Separation Agreement dated May 24, 2002, including without
       implied limitation paragraph G (a) and (c).

Order dated July 11, 2002;
Order and Stipulation dated July 2, 2003;
Amended Contempt Judgment dated February 9, 2005;
Contempt Judgment dated October 18, 2005; and

c.     The Defendant objects to the Defendants, Helen Bayko and
       Michael Bayko's request as being overly broad, irrelevant, unduly
       burdensome and unlikely to lead to admissible evidence.  The
       defendant further states that the information sought by the
       defendant with regards to this particular matter has been reduced to
       Judgment(s) and /or Contempt Judgment(s) of the Probate and
       Family Court and therefore any attempt to re-litigate said matter
       would be barred by the doctrine of res judicata.

       Without waiving her objection, the Defendant Lisa Bayko is
       producing Amended Contempt Judgment dated February 9, 2005;
       Contempt Judgment dated October 18, 2005; and inovoices, and
       credit card statements for tuition and payments thereon for which
       Mr. Bayko is responsible for one-half.

       In addition Mr. Bayko owes unpaid college expenses which he
       agreed to pay out of his share of the house proceeds (See
       Stipulation of the Parties and Order of the Court dated July 2,
       2003), as follows:

       To date Mr. Bayko owes:

       Corey Bayko   $13,324.32 / 2        $6,662.16
       Chris Bayko   $ 1,503.66 / 2        $   751.83

d.     The Defendant objects to the Defendants, Helen Bayko and
       Michael Bayko's request as being overly broad, irrelevant, unduly
       burdensome and unlikely to lead to admissible evidence.  The
       defendant further states that the information sought by the
       Defendants with regards to this particular matter has been reduced
       to Judgment(s) and/ or Contempt Judgment(s) of the Probate and
       Family Court and therefore any attempt to re-litigate said matter
       would be barred by the doctrine of res judicata.

       Without waiving her objection, the Defendant Lisa Bayko is
       producing Amended Contempt Judgment dated February 9, 2005;
       Contempt Judgment dated October 18, 2005; and invoices and

credit card statements for tuition and payments thereon for which Mr. Bayko is responsible for one-half.

To date Mr. Bayko owes:

| Corey Bayko | $13,324.32 / 2 | $6,662.16 |
| Chris Bayko | $ 1,503.66 / 2 | $ 751.83 |

e.    See answer to answer 3(c)(d) above.

The Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 4**

In the document entitled, *"Answer and Cross-Claim of the Defendant Lisa J. Bayko"* filed in the United States District Court for the District of Massachusetts, You state in Number 20 that You have a *"Judgment of Divorce Nisi entered on May 24, 2002 which ordered that the defendant / plaintiff in Cross-Claim, Lisa Bayko was to take out of the Defendant Jeffrey Bayko's share of proceeds of the marital home…$9,000.00 for the settlement proceeds …"*.

    a.    Identify the exact page, paragraph, clause and line in Your Separation Agreement on which You rely to make this monetary Claim.

    b.    Identify all documents, Orders, Agreements on which you rely to make this monetary claim.

    c.    Identify all documents which support Your specific monetary claim, including but not limited to invoices, bills canceled checks, bank statements, settlement statements and the like.

    d.    Provide a detailed accounting including but not limited to the due date of settlement payment, the amount due, the amount paid-received;  and

    e.    Identify all documents relied upon in answer "d".

**ANSWER NO. 4**

    a.    Judgment of Divorce Nisi dated May 24, 2002;
Separation Agreement dated May 24, 2002, including without implied limitation paragraph K.

    b.    Judgment of Divorce Nisi dated May 24, 2002;
Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (b).
Order dated July 11, 2002;

Copy of check dated 1/15/1996 for $24,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00

c.    The Defendant objects to the Defendants, Helen Bayko and Michael Bayko's request as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. The defendant further states that the information sought by the Defendants with regards to this particular matter has been reduced to a Judgment(s) of the Probate and Family Court and therefore any attempt to re-litigate said matter would be barred by the doctrine of res judicata.

Without waiving her objection, the Defendant Lisa Bayko is producing Judgment of Divorce Nisi dated May 24, 2002 and the Separation Agreement was merged into; Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (b); and Order dated July 11, 2002 and Copy of check dated 1/15/1996 for $24,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00 issued by Prudential Securities.

d.    The Defendant objects to the Defendants, Helen Bayko and Michael Bayko's request as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. The defendant further states that the information sought by the Defendants with regards to this particular matter has been reduced to a Judgment of the Probate and Family Court which the Separation Agreement was merged into and therefore any attempt to re-litigate said matter would be barred by the doctrine of res judicata.

Without waiving her objection, the Defendant Lisa Bayko is producing Judgment of Divorce Nisi dated May 24, 2002; Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (b); and Order dated July 11, 2002 and Copy of check dated 1/15/1996 for $24,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00 issued by Prudential Securities.

e.    See answer to answer 4(c)(d) above.


The Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 5**

In the document entitled, "*Answer and Cross-Claim of the Defendant Lisa J. Bayko*" filed in the United States District Court for the District of Massachusetts, You state in Number 20 that You have *a "Judgment of Divorce Nisi entered on May 24, 2002 which ordered that the defendant / plaintiff in Cross-Claim, Lisa Bayko was to take out of the Defendant Jeffrey Bayko's share of proceeds of the marital home...$6,000.00 for credit card Liabilities that were paid for by the Plaintiff...".*

    a. Identify the exact page, paragraph, clause and line in Your Separation Agreement on which You rely to make this monetary Claim.
    b. Identify all documents, Orders, Agreements on which you rely to make this monetary claim.
    c. Identify all documents which support Your specific monetary claim, including but not limited to invoices, bills canceled checks, bank statements, settlement statements and the like.
    d. Provide a detailed accounting including but not limited to the due date of child support payments, the amount due, the amount paid or past amount due as the case may be; and
    e. Identify all documents relied upon in answer "d".


**ANSWER NO. 5**

    a. Judgment of Divorce Nisi dated May 24, 2002;
        Separation Agreement dated May 24, 2002, including without implied limitation paragraph J(2).

    b. Judgment of Divorce Nisi dated May 24, 2002;
        Separation Agreement dated May 24, 2002, including without implied limitation paragraph J (1)(2); and
        Order dated July 11, 2002;

    c. The Defendant objects to the Defendants, Helen Bayko and Michael Bayko's request as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. The defendant further states that the information sought by the Defendants with regards to this particular matter has been reduced to a Judgment of the Probate and Family Court and therefore any attempt to re-litigate said matter would be barred by the doctrine of res judicata.

        Without waiving her objection, the Defendant Lisa Bayko is producing the bills representing the outstanding balances for which the Defendant Jeffrey Bayko was liable at the time of the Judgment

of Divorce Nisi and Separation Agreement dated May 24, 2002
and payments that have been made of said accounts by Lisa Bayko.

To date Mr. Bayko owes:

| | |
|---|---|
| Macy's | $1,038.46 |
| Filenes's | $ 701.91 |
| JC Penney | $2,735.36 |

Correspondence dated March 12, 2002 and March 18, 2002 from
Attorney Charles Rotondi to Attorney Hans Hailey regard the debt
incurred by Mr. Bayko.

d.    The Defendant objects to the Defendants, Helen Bayko and
Michael Bayko's request as being overly broad, irrelevant, unduly
burdensome and unlikely to lead to admissible evidence.  The
defendant further states that the information sought by the
Defendants with regards to this particular matter has been reduced
to a Judgment of the Probate and Family Court and therefore any
attempt to re-litigate said matter would be barred by the doctrine of
res judicata.

Without waiving her objection, the Defendant Lisa Bayko is
producing the bills representing the outstanding balances for which
the Defendant Jeffrey Bayko was liable at the time of the Judgment
of Divorce Nisi and Separation Agreement dated May 24, 2002
and payments that have been made on said accounts by Lisa
Bayko.

To date Mr. Bayko owes:

| | |
|---|---|
| Macy's | $1,038.46 |
| Filenes's | $ 701.91 |
| JC Penney | $2,735.36 |

Correspondence dated March 12, 2002 and March 18, 2002 from
Attorney Charles Rotondi to Attorney Hans Hailey regard the debt
incurred by Mr. Bayko.

e.    See answer to answer 5(c)(d) above.

The Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 6**

If You believe your claim of $74,710.00 has priority over any other existing lien holder claims against Jeffrey Bayko's share, please state the following:

    a.    all facts and information that You have supporting your theory; and

    b.    on what basis You believe You are entitled to a priority distribution from Jeffrey Bayko's share of the proceeds of the marital home.

**ANSWER NO. 6**

The defendant objects to the information sought in Interrogatory No. 6 as it requests a legal explanation which is beyond the scope of discovery. Without waiving her objection; in response to Interrogatory No. 6, please see the following documents:

    a.    (1) Judgment of Divorce Nisi dated May 24, 2002;

        (2) Separation Agreement dated May 24, 2002;.

        (3) Order dated July 11, 2002;

        (4) Contempt Judgment dated May 1, 2003;

        (5) Order and Stipulation dated July 2, 2003;

        (6) Complaint for Contempt Dated August 13, 2003;

        (7) Amended Contempt Judgment dated February 9, 2005;

        (8) Contempt Judgment dated October 18, 2005;

        (9) Department of Revenue accounting as of March 2006;

        (10) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1;

        (11) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004;

        (12) Mortgages between Jeffrey L. Bayko and Helen Bayko and Michael Bayko dated July 19, 2003 and May 25, 2003.

(13)    Invoices for credit card charges (JC Penney, Macy's and Filenes's) due and owing from Jeffrey Bayko to Lisa Bayko pursuant to the terms of the Separation Agreement.

(14)    Check made payable to the Department of Revenue from GMAC in the amount of $10,220.00 for the payment of Jeffrey Bayko's taxes owed to the Commonwealth of Massachusetts.

(15)    Documentation representing the payment of $7,000.00 to Harmon Law Offices for Attorney's Fees associated with the foreclosure and the pending action on behalf of GMAC.

(16)    Correspondence between Attorneys Gary Evans, Charles Rotondi and Hans Hailey:

| Dated 10/07/02 | From Gary Evans to Charles Rotondi |
| Dated 11/20/02 | From Gary Evans to Charles Rotondi |
| Dated 12/11/02 | From Gary Evans to Charles Rotondi |
| Dated 01/15/03 | From Gary Evans to Charles Rotondi |
| Dated 01/16/03 | From Gary Evans to Charles Rotondi |
| Dated 03/05/03 | From Gary Evans to Charles Rotondi |
| Dated 03/06/03 | From Charles Rotondi to Gary Evans |
| Dated 03/12/03 | From Charles Rotondi to Hans Hailey |
| Dated 03/18/03 | From Charles Rotondi to Hans Hailey |
| Dated 04/01/03 | From Charles Rotondi to Hans Hailey |
| Dated 04/16/03 | From Hans Hailey to Charles Rotondi |
| Dated 04/22/03 | From Charles Rotondi to Hans Hailey |
| Dated 07/31/03 | From Charles Rotondi to Gary Evans |

(17)    Copy of check dated 1/15/1996 for $12,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00 issued by Prudential Securities.

(18)    Bills and invoices for uninsured medical expenses.

b.    See answer to 6(a) above.


The Plaintiff reserves the right to supplement this Answer.


**INTERROGATORY NO. 7**

Please fully describe and identify any documents that you rely on to support Your claim that You have an enforceable interest against Jeffrey Bayko's share of the real

property or any proceeds of sale of the Real Property. If any Documents is Identified please give the date, time and place it was recorded in a public place.

**ANSWER NO. 7**

(1) Judgment of Divorce Nisi dated May 24, 2002 recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

(2) Separation Agreement dated May 24, 2002, recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

(3) Order dated July 11, 2002 recorded and docketed on August 6, 2002 at the Essex County Probate and Family Court, Salem, MA;

(4) Order and Stipulation dated July 2, 2003 recorded and docketed on July 7, 2002 at the Essex County Probate and Family Court, Salem, MA;

(5) Contempt Judgment dated May 1, 2003 recorded and docketed on May 2, 2003 at the Essex County Probate and Family Court, Salem, MA;

(6) Amended Contempt Judgment dated February 9, 2005 recorded and docketed on  recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(7) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issues on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1 recorded and docketed on February 17, 2005 at the Essex County Probate and Family Court, Salem, MA;

(8) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(9) Correspondence between Attorneys Gary Evans, Charles Rotondi and Hans Hailey:

Dated 10/07/02    From Gary Evans to Charles Rotondi
Dated 11/20/02    From Gary Evans to Charles Rotondi
Dated 12/11/02    From Gary Evans to Charles Rotondi

13

Dated 01/15/03    From Gary Evans to Charles Rotondi
Dated 01/16/03    From Gary Evans to Charles Rotondi
Dated 03/05/03    From Gary Evans to Charles Rotondi
Dated 03/06/03    From Charles Rotondi to Gary Evans
Dated 03/12/03    From Charles Rotondi to Hans Hailey
Dated 03/18/03    From Charles Rotondi to Hans Hailey
Dated 04/01/03    From Charles Rotondi to Hans Hailey
Dated 04/16/03    From Hans Hailey to Charles Rotondi
Dated 04/22/03    From Charles Rotondi to Hans Hailey
Dated 07/31/03    From Charles Rotondi to Gary Evans

(10)    Department of Revenue Accounting for unpaid child support as of March of 2006;

(11)    Any and all other documents produced in Response to Interrogatory No. 6.

The Plaintiff reserves the right to supplement this Answer.

**INTERROGATORY NO. 8**

Please fully describe any legal theory upon which you may rely to make any claim against Real Property interest which Jeffrey L. Bayko mortgaged to Michael and Helen Bayko.

**ANSWER NO. 8**

The defendant objects on the ground that the matter sought calls for a legal opinion or conclusion which is not permissible under the Fed.R.Civ.P. Rule 26.

Without waiving her objection, the Defendant Lisa Bayko relies upon, M.G.L. c. 209 section 32; M.G.L. c.187 section 15; and M.G.L. c.187 section 17.

Without waiving her further objection, the Plaintiff produces and relies upon the following documents:

1) Judgment of Divorce Nisi dated May 24, 2002 recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

(2) Separation Agreement dated May 24, 2002, recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

(3) Order dated July 11, 2002 recorded and docketed on August 6, 2002 at the Essex County Probate and Family Court, Salem, MA;

(4) Order and Stipulation dated July 2, 2003 recorded and docketed on July 7, 2002 at the Essex County Probate and Family Court, Salem, MA;

(5) Contempt Judgment dated May 1, 2003 recorded and docketed on May 2, 2003 at the Essex County Probate and Family Court, Salem, MA;

(6) Amended Contempt Judgment dated February 9, 2005 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(7) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issues on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1 recorded and docketed on February 17, 2005 at the Essex County Probate and Family Court, Salem, MA;

(8) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(9) Any and all other documents produced in Response to Interrogatory No. 6 and 7.

The Plaintiff reserves the right to supplement this Answer.

Signed under the pains and penalties of perjury on this 15th day of March, 2006.

LISA J. BAYKO



 **Mas**

**COMMONWEALTH OF MASSACHUSETTS**

# Department of Revenue

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▶Case Summary          ▶Request Official Copy          ▶Payment Status          ▶Payments By Case

You are currently logged in as LISA BAYKO.

Below is a breakdown of past due support and case summary information.

This data is current as of 3/15/2006.

---

**CASE #0003063837 with JEFFREY BAYKO (Parent Paying Support)**

**Case Opened:**      06/06/2001

**Current Status:**    Court Order Established

| TYPE OF SUPPORT | FREQUENCY | AMOUNT |
|------|------|------|
| COURT ORDER | Weekly | $250.00 |
| PAYMENT TOWARD ARREARS | Weekly | $62.50 |

| PAST DUE | AMOUNT |
|------|------|
| Support Owed to Parent | $48,034.88 |
| Support Owed to Commonwealth | $0.00 |
| Interest Owed to Parent* | $8,857.74 |
| Interest Owed to Commonwealth* | $0.00 |

*Interest balances are updated at the end of each month.

---

Click here for Information for Parents About Disbursements of Child Support Payments.

Copyright © 2002 Department of Revenue. All rights reserved.



**EXHIBIT**

7

 

COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶ Case Summary    ▶ Request Official Copy    ▶ Payment Status    ▶ Payments By Case

You are currently logged in as LISA BAYKO.

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 10/18/2002 | $3,700.00 | CASHED | 0028245523 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 10/01/2002 | $3,700.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source                    Page 1 of 1




**COMMONWEALTH OF MASSACHUSETTS**
# Department of Revenue

*Child Support Enforc*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▸Case Summary        ▸Request Official Copy        ▸Payment Status        ▸Payments By Case

You are currently logged in as LISA BAYKO.

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 03/07/2003 | $44.31 | CASHED | 0029180987 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 02/14/2003 | $44.31 | ENFORCEMENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR – CSE – Payment History – Payment Source                                    Page 1 of 1

 COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

  **Mas**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶ Case Summary     ▶ Request Official Copy     ▶ Payment Status     ▶ Payments By Case

You are currently logged in as LISA BAYKO.

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 03/12/2003 | $501.00 | CASHED | 0029212689 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 02/19/2003 | $501.00 | ENFORCEMENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source

Page 1 of 1

  

**COMMONWEALTH OF MASSACHUSETTS**
**Department of Revenue**

*Child Support Enforc*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶ Case Summary   ▶ Request Official Copy   ▶ Payment Status   ▶ Payments By Case

You are currently logged in as LISA BAYKO.

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|---|---|---|---|---|
| 03/13/2003 | $451.59 | CASHED | 0029221073 | |

| DATE | AMOUNT | SOURCE |
|---|---|---|
| 02/20/2003 | $451.59 | ENFORCEMENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE – Payment History – Payment Source

  **Mas**

 COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▸ Case Summary ▸ Request Official Copy ▸ Payment Status ▸ Payments By Case

You are currently logged in as LISA BAYKO.

---

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 05/22/2003 | $6,300.00 | CASHED | 0029693704 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 05/08/2003 | $6,300.00 | PARENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.



COMMONWEALTH OF MASSACHUSETTS
# Department of Revenue



*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |

▶Case Summary ▶Request Official Copy ▶Payment Status ▶Payments By Case

You are currently logged in as LISA BAYKO.

---

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 12/26/2003 | $400.00 | CASHED | 0031034172 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 12/26/2003 | $400.00 | PARENT |

---

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source

  

**COMMONWEALTH OF MASSACHUSETTS**
# Department of Revenue

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▸ Case Summary        ▸ Request Official Copy        ▸ Payment Status        ▸ Payments By Case

You are currently logged in as LISA BAYKO.

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 02/24/2004 | $552.00 | CASHED | 0031390475 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 02/24/2004 | $552.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.





Mas

COMMONWEALTH OF MASSACHUSETTS
## Department of Revenue

Child Support Enfor

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▶Case Summary     ▶Request Official Copy     ▶Payment Status     ▶Payments By Case

You are currently logged in as LISA BAYKO.

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 03/08/2004 | $1,112.94 | CASHED | 0031473977 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 03/08/2004 | $1,112.94 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source



**Mas**
Your Cover



COMMONWEALTH OF MASSACHUSETTS
## Department of Revenue

*Child Support Enforc*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Privac |
|------|--------------------|--------------------|------------------|-----------|---------|--------|

▸Case Summary    ▸Request Official Copy    ▸Payment Status    ▸Payments By Case

You are currently logged in as LISA BAYKO.

---

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 10/04/2005 | $25.00 | TRANSFERRED TO BANK | 0023657327 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 10/04/2005 | $25.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.




**COMMONWEALTH OF MASSACHUSETTS**

# Department of Revenue

*Child Support Enforc*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▸ Case Summary    ▸ Request Official Copy    ▸ Payment Status    ▸ Payments By Case

You are currently logged in as **LISA BAYKO**.

**List of Payments Issued**

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|------|------|------|------|
| 05/12/2004 | $1,770.14 | CASHED | 0031871040 | |

| DATE | AMOUNT | SOURCE |
|------|------|------|
| 04/21/2004 | $1,770.14 | ENFORCEMENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source                    Page 1 of 1

 

**Mas**
Your Growth

COMMONWEALTH OF MASSACHUSETTS
# Department of Revenue

*Child Support Enforc*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|--------------------|--------------------|-----------------|-----------|--------|-------|

▸ Case Summary        ▸ Request Official Copy        ▸ Payment Status        ▸ Payments By Case

You are currently logged in as LISA BAYKO.

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|---------------------|----------------------------------|
| 09/27/2005 | $25.00 | TRANSFERRED TO BANK | 0023598778 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 09/27/2005 | $25.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

Mass DOR - CSE - Payment History - Payment Source

Page 1 of 1

  

Mas

COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

*Child Support Enfor*

| Home | Payment Information | Recent Case Activity | Account Services | Contact Us | Log Off | Priva |
|------|------|------|------|------|------|------|

▸ Case Summary        ▸ Request Official Copy        ▸ Payment Status        ▸ Payments By Case

You are currently logged in as **LISA BAYKO.**

List of Payments Issued

Payment Source(s)

Below is a list of receipts for this payment:

| DATE | AMOUNT | STATUS | CHECK/CONTROL NUMBER | REPLACED CHECK/CONTROL NUMBER(S) |
|------|--------|--------|----------------------|----------------------------------|
| 10/08/2005 | $25.00 | TRANSFERRED TO BANK | 0023692646 | |

| DATE | AMOUNT | SOURCE |
|------|--------|--------|
| 10/08/2005 | $25.00 | PARENT |

Copyright © 2002 Department of Revenue. All rights reserved.

# AndoverLaw, P.C.®

451 Andover Street, Suite 185
North Andover, MA 01845
TEL (978) 794-0360
FAX (978) 794-5457

April 6, 2006

Christine Faro, Esq.
79 State Street
Newburyport, MA 01950

Dear Attorney Faro:

I am in receipt of "Defendant Lisa Bayko's Answers to Interrogatories Propounded by the Defendants Helen Bayko and Michael Bayko's," [sic], "Defendant Lisa Bayko's Amended Answers to the Interrogatories Propounded by the Defendants Helen Bayko and Michael Bayko's" [sic], and Defendant Lisa Bayko's Second Amended Answers to the Interrogatories Propounded by the Defendants Helen Bayko and Michael Bayko's" [sic]. I have reviewed these documents carefully. Please be advised that you have failed to comply with several of our discovery requests.

<u>Interrogatory No. 1</u>
In your answer to the subsection (b) to the first Interrogatory, you failed to identify, as defined in the 'Definitions' section of the Interrogatories, the documents which support your specific monetary claim. You merely listed names of court documents, with no reference to the name of the court, name of the case, or docket number. Please provide the information for each document as to comply with the definition of identify. Additionally, please understand that by not identifying any invoices, bills, canceled checks, bank statements, or the like, which support your monetary claim for child support arrears in the amount of $42,000.00, you will be estopped from relying on any of them at trial.

You objected to subsection (c), which requests an accounting of child support as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. Please understand that it will be extremely difficult for you to support your claim for monies due to your client without providing an accounting as evidence. Without an accounting, we have no way of understanding what was due. Therefore, our request is not only relevant, but also quite narrow in scope. In addition, such an objection will prevent you from relying on any accounting at trial.

Within your answer to subsection (c), you "produced" a document you title "Department of Revenue Accounting." However, this document is not an accounting at all, rather it is a compilation of miscellaneous records of various payments purportedly from the Massachusetts Department of Revenue. Finally, you fail to respond to part (d) of our first Interrogatory.


EXHIBIT
8

Interrogatory No. 2

In your answer to subsection (b), you have failed to identify, as defined in the 'Definitions' section of the Interrogatories, the documents on which you rely to make your monetary claim. You merely listed names of court documents with no reference to the name of the court, name of the case, or docket number. Please provide the information for each document, so as to comply with the definition of identify.

You objected to subsection (c), which requests support for your monetary claim, as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. Within your answer to this subsection, you "produced" a document, which you title "Department of Revenue Accounting." However, this document is not an accounting at all, rather it is a compilation of miscellaneous records of various payments purportedly from the Massachusetts Department of Revenue.

In addition, by objecting and failing to offer any invoices, bills, canceled checks, bank statements, or the like, which support your monetary claim for advance child support in the amount of $13,000.00, you will be estopped from relying on any of them at trial.

In your objection, you also indicated that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were.

You also objected to our request in subsection (d) for an accounting. Please understand that it will be extremely difficult for you to support your claim for monies due to your client without providing an accounting as evidence. Without an accounting, we have no way of understanding what was due. Therefore, our request is not only relevant, but quite narrow in scope. In addition, such an objection will prevent you from relying on any accounting at trial.

Within your answer to subsection (d), you "produced" a document, which you title "Department of Revenue Accounting." However, this document is not an accounting at all, rather it is a compilation of miscellaneous records of various payments purportedly from the Massachusetts Department of Revenue. Finally, you failed to answer subsection (e).

Interrogatory No. 3

In your answer to the subsection (b) to the third Interrogatory, you failed to identify, as defined in the 'Definitions' section of the Interrogatories, the documents which support your specific monetary claim. You merely listed names of court documents, with no reference to the name of the court, name of the case, or docket number. Please provide the information for each document as to comply with the definition of identify.

You objected to the request in subsection (c) as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. However, without referencing any bills, canceled checks, or the like, you would be unable to support your monetary claim. Therefore, our request is not only relevant, but also quite narrow in scope. Additionally, by objecting and failing to offer any invoices, bills, canceled checks, bank statements, or the like, which support

your monetary claim for college tuition in the amount of $4,710.00, you will be estopped from relying on any of them at trial.

You also objected on the basis that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were.

You objected to the request in subsection (d) as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. However, without an accounting of the tuition payments, we have no way of understanding what was do and you have no way to support the specific amount of your monetary claim. Therefore, our request is not only relevant, but quite narrow in scope.

You also objected on the basis that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were. And finally, you fail to answer subsection (e).

Interrogatory No. 4
You have failed to respond to subsection (a) of the fourth Interrogatory. You named paragraph K as the paragraph you rely on to make your claim, however, in the separation agreement which you produced, to which I assume you are referring, paragraph K does not reference the $9,000.00 settlement proceeds. In your response to subsection (b), you have failed to identify, as defined in the 'Definitions' section of the Interrogatories, the documents on which you rely to make your monetary claim. Please provide the information for each document as to comply with the definition of identify.

In your response to subsection (c), you objected as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. However, without referencing any bills, canceled checks, or the like, you would be unable to support your monetary claim. Therefore, our request was not only relevant, but also quite narrow in scope. You also objected on the basis that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were. With regard to the documents you "produced" in your answer to (c), any document you failed to identify in this response will result in its suppression at trial.

In your response to subsection (d) you objected on the same grounds as in subsection (c). However, without an accounting of the tuition payments, we have no way of understanding what was due and you have no way to support the specific amount of your monetary claim. Therefore, our request is not only relevant, but quite narrow in scope. You also objected on the basis that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were. And you fail to respond to subsection (e).

Interrogatory No. 5
In your response to subsection (b), you have failed to identify, as defined in the 'Definitions'

section of the Interrogatories, the documents on which you rely to make your monetary claim. Additionally, you name paragraph J(1)(2) as the paragraph you rely on to make your claim. However, in the separation agreement which you produced, to which I assume you are referring, contains no paragraph J(1)(2). Please provide the information for each document as to comply with the definition of identify.

You objected to the request in subsection (c) as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. However, without referencing any bills, canceled checks, or the like, you would be unable to support your monetary claim. Therefore, our request is not only relevant, but also quite narrow in scope. You also objected on the basis that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were. Despite your objection, you "produced" bills and payments, which are not sufficiently described so that we understand what they are and are not identified, as defined in the 'Definitions' section of the Interrogatories. Please provide the information for each document as to comply with the definition of identify.

You also objected to the request in subsection (d) as being overly broad, irrelevant, unduly burdensome and unlikely to lead to admissible evidence. However, without producing an accounting, we have no way of understanding what was due and you have no way of supporting your specific monetary claim for $6,000.00. Therefore, our request is not only relevant, but also quite narrow in scope. You also objected on the basis that the information sought has been reduced to judgment in the Probate and Family Court, but you did not state in which case the Court made that decision or who the parties to that case were.

Despite your objection, you "produced" bills and payments, which are not sufficiently described so that we understand what they are and are not identified, as defined in the 'Definitions' section of the Interrogatories. Please provide the information for each document as to comply with the definition of identify. Also, you also listed names of department stores, with a monetary amount next to each, which is by no means an accounting and does not respond to our request.

You failed to respond to subsection (e).

Interrogatory No. 6

You objected to our request in the sixth Interrogatory, claiming it requests a legal explanation which is beyond the scope of discovery. However, we requested all facts and information supporting your theory and on what basis you believe you are entitled to a priority distribution. Such a request is well within the scope of discovery, according to Federal Rule of Civil Procedure 33(c), which states an interrogatory "is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact."

Additionally, you instructed us to reference several documents, none of which were identified, as defined in the 'Definitions' section of the Interrogatories, or described with such particularity that we would be able to obtain copies of the same. In your amended response to Interrogatory No.

6, you also failed to identify the documents as required in the 'Definitions' section of the Interrogatories  Please provide the information for each document as to comply with the definition of identify.

Interrogatory No. 7

In your answer to our seventh Interrogatory you failed to identify the documents you numbered as (1), (2), (3), (4), (5), (6), (9), (10) as required in the 'Definitions' section of the Interrogatories or described with such particularity that we would be able to obtain copies of the same. Additionally, you failed to identify, as defined in the 'Definitions' section of the Interrogatories, the documents you numbered as (12) in your answer in the Amended Answers to Interrogatories. Please provide the information for each document as to comply with the definition of identify.

Interrogatory No. 8

You objected to our request in the eighth Interrogatory, but you "produced" several documents. You failed to identify, as required in the 'Definitions' section of the Interrogatories, documents you numbered as (1), (2), (3), (4), (5), and (6).  Additionally,  you failed to identify, as defined in the 'Definitions' section of the Interrogatories, the documents you number as (12) in your answer in the Amended Answers to Interrogatories and the documents you identify as (1), (2), (3), (4), (5), (6) in the Second Amended Answers to Interrogatories.  Please provide the information for each document as to comply with the definition of identify.


I am also in receipt of "Defendant Lisa Bayko's Response to the Defendants Helen and Michael Bayko's First Request for Production of Documents" and "Defendant Lisa Bayko's Amended Response to the Defendants Helen Bayko and Michael Bayko's First Request for Production of Documents." I have reviewed the above together with the documents you produced.  There are several documents, which you list in your Response, but are not included in the packet of documents you produced.

Request No. 12

We do not have a copy of the documents you numbered as (12) and (13) in your Response to our Request No. 12, namely, a check made payable to the Department of Revenue from GMAC or its Attorneys in the amount of $10,220.00 for the payment of Jeffrey Bayko's taxes owed to the Commonwealth of Massachusetts and documentation representing the payment of $7,000.00 to Harmon Law Offices for Attorney Fees associated with the foreclosure and the pending action on behalf of GMAC.

We do not have a copy of the following correspondence listed as number (15) in your Response to our Request No. 12:

|  |  |
|---|---|
| Dated 12/11/02 | From Gary Evans to Charles Rotondi; |
| Dated 3/5/03 | From Gary Evans to Charles Rotondi; |
| Dated 3/12/03 | From Charles Rotondi to Hans Hailey; |
| Dated 3/18/03 | From Charles Rotondi to Hans Hailey; |
| Dated 4/1/03 | From Charles Rotondi to Hans Hailey; |
| Dated 4/16/03 | From Hans Hailey to Charles Rotondi; |

Dated 4/22/03        From Charles Rotondi to Hans Hailey.
Please either provide us with copies of the missing documents or allow us time to inspect and copy the same.

Request No. 13

We do not have a copy of the documents you numbered as (12) and (13) in your Response to our Request No. 13, namely, a check made payable to the Department of Revenue from GMAC or its Attorneys in the amount of $10,220.00 for the payment of Jeffrey Bayko's taxes owed to the Commonwealth of Massachusetts and documentation representing the payment of $7,000.00 to Harmon Law Offices for Attorney Fees associated with the foreclosure and the pending action on behalf of GMAC.

We do not have a copy of the following correspondence listed as number (15) in your Response to our Request No. 13:

| | |
|---|---|
| Dated 12/11/02 | From Gary Evans to Charles Rotondi; |
| Dated 3/5/03 | From Gary Evans to Charles Rotondi; |
| Dated 3/12/03 | From Charles Rotondi to Hans Hailey; |
| Dated 3/18/03 | From Charles Rotondi to Hans Hailey; |
| Dated 4/1/03 | From Charles Rotondi to Hans Hailey; |
| Dated 4/16/03 | From Hans Hailey to Charles Rotondi; |
| Dated 4/22/03 | From Charles Rotondi to Hans Hailey. |

Please either provide us with copies of the missing documents or allow us time to inspect and copy the same.

In a good faith attempt to resolve this matter, I am asking that you please provide us with the missing information and documents, as described above, from your incomplete answers to "Interrogatories Propounded by Helen E. Bayko and Michael J. Bayko to be Answered by Lisa J. Bayko" and "Helen E. Bayko and Michael J. Bayko's Request for Production of Documents to Lisa J. Bayko" by Tuesday, April 11, 2006. If you refuse to provide any of the above information, please consider this letter a request for a conference on all contested discovery matters. I am available for a telephone discovery conference on Tuesday April 11, 2006 at 11:00 am. Thank you for your prompt attention to this matter.

Sincerely,

Timothy D. Sullivan, Esq.
TDS/jlp

CHRISTINE ANN FARO
ATTORNEY AT LAW

79 STATE STREET
NEWBURYPORT, MA 01950

TEL (978) 462-4833
FAX (978) 462-2475

April 13, 2006

By ~~Fax and Mail~~ *HAND*

Timothy J. Sullivan, Esq.
Andover law Offices
451 Andover Street,
Suite 185
Andover, Ma 01845

RE:    **GMAC v. Jeffrey L. Bayko et als.**
       **U.S. District Court Docket No. 05-11746 GAO**

Dear Attorney Sullivan:

This letter is in response to your letter dated April 6, 2006 and after our discovery Conference pursuant to Local Rule 37.1. With regards to the same, I respond as follows:

**Interrogatory No. 1**

In response to Interrogatory No. 1, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

   Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained....

(b) Any and all information sought under your terms and "definitions" can be derived


EXHIBIT
9

Page Two
April 13, 2006
Timothy Sullivan

from the records produced. The Defendant has produced the following records:

> Judgment of Divorce Nisi dated May 24, 2002;
> Separation Agreement dated May 24, 2002, including without
> implied limitation paragraph G (a) and (c).
> Order dated July 11, 2002;
> Contempt Judgment dated May 1, 2003, without implied limitation
> paragraph F;
> Order and Stipulation dated July 2, 2003;
> Amended Contempt Judgment dated February 9, 2005;
> Contempt Judgment dated October 18, 2005; and
> Department of Revenue accounting as of March 2006
> Records of Uninsured Medical expenses

The amount of child support owed has been reduced to a Contempt Judgment of
the Essex County Probate & Family Court and said Judgment is based upon the records
of the Department of Revenue. Ms. Bayko was only paid through the Department of
Revenue.

(c)    Any and all information sought under your terms and "definitions" can be derived
from the records produced. The Defendant has produced the following records:

> Accounting of the Massachusetts Department of Revenue as of
> March 2006
> Amended Contempt Judgment dated February 9, 2005
> Contempt Judgment dated October 18, 2005.
> Records of Uninsured Medical expenses

The amount of child support owed has been reduced to a Contempt Judgment of
the Essex County Probate & Family Court and said Judgment is based upon the records
of the Department of Revenue. Ms. Bayko was only paid through the Department of
Revenue.

(c) I referred to Answer No, 1 (c)

Page Three
April 13, 2006
Timothy Sullivan

**Interrogatory No. 2**

    In response to Interrogatory No. 2, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

    Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained....

(b)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> Judgment of Divorce Nisi dated May 24, 2002;
> Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (a) and (c).
> Order dated July 11, 2002;
> Contempt Judgment dated May 1, 2003, without implied limitation paragraph F;
> Order and Stipulation dated July 2, 2003;
> Amended Contempt Judgment dated February 9, 2005;
> Contempt Judgment dated October 18, 2005; and
> Department of Revenue accounting as of March 2006

    The amounts owed have been reduced to a judgment(s) of the Essex County Probate and Family Court and have already been litigated.

(c)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> The Massachusetts Department of Revenue Accounting as of March 2006
> Amended Contempt Judgment dated February 9, 2005
> Contempt Judgment dated October 18, 2005.
> Records of Uninsured Medical expenses

Page Four
April 13, 2006
Timothy Sullivan

The issue with regards to one years child support paid in advance has been reduced to a Judgment of the Probate & Family Court (judgment of Divorce Nisi and Separation Agreement) and amount of child support owed has been reduced to a Contempt Judgment of the Essex County Probate & Family Court and said Judgment is based upon the records of the Department of Revenue. Ms. Bayko was only paid through the Department of Revenue.

(d)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> The Massachusetts Department of Revenue Accounting as of March 2006
> Amended Contempt Judgment dated February 9, 2005
> Contempt Judgment dated October 18, 2005.
> Records of Uninsured Medical expenses

The issue with regards to one years child support paid in advance has been reduced to a Judgment of the Probate & Family Court (judgment of Divorce Nisi and Separation Agreement) and amount of child support owed has been reduced to a Contempt Judgment of the Essex County Probate & Family Court and said Judgment is based upon the records of the Department of Revenue. Ms. Bayko was only paid through the Department of Revenue.

(e) I referred to Answer 2(c) and (d).

## Interrogatory No. 3

In response to Interrogatory No. 3, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained....

Page Five
April 13, 2006
Timothy Sullivan

(b)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> Judgment of Divorce Nisi dated May 24, 2002;
> Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (a) and (c).
> Order dated July 11, 2002;
> Order and Stipulation dated July 2, 2003;
> Amended Contempt Judgment dated February 9, 2005 and
> Contempt Judgment dated October 18, 2005

(c)   Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> Amended Contempt Judgment dated February 9, 2005
> Contempt Judgment dated October 18, 2005
> Invoices and credit card statements for tuition and payments thereon.
> Stipulation of the Parties and Order of the Court dated July 2, 2003

The issue is not what has been paid and who paid it- it is that Mr. Bayko, pursuant to the Judgment of Divorce Nisi and Separation Agreement is obligated to pay one-half and by Stipulation of the Parties which was entered into as an order of the Court dated July 2, 2003, the Defendant Jeffrey Bayko ordered to pay said amounts through his share of the proceeds of the marital home.

(d)   Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> Amended Contempt Judgment dated February 9, 2005
> Contempt Judgment dated October 18, 2005
> Invoices and credit card statements for tuition and payments thereon.
> Stipulation of the Parties and Order of the Court dated July 2, 2003

The issue is not what has been paid and who paid it- it is that Mr. Bayko, pursuant to the Judgment of Divorce Nisi and Separation Agreement is obligated to pay one-half and by Stipulation of the Parties which was entered into as an order of the Court dated July 2, 2003, the Defendant Jeffrey Bayko ordered to pay said amounts through his share of the proceeds of the marital home.

(e)    I referred to Answer 3(c) and (d).

Page Six
April 13, 2006
Timothy Sullivan

## Interrogatory No. 4

In response to Interrogatory No. 4, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained....

(a)    Will amend Interrogatory to refer to Paragraph G(b) of the Separation Agreement.

(b)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

Judgment of Divorce Nisi dated May 24, 2002;
Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (b).
Order dated July 11, 2002;
Copy of check dated 1/15/1996 for $24,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00

(c)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

Judgment of Divorce Nisi dated May 24, 2002;
Separation Agreement dated May 24, 2002, including without implied limitation paragraph G (b).
Order dated July 11, 2002;
Copy of check dated 1/15/1996 for $24,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00

(d)    Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

Page Seven
April 13, 2006
Timothy Sullivan

      Judgment of Divorce Nisi dated May 24, 2002;
      Separation Agreement dated May 24, 2002, including without implied limitation
      paragraph G (b).
      Order dated July 11, 2002;
      Copy of check dated 1/15/1996 for $24,000.00 made payable to Jeffrey Bayko in
      the amount of $24,000.00

(e)     Referred to paragraph 4 (c) (d)


### Interrogatory No. 5

     In response to Interrogatory No. 5, the Defendant Lisa Bayko has produced
documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,**
which states in part

     Where the answer to an interrogatory may be derived or ascertained from
     business records of the party upon examination of the interrogatory has been
     served or from an examination, audit or inspection of such business records,
     including a compilation, abstract summary thereof, and the burden of deriving or
     ascertaining the answer is substantially the same for the party serving the
     interrogatory as for the party served, it is a sufficient answer to such
     interrogatory to specify records from which the answer may be derived or
     ascertained….

(b)    Any and all information sought under your terms and "definitions" can be derived
from the records produced. The Defendant has produced the following records:

      Judgment of Divorce Nisi dated May 24, 2002;
      Separation Agreement dated May 24, 2002, including without implied
      limitation paragraph J (1)(2); and
      Order dated July 11, 2002;


(c)    Any and all information sought under your terms and "definitions" can be derived
from the records produced. The Defendant has produced the following records:

      Correspondence dated March 12, 2002 and March 18, 2002 from Attorney
      Charles Rotondi to Attorney Hans Hailey regard the debt incurred by Mr.
      Bayko

Page Eight
April 13, 2006
Timothy Sullivan

Again, this issue with regards to the credit card debt has been reduced to a Judgment of the Probate & Family Court (Judgment of Divorce Nisi and Separation Agreement). The Defendant has produced correspondence with the documents with regards to the debt owed by Mr. Bayko attached thereto.

(d)     Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> Correspondence dated March 12, 2002 and March 18, 2002 from Attorney Charles Rotondi to Attorney Hans Hailey regard the debt incurred by Mr. Bayko

Again, this issue with regards to the credit card debt has been reduced to a Judgment of the Probate & Family Court (Judgment of Divorce Nisi and Separation Agreement). The Defendant has produced correspondence with the documents with regards to the debt owed by Mr. Bayko attached thereto.

(d)     I referred to 5(c)(d) above.

## Interrogatory No. 6

In response to Interrogatory No. 6, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

> Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained....

(a)     Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

> (1) Judgment of Divorce Nisi dated May 24, 2002;

> (2) Separation Agreement dated May 24, 2002;.

Page Nine
April 13, 2006
Timothy Sullivan

(3) Order dated July 11, 2002;

(4) Contempt Judgment dated May 1, 2003;

(5) Order and Stipulation dated July 2, 2003;

(6) Complaint for Contempt Dated August 13, 2003;

(7) Amended Contempt Judgment dated February 9, 2005;

(8) Contempt Judgment dated October 18, 2005;

(9) Department of Revenue accounting as of March 2006;

(10) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1;

(11) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004;

(12) Mortgages between Jeffrey L. Bayko and Helen Bayko and Michael Bayko dated July 19, 2003 and May 25, 2003.

(13)    Invoices for credit card charges (JC Penney, Macy's and Filenes's) due and owing from Jeffrey Bayko to Lisa Bayko pursuant to the terms of the Separation Agreement.

(14)    Check made payable to the Department of Revenue from GMAC in the amount of $10,220.00 for the payment of Jeffrey Bayko's taxes owed to the Commonwealth of Massachusetts.

(15)    Documentation representing the payment of $7,000.00 to Harmon Law Offices for Attorney's Fees associated with the foreclosure and the pending action on behalf of GMAC.

(16)    Correspondence between Attorneys Gary Evans, Charles Rotondi and Hans Hailey:

Page Ten
April 13, 2006
Timothy Sullivan

        Dated 10/07/02    From Gary Evans to Charles Rotondi
        Dated 11/20/02    From Gary Evans to Charles Rotondi
        Dated 12/11/02    From Gary Evans to Charles Rotondi
        Dated 01/15/03    From Gary Evans to Charles Rotondi
        Dated 01/16/03    From Gary Evans to Charles Rotondi
        Dated 03/05/03    From Gary Evans to Charles Rotondi
        Dated 03/06/03    From Charles Rotondi to Gary Evans
        Dated 03/12/03    From Charles Rotondi to Hans Hailey
        Dated 03/18/03    From Charles Rotondi to Hans Hailey
        Dated 04/01/03    From Charles Rotondi to Hans Hailey
        Dated 04/16/03    From Hans Hailey to Charles Rotondi
        Dated 04/22/03    From Charles Rotondi to Hans Hailey
        Dated 07/31/03    From Charles Rotondi to Gary Evans

(17)    Copy of check dated 1/15/1996 for $12,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00 issued by Prudential Securities.

(18)    Bills and invoices for uninsured medical expenses.

The defendant Lisa Bayko also provided an Amended Answer dated March 17, 2006 to Interrogatory No. 6 which provided:

a.    Financial statements of Jeffrey Bayko filed with the Essex County Probate & Family Court dated May 29, 2001, July 5, 2001, November 29, 2001, and May 24, 2002.

**Interrogatory No. 7**

In response to Interrogatory No. 7, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the

Page Eleven
April 13, 2006
Timothy Sullivan

interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained....

Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following records:

(1) Judgment of Divorce Nisi dated May 24, 2002;

(2) Separation Agreement dated May 24, 2002;.

(3) Order dated July 11, 2002;

(4) Contempt Judgment dated May 1, 2003;

(5) Order and Stipulation dated July 2, 2003;

(6) Complaint for Contempt Dated August 13, 2003;

(7) Amended Contempt Judgment dated February 9, 2005;

(8) Contempt Judgment dated October 18, 2005;

(9) Department of Revenue accounting as of March 2006;

(10) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1;

(11) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004;

(12) Mortgages between Jeffrey L. Bayko and Helen Bayko and Michael Bayko dated July 19, 2003 and May 25, 2003.

(13)    Invoices for credit card charges (JC Penney, Macy's and Filenes's) due and owing from Jeffrey Bayko to Lisa Bayko pursuant to the terms of the Separation Agreement.

Page Twelve
April 13, 2006
Timothy Sullivan

(14)    Check made payable to the Department of Revenue from GMAC in the amount of $10,220.00 for the payment of Jeffrey Bayko's taxes owed to the Commonwealth of Massachusetts.

(15)    Documentation representing the payment of $7,000.00 to Harmon Law Offices for Attorney's Fees associated with the foreclosure and the pending action on behalf of GMAC.

(17)    Correspondence between Attorneys Gary Evans, Charles Rotondi and Hans Hailey:

Dated 10/07/02       From Gary Evans to Charles Rotondi
Dated 11/20/02       From Gary Evans to Charles Rotondi
**Dated 12/11/01**       From Gary Evans to Charles Rotondi
Dated 01/15/03       From Gary Evans to Charles Rotondi
Dated 01/16/03       From Gary Evans to Charles Rotondi
Dated 03/05/03       From Gary Evans to Charles Rotondi
Dated 03/06/03       From Charles Rotondi to Gary Evans
**Dated 03/12/02**       From Charles Rotondi to Hans Hailey
**Dated 03/18/02**       From Charles Rotondi to Hans Hailey
**Dated 04/01/02**       From Charles Rotondi to Hans Hailey
**Dated 04/16/02**       From Hans Hailey to Charles Rotondi
**Dated 04/22/02**       From Charles Rotondi to Hans Hailey
Dated 07/31/03       From Charles Rotondi to Gary Evans

An amended answer to interrogatories and response to production of documents will be submitted, however, you have agreed that you have received all of the above documents with the exception of the Correspondence dated March 18, 2002 from Charles Rotondi to Hans Hailey and Fax Cover sheet from Gary Evans to Charles Rotondi dated March 5, 2003 which are included herewith.

(18)    Copy of check dated 1/15/1996 for $12,000.00 made payable to Jeffrey Bayko in the amount of $24,000.00 issued by Prudential Securities.

(19)    Bills and invoices for uninsured medical expenses.

The defendant Lisa Bayko also provided an Amended Answer dated March 17, 2006 to Interrogatory No. 7 which provided:

Page Thirteen
April 13, 2006
Timothy Sullivan

      b.      Financial statements of Jeffrey Bayko filed with the Essex County Probate & Family Court dated May 29, 2001, July 5, 2001, November 29, 2001, and May 24, 2002.

**Interrogatory No. 8**

In response to Interrogatory No. 8, the Defendant Lisa Bayko has produced documentation pursuant to Fed. R. Civ. P. 33(d) **Option to Produce Business Records,** which states in part

Where the answer to an interrogatory may be derived or ascertained from business records of the party upon examination of the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify records from which the answer may be derived or ascertained….

Any and all information sought under your terms and "definitions" can be derived from the records produced. The Defendant has produced the following answer and records:

      (1) Judgment of Divorce Nisi dated May 24, 2002 recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

      (2) Separation Agreement dated May 24, 2002, recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

      (3) Order dated July 11, 2002 recorded and docketed on August 6, 2002 at the Essex County Probate and Family Court, Salem, MA;

      (4) Order and Stipulation dated July 2, 2003 recorded and docketed on July 7, 2002 at the Essex County Probate and Family Court, Salem, MA;

      (5) Contempt Judgment dated May 1, 2003 recorded and docketed on May 2, 2003 at the Essex County Probate and Family Court, Salem, MA;

Page Fourteen
April 13, 2006
Timothy Sullivan

(6) Amended Contempt Judgment dated February 9, 2005 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(7) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issues on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1 recorded and docketed on February 17, 2005 at the Essex County Probate and Family Court, Salem, MA;

(8) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(9) Any and all other documents produced in Response to Interrogatory No. 6 and 7.

Without waiving her objection, the Defendant Lisa Bayko relies upon, M.G.L. c. 209 section 32D; M.G.L. c.184 section 15; M.G.L. c.184 section 17 and .

The defendant Lisa Bayko also provided a **Second Amended Answer dated March 30, 2006 to Interrogatory No. 8 which provided**:

Without waiving her objection, the Defendant Lisa Bayko relies upon, M.G.L. c. 209 section 32D; M.G.L. c.184 section 15; M.G.L. c.184 section 17.

Without waiving her further objection, the Plaintiff produces and relies upon the following documents:

(1) Judgment of Divorce Nisi dated May 24, 2002 recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

(2) Separation Agreement dated May 24, 2002, recorded and docketed on June 7, 2002 at the Essex County Probate and Family Court, Salem, MA.

Page Fifteen
April 13, 2006
Timothy Sullivan

(3)Order dated July 11, 2002 recorded and docketed on August 6, 2002 at the Essex County Probate and Family Court, Salem, MA;

(4) Order and Stipulation dated July 2, 2003 recorded and docketed on July 7, 2002 at the Essex County Probate and Family Court, Salem, MA;

(5) Contempt Judgment dated May 1, 2003 recorded and docketed on May 2, 2003 at the Essex County Probate and Family Court, Salem, MA;

(6) Amended Contempt Judgment dated February 9, 2005 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(7) Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issues on September 24, 2004 Against Defendant dated November 12, 2004. (Essex County Probate & Family Court Docket No. 01-875 DV1 recorded and docketed on February 17, 2005 at the Essex County Probate and Family Court, Salem, MA;

(8) Order (J. DiGangi) dated December 2, 2004 denying Helen and Michael Bayko's Motion for Reconsideration of An Order of the Court, By the Honorable Justice, Peter C. DiGangi, Issued on September 24, 2004 Against Defendant dated November 12, 2004 recorded and docketed on February 11, 2005 at the Essex County Probate and Family Court, Salem, MA.

(9)Any and all other documents produced in Response to Interrogatory No. 6 and 7.

**Request No. 12**

With regards to the checks made payable to the Department of Revenue and payment of attorneys fees to Harmon law office are in the possession of Harmon Law offices and will be requesting the same from them.

You have agreed that you have received all of the following documents with the exception of the Correspondence dated March 18, 2002 from Charles Rotondi to Hans

Page Sixteen
April 13, 2006
Timothy Sullivan

Hailey and Fax Cover sheet from Gary Evans to Charles Rotondi dated March 5, 2003
which are included herewith:

|  |  |
|---|---|
| Dated 10/07/02 | From Gary Evans to Charles Rotondi |
| Dated 11/20/02 | From Gary Evans to Charles Rotondi |
| **Dated 12/11/01** | From Gary Evans to Charles Rotondi |
| Dated 01/15/03 | From Gary Evans to Charles Rotondi |
| Dated 01/16/03 | From Gary Evans to Charles Rotondi |
| Dated 03/05/03 | From Gary Evans to Charles Rotondi |
| Dated 03/06/03 | From Charles Rotondi to Gary Evans |
| **Dated 03/12/02** | From Charles Rotondi to Hans Hailey |
| **Dated 03/18/02** | From Charles Rotondi to Hans Hailey |
| **Dated 04/01/02** | From Charles Rotondi to Hans Hailey |
| **Dated 04/16/02** | From Hans Hailey to Charles Rotondi |
| **Dated 04/22/02** | From Charles Rotondi to Hans Hailey |
| Dated 07/31/03 | From Charles Rotondi to Gary Evans |

An amended answer to interrogatories and response to production of documents
will be submitted to reflect the appropriate year of said correspondence.

**Request No. 13**

With regards to the checks made payable to the Department of Revenue and
payment of attorneys fees to Harmon law office are in the possession of Harmon Law
offices and will be requesting the same from them.

You have agreed that you have received all of the following documents with the
exception of the Correspondence dated March 18, 2002 from Charles Rotondi to Hans
Hailey and Fax Cover sheet from Gary Evans to Charles Rotondi dated March 5, 2003
which are included herewith:

|  |  |
|---|---|
| Dated 10/07/02 | From Gary Evans to Charles Rotondi |
| Dated 11/20/02 | From Gary Evans to Charles Rotondi |
| **Dated 12/11/01** | From Gary Evans to Charles Rotondi |
| Dated 01/15/03 | From Gary Evans to Charles Rotondi |
| Dated 01/16/03 | From Gary Evans to Charles Rotondi |
| Dated 03/05/03 | From Gary Evans to Charles Rotondi |
| Dated 03/06/03 | From Charles Rotondi to Gary Evans |
| **Dated 03/12/02** | From Charles Rotondi to Hans Hailey |
| **Dated 03/18/02** | From Charles Rotondi to Hans Hailey |
| **Dated 04/01/02** | From Charles Rotondi to Hans Hailey |

Page Seventeen
April 13, 2006
Timothy Sullivan

**Dated 04/16/02**   From Hans Hailey to Charles Rotondi
**Dated 04/22/02**   From Charles Rotondi to Hans Hailey
Dated 07/31/03   From Charles Rotondi to Gary Evans

An amended answer to interrogatories and response to production of documents will be submitted to reflect the appropriate year of said correspondence.

Very Truly Yours,

CHRISTINE ANN FARO, ESQ.

Encs.

Law Offices of Hans R. Hailey
Attorneys at Law
Eleven Beacon Street, Suite 1120
Boston, MA 02108

(617) 723-4010
Facsimile: (617) 720-6012
E mail: hhailey@erols.com

Hans R. Hailey
Gene R. Charny

April 16, 2002

Charles D. Rotondi, Esquire
Attorney at Law
79 State Street
Newburyport, Massachusetts 01950

Re:    *Bayko v Bayko*, Essex Probate No. 01D 0875

Dear Chuck:

The following is offered in response to your April 1st letter. The outline of this arrangement, as I zipped through it with you on the phone last Friday, is much the same as your proposal except: (1) we propose to resolve the motorcycle issue by having each party place $12,000 into a college fund for the children (a "U-Fund seems to make sense) and (2) instead of paying the $66,000 of debt in whole from the proceeds from the sale of the house, we have Gary Evans wave his magic wand to reduce the debt s much as possible and have the savings he achieves be placed in the college fund (after paying his fees for the work).

More specifically:

1.    The house is to be sold at market value. Jeff and Lisa shall agree on an initial asking price by April 30, 2002 and the property is to be put on the market shortly thereafter.

A. A Title V inspection will have to be done immediately. The cost of this will be split 50/50, however since Jeff has no money at this time, Lisa would pay for such inspection, approximately $300-$500, receiving the appropriate credit at the time of sale.

If the property fails the inspection, the septic system will be repaired and the cost will be split by both parties. If a new system is required because the septic system cannot be repaired, then both parties will endeavor to procure plans for the installment of a new septic system. The cost of such plans will be split 50/50. The cost of such a plan is approximately $1,000 to $2000. Then, the house will be placed on the market with a credit to the proposed buyer for the cost of installing a


EXHIBIT
10

Charles D. Rotondi, Esquire
April 16, 2002
Page Two

new septic system.

B. The price of the house will be set by agreement, but if the parties are unable to agree, a licensed appraiser shall give a opinion of value. The property will then be put on the market at 10% over this value. Either, Jeff or Lisa may hire another licensed appraiser if they disagree with the first value given. If this second opinion is within five percent of the first appraisal, then the assumed value of the property shall be the average of the two appraisals. If the second value is not within five percent of the first value, then the other party, the one that did not hire the second appraisal, shall hire a third appraiser who will give a value. The two appraisals closest in value will then be considered the value of the property and the other appraisal shall be disregarded.

C. Because the property needs to be sold as quickly and as prudently as possible, the asking price shall be reduced on a regular basis. This shall be done by agreement of the parties, or if no such agreement can be reached, then the price shall be reduced by $5,000 every thirty days, but each price reduction shall not be more than 10% below the appraised upon value, again, unless agreed upon by both parties.

2.   Prior to the property being placed on the market and as quickly as possible, Attorney Gary Evans will be given a copy of all outstanding debts of both parties. Evans will then endeavor to negotiate the debt down as much as possible within a relatively short period of time. Any savings from this effort shall be designated for the children's college fund. A trust to this effect shall be set up at closing. The purpose of this fund shall be to assist the children of the parties with the payment of their college. The terms shall allot a percentage of money available for each child's educational needs. The terms and conditions of such trust shall be agreed upon by both Jeff and Lisa. If they cannot agree, then a third party shall set these terms. Such third party shall be selected by a drawing from three proposed third party submissions from Jeff and three submissions from Lisa. Attorney Evans shall be entitled to be paid his fees from the savings he achieves.

3.   From the proceeds of the sale, there shall be the following deductions:

A. First Mortgage of approximately $100,000. Lisa is to remain current on all mortgage payments until such time as the property is sold.

B. Second Mortgage of approximately $15,000.

C. Cost, if any, for replacement of Septic System.

Charles D. Rotondi, Esquire
April 16, 2002
Page Three

D. All sale costs, including a brokers commission of 5% of the sale price, and approximately 2% of the sale cost for other sales expenses if necessary. These costs include reasonable attorney fees, tax stamps, and other customary closing costs. Attorney fees from this money shall be paid equally to either of Jeff's and Lisa's attorneys, but such amount not to exceed $500 per attorney.

4. After the sale, the amount of money remaining shall be divided equally between Jeff and Lisa; with adjustments.

5. Adjustments from Jeff's proceeds:

A. First, Jeff shall pay Lisa $11,600 for child support payments. This shall be for payments up to and including April 19, 2002. Thereafter, the child support payments shall be $200 per week paid to Lisa by Jeff.

B. Second, Jeff shall pay his parents money outstanding to them in the amount of $41,200, which Jeff will secure by granting them a mortgage in this amount.

C. Third, if such money is available, $3,000 to Jeff for his personal use.

D. Fourth, if such money is available, $12,000 to the children's educational trust.

E. Fifth, any remaining money from Jeff's half to Jeff.

6. Adjustments from Lisa's funds:

A. $12,000 to the children's educational trust. Lisa argues that ½ the money from the motorcycle is due to her. Jeff is argued that ½ of Lisa's 401K plan is due to him. As a compromise, both parties shall contribute to the Children's Trust fund from the proceeds of the sale. Jeff is basing this on Lisa's 401K worth $50,000 with no deductions for any loans Lisa may have taken out of such plan.

B. $11,600 to be paid to Lisa from Jeff's proceeds for back child support.

If the above is agreeable, and any other such terms of divorce that need to be agreed upon, then the divorce would proceed at its own pace.

At the same time, Jeff would proceed with the following:

7. He would place a mortgage on his interest in the marital home for the amount of money due his parents.

Charles D. Rotondi, Esquire
April 16, 2002
Page Four

8.    He will proceed to have his amended taxes completed. Upon completion, such
      taxes shall be presented to Lisa. She may sign these amendments or not, as she
      wishes. If she does sign these amendments, then Lisa will split the cost of
      preparing such amendments. If she does not wish to sign the amendments, then
      we would appreciate your confirmation that she declines.

9.    Each party will then proceed on their own making whatever arrangements with the
      IRS that is possible in their own interest.

      Enclosed is a chart prepared by Gary Evans which outlines the anticipated
proceeds from the sale with these adjustments, at different sale prices. I would like to
claim credit for suggesting a way that the children could benefit from this, but it was
Gary who came up with the idea. Let me know what you think please.

                                        Very truly yours,

                                        Hans

                                        Hans R. Hailey

HRH/arj
Enclosure

| Sales Price of Home | $280,000 | $300,000 | $320,000 | $340,000 | $360,000 | $380,000 |
|---|---|---|---|---|---|---|
| Less: | | | | | | |
| First Mortgage | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| Second Mortgage | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Credit Card Adj. * | 66,000 | 66,000 | 66,000 | 66,000 | 66,000 | 66,000 |
| Commission @ 5% | 14,000 | 15,000 | 16,000 | 17,000 | 18,000 | 19,000 |
| Sales Exp @ 2%** | 5,600 | 6,000 | 6,400 | 6,800 | 7,200 | 7,600 |
| Title.V *** | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Total Deductions | 230,600 | 232,000 | 233,400 | 234,800 | 236,200 | 237,600 |
| Net Proceeds from Sale | $49,400 | $68,000 | $86,600 | $105,200 | $123,800 | $142,400 |

### LISA

| Sales Price of Home | $280,000 | $300,000 | $320,000 | $340,000 | $360,000 | $380,000 |
|---|---|---|---|---|---|---|
| 50% of Proceeds to Lisa | 24,700 | 34,000 | 43,300 | 52,600 | 61,900 | 71,200 |
| Plus Child Support due as of 4/20/2002 | 11,600 | 11,600 | 11,600 | 11,600 | 11,600 | 11,600 |
| Less College Education Fund | (12,000) | (12,000) | (12,000) | (12,000) | (12,000) | (12,000) |
| Proceeds to Lisa: | $24,300 | $33,600 | $42,900 | $52,200 | $61,500 | $70,800 |
| ** Plus 1/2 remaining funds from Sales Exp (est.) | 1,300 | 1,500 | 1,700 | 1,900 | 2,100 | 2,300 |
| *** Plus 1/2 remaining funds from Title V if not needed. (est.) | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Est. Net to Lisa: | $40,600 | $50,100 | $59,600 | $69,100 | $78,600 | $88,100 |

### JEFF

| Sales Price of Home | $280,000 | $300,000 | $320,000 | $340,000 | $360,000 | $380,000 |
|---|---|---|---|---|---|---|
| Net Proceeds to Jeff: | 24,700 | 34,000 | 43,300 | 52,600 | 61,900 | 71,200 |
| Less Child Support Payment due: | -11600 | -11600 | -11600 | -11600 | -11600 | -11600 |
| Less Mort. Due Jeff's parents: | -41200 | -41200 | -41200 | -41200 | -41200 | -41200 |
| Proceeds to Jeff: | ($28,100) | ($18,800) | ($9,500) | ($200) | $9,100 | $18,400 |
| ** Plus 1/2 remaining funds from Sales Exp (est.) | 1,300 | 1,500 | 1,700 | 1,900 | 2,100 | 2,300 |
| *** Plus 1/2 remaining funds from Title V if not needed. (est.) | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| To Jeff | -11800 | -2300 | 7200 | 16700 | 26200 | 35700 |
| Money to Jeff for Personal Use: | 0 | 0 | 3000 | 3000 | 3000 | 3000 |
| Educational Trust: | 0 | 0 | 4200 | 12000 | 12000 | 12000 |
| Est. Net to Jeff: | $0 | $0 | $0 | $1,700 | $11,200 | $20,700 |

### CHARLES D. ROTONDI
Attorney at Law

79 STATE STREET, NEWBURYPORT, MA 01950
TELEPHONE (978) 462-9393
FACSIMILE (978) 462-2475

April 22, 2002

Attorney Hans Hailey
11 Beacon Street, Suite 1120
Boston, MA 02108

Re:  Lisa J. Bayko v. Jeffrey L. Bayko, Sr.

Dear Hans:

The following is offered in response to your April 16 letter.  I met with Lisa on Monday, April 22, 2002, at my office.

First of all, Lisa is very concerned that, after the sale of the marital home, she may not have enough funds to place her family in a new home either by renting or purchasing. She cannot agree to escrowing $12,000.00 for the childrens' education fund when, in fact, she may need the money immediately to find them suitable housing.  I mentioned this to you on the phone on Friday and she is emphatic about this point.  It is likely that when the children are applying for college, they will be taking advantage of scholarships and financial aid and they should receive some financial assistance based upon the terrible economic predicament that the family is now in.

Lisa has also informed me that with her one-half of the proceeds of the sale, she needs to pay back her uncle, Greg Doyle, the sum of $8,600.00, which represents a loan that she has been receiving from her uncle since December due to Jeffrey's refusal and/or inability to pay child support.  In addition to that loan, she also owes her father and her sister considerable funds.  She has even had to borrow from the children on occasion to make ends meet.

My letter to you dated April 1, 2002, specifically outlined what Lisa was willing to do to settle this case.  The $200.00 per week child support was a huge concession and was predicated upon Jeffrey agreeing to (a) pay her one-half the motorcycle settlement of over $12,000.00; (b) paying the entire amount of delinquent child support; (c) Jeffrey agreeing to pay and be responsible for his newly-acquired credit card debt; and (d) Jeffrey's willingness to escrow funds for future child support based upon his poor



EXHIBIT
11

Attorney Hans Hailey
April 22, 2002
Page Two

history of paying child support in the past. Obviously, Lisa could keep returning to Court and requesting that Jeffrey be sent to jail for non-payment of child support, but she would frankly rather have the money than continuing to return to Court for complaints for contempt.

It is important that at the time I met with Lisa on April 22, 2002, she had received no child support payments from Jeffrey in recent weeks despite the fact that he has now been working. This is exactly why the argument for escrowing funds for future child support is strong and would likely be awarded by Justice Cronin. If Jeffrey is unwilling to escrow funds for child support payments, then I would have to renegotiate the child support weekly payments and Lisa would be seeking more than $200.00 per week as child support payments.

Another issue which we must revisit is the camper. Lisa has expressed an interest in having Jeffrey assign the camper to her. She tells me that Jeffrey has never had an interest in camping and that she and the children would enjoy it and use it on a regular basis.

Lisa has also asked about Jeffrey's life insurance policy. As you know, one of the grounds for contempt in this case is that Jeffrey has refused to maintain a life insurance policy for the children as he promised in the stipulation that was agreed to and became an order of the court in May of 2001.

Lisa has expressed a desire to resolve this case as soon as possible. I would very much like to use the pretrial conference on Friday as a day to appear before the judge with a final settlement agreed upon by both parties. If, in fact, you can agree to the above then this will be possible. If you cannot agree, let me know immediately. As you know, Lisa has scheduled a complaint for contempt hearing on Thursday in the Salem Probate Court. If this matter cannot be resolved, it is my understanding that she intends to pursue that avenue.

Sincerely,

Chuck

Charles D. Rotondi

CDR/jms

cc:  Lisa J. Bayko

# AndoverLaw, p.c. ®

451 Andover Street, Suite 185
North Andover, MA 01845
TEL (978) 794-0360
FAX (978) 794-5457

August 26, 2003

Atty. Charles D. Rotondi  - (978) 462-2475
Atty. Christine Faro - (978) 462-2475
Atty. Laura Martin - (617) 316-2606
Atty. Gary Evans - (978) 887-2166 -3684
Atty. Hans Hailey - (617) 720-6012

Counselors,

As of this afternoon, I represent Michael and Helen Bayko of 7 Graham Ave., Newbury, MA

01951 in matters related to mortgages that they hold on 7A Graham Ave., Newbury, MA.

I have talked to each of you this afternoon.  As a result of my conversations, it is my

understanding that 7A Graham Ave. will be sold at foreclosure on September 4, 2003 unless a

sale is completed before that date.  I have not seen a title report or personally run the title on this

property.  Nevertheless, everyone seems to agree, the following is record title:

 1) GMAC mortgage -  approximately $103,000

 2) BankNorth mortgage - approximately $15,200

 3) Michael and Helen Bayko mortgage - $46,360.00 plus interest at 6%

 4) Attys. liens for Atty's Hailey and Rotundi - $23,000 and $15,000

 5) IRS lien $47,196.80

 6) Michael and Helen Bayko mortgage - $6,300 plus interest at 6%.

Further, it appears that everyone agrees that a foreclosure will likely yield less than the

$305,000.00 offer that is available today.

As I understand it, some parties question whether my clients' mortgages will ultimately be

determined to supersede either the unrecorded divorce agreement or the IRS lien.  As the issues

of fact and law necessary to make these arguments are not likely to be resolved in the next week,

and as it is in everyone's best interest to maximize the value of the property, I have proposed to

EXHIBIT

12

each of you that we allow the sale to go through and agree to escrow the amount of my clients' mortgages without prejudice to any parties rights or claims.   In short, we would agree that any claim would be treated as if the title remained as it is today.

Thus far, Attys. Evans and Hailey have agreed in principal, reserving final judgment, to this proposal.  I suggest that those with potentially the most to lose from diminished return on their claims are Lisa Bayko and the Internal Revenue Service.  I ask that they consider the merits of this solution.  Please remember that time is of the essence.

Respectfully submitted,

Timothy D. Sullivan, Esq.

cc. Michael and Helen Bayko

244

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

PROBATE & FAMILY COURT
DOCKET NO. 01D 0875 DV1

LISA BAYKO,
           Plaintiff

v.

JEFFREY BAYKO,
           Defendant

)
)
)
)
)
)
)
)
)

**F I L E D** FEB 0 9 2005

## NOTICE OF LIMITED APPEARANCE

NOW COMES Attorney Timothy D. Sullivan and files his limited appearance on behalf of
Michael Bayko and Helen Bayko (hereinafter "the Baykos") in the above-captioned matter.
Attorney Sullivan and the Bayko's appearance is limited only to "Plaintiff Lisa Bayko's Motion
to Dismiss Appeal of Helen and Michael Bayko" and "Plaintiff Lisa Bayko's Motion for
Allowance of Attorney's Fees Pendent[sic] Lite".

Respectfully submitted,

Timothy D. Sullivan, Esq.
AndoverLaw, P.C.
451 Andover St., Suite 185
North Andover, MA 01845
((978) 794-0360
BBO No. 563244

## CERTIFICATE OF SERVICE

I, Timothy D. Sullivan, Esq. do hereby certify that on this 9th day of February 2005, I served a copy of the foregoing
Notice of Limited Appearance by delivering in hand to: Attorney Christine Ann Faro, 79 State Street, Newburyport,
MA 01950 as attorney for Lisa Bayko; and by mailing a copy of the same, first class mail, postage prepaid to Atty.
Gary Evans, Evans, Evans and Bingham, 58 Main Street, Topsfield, MA 01983 as attorney for Jeffrey Bayko.

Timothy D. Sullivan, Esq.

**EXHIBIT**

13

# HARMON LAW OFFICES, P.C.
### 150 CALIFORNIA STREET
### NEWTON, MASSACHUSETTS 02458

MAILING ADDRESS:
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389

TEL (617) 558-8400
FAX (617) 244-7304

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

DAVID M. ROSEN
(617) 558-8457
(617) 244-7304
drosen@harmonlaw.com

May 2, 2005

Jeffrey L. Bayko
61 Story Avenue
Newburyport, MA 01950

VIA FACSIMILE 978/462-2475
AND REGULAR MAIL
Charles D. Rotondi
79 State Street
Newburyport, MA 01950

VIA FACSIMILE 978/462-2475
ANDREGULAR MAIL
Christine Ann Faro
79 State Street
Newburyport, MA 01950

VIA FACSIMILE 978/794-5457
AND REGULAR MAIL
Timothy Sullivan
451 Andover Street, Suite 185
North Andover, MA 01845

VIA FACSIMILE 413/734-3910
AND REGULAR MAIL
Michele Rooke
Doherty, Wallace, Pillsbury & Murphy
One Monarch Place
1414 Main Street, Suite 1900
Springfield, MA 01144-1900

VIA FACSIMILE 617/720-6012
AND REGULAR MAIL
Hans R. Hailey
225 Friend Street, 5th Floor
Boston, MA 02114

VIA FACSIMILE 617/626-3245
AND REGULAR MAIL
Eileen McAuliffe
Massachusetts Department of Revenue
P.O. Box 55486
51 Sleeper St
Boston, MA 02205-5486

VIA FACSIMILE 202/514-5238
AND REGULAR MAIL
Lydia Bottome Turanchik
U.S. Department of Justice - Tax Division
Judiciary Center Building - Room 7804
Post Office Box 55
Ben Franklin Station
Washington, DC 20001

VIA FACSIMILE 978/887-3684
AND REGULAR MAIL
Gary Evans
Evans, Evans & Bingham
58 Main Street
Topsfield, MA 01983

Re:   **GMAC Mortgage Corporation v. Jeffrey L Bayko, Sr., et al.**
      **United States District Court for the District of Massachusetts**
      **Civil Action No. 04-12448-AO**

Dear Parties:



In an effort to move this matter forward, I intend to act, subject to my prompt receipt of any compelling objection, as follows:

1.  I am going to pay the Department of Revenue in full using proceeds from **Lisa Bayko's** side of the ledger.

2.  I am going to pay BankNorth in full using **equal proceeds from Lisa Bayko's side and Jeffrey Bayko's side.** Said payment to BankNorth is subject to my receipt of an Indemnification Agreement from BankNorth indemnifying GMAC and Harmon Law Offices for the amount of funds it receives. Thus, if the IRS or any other party subsequently claims that BankNorth was not properly paid, BankNorth will return the funds to Harmon Law Offices pending resolution of the claim.

3.  I am going to set aside $17,000 of the remaining share of **Lisa Bayko**, and distribute the remaining portion of Lisa's share to Lisa, thru her counsel. The $17,000 represents funds from which I will claim my fees from the Court (approximately $7,000). The balance of approximately $10,000.00 would be paid into Court and held pending final orders.

4.  I am going to file a new Interpleader Action in Federal Court naming the IRS and all remaining interested parties as Defendants. I will then ask the Court for my fees and tender all remaining funds to the Court.

The goal is to simplify and expedite this matter as much as possible. With the Dept. of Revenue and BankNorth out of the case, the remaining issues can be litigated without jurisdictional battles. Therefore, please consider any objections carefully. Please remember that this approach may not be perfect, but it does protect everyone's interest as much as possible.

I intend to put this plan into effect on Friday, May 6, 2005, unless someone convinces me otherwise. I sincerely hope that you all take this opportunity to move this case forward.

Very truly yours,
HARMON LAW OFFICES, P.C.

David M. Rosen, Esq.