UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GMAC MORTGAGE CORPORATION,
     Plaintiff,

     V.                           CIVIL ACTION NO.
                                   05-11746-GAO

JEFFREY L. BAYKO, SR.,
LISA J. BAYKO, HELEN E. BAYKO,
MICHAEL J. BAYKO, HANS R. HAILEY,
and THE UNITED STATES OF AMERICA,
     Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS HELEN AND MICHAEL BAYKO'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 32); DEFENDANT HANS. R. HAILEY'S CROSS MOTION FOR**
**PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 39); DEFENDANT LISA**
**BAYKO'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 47)**

**August 10, 2006**

**BOWLER, U.S.M.J.**

    Pending before this court are three motions for summary
judgment. The first, filed by defendants Helen E. Bayko and
Michael J. Bayko ("Helen and Michael Bayko" or "defendants Helen
and Michael Bayko") (Docket Entry # 32), is opposed by defendant
Lisa J. Bayko ("Lisa Bayko" or "defendant Lisa Bayko") (Docket
Entry # 35) and opposed in part by defendant Hans R. Hailey
("Hailey" or "defendant Hailey") (Docket Entry # 38). The
second, filed by defendant Lisa Bayko (Docket Entry # 47) is
opposed by defendants Helen and Michael Bayko (Docket Entry #
51). The third, a cross motion for partial summary judgment
filed by defendant Hailey (Docket Entry # 39), is opposed by
defendant Lisa Bayko (Docket Entry # 43). After conducting a

hearing on June 11, 2006, this court took the motions (Docket Entry ## 32, 39 & 47) under advisement.

PROCEDURAL BACKGROUND

This case arises out of a foreclosure sale ("the foreclosure") of a property located at 7A Graham Avenue, Newbury, MA ("the property"). Following the foreclosure, GMAC Mortgage Corporation ("GMAC") was ultimately left holding $100,616.36 in surplus funds ("the surplus"), including accrued interest on the account (Docket Entry # 26).[1] On August 24, 2005, GMAC filed a complaint in interpleader (Docket Entry # 1) requesting that the court apportion the surplus amongst the claimants stipulated therein.[2]

"An [i]nterpleader action may be brought . . . where two or more adverse parties are claiming or may claim money, property, or other benefits held by a third party stakeholder." U.S. Indus., Inc. v. Laborde, 794 F.Supp. 454, 459 (D.P.R. 1992). The interpleader has been developed as a procedural mechanism for protecting parties from being "caught in the middle" between multiple lawsuits involving multiple claimants. Equitable Life Assurance Soc'y v. Porter-Englehart, 867 F.2d 79, 89 (1st Cir. 1989); see also Nat'l Lumber Co. v. Canton Inst. For Sav., Bank

---

[1] The joint statement submitted by counsel on November 14, 2005, was adopted by the court.

[2] GMAC also seeks payment of its attorneys' fees and costs in the sum of $7,000.00.

of Canton, 775 N.E.2d 1241, 1243 (Mass.App.Ct. 2002) (noting that "principles of judicial economy, as well as the avoidance of inconsistent results, suggest that all claims affecting the determination of lien priorities should be joined in [interpleader]").

An action in interpleader proceeds in two stages. Collins v. Teachers Ins. & Annuity Ass'n of Am., 587 F.Supp. 403, 405 (D.R.I. 1984). During the first stage, the stakeholder files an action and joins a set of claimants to the stake. During the second stage, the claimants litigate their entitlement to res or property. The stakeholder does not participate in the second stage of the interpleader proceeding. Collins v. Teachers Ins. & Annuity Ass'n of Am., 587 F.Supp. at 405.

In the case at bar, the stakeholder, GMAC, has joined the following claimants: Lisa Bayko and defendant Jeffrey Bayko ("Jeffrey Bayko" or "defendant Jeffrey Bayko"), the former holders of the equity of redemption; Helen and Michael Bayko, the parents of Jeffrey Bayko, as holders of two mortgages on the property; Hailey, holder of an attorneys' lien against the interests of Jeffrey Bayko; and the Internal Revenue Service ("IRS"), holder of tax liens against the interest of Jeffrey Bayko. (Docket Entry # 26). This court is now called to determine which of the parties are entitled to surplus proceeds from the foreclosure on the property at 14A Graham Avenue,

Newbury, MA.[3]

This matter came before the court previously in a prior proceeding (Civil Action No. 04-12448-GAO) but it was dismissed upon motion by the Massachusetts Department of Revenue ("DOR"). The DOR successfully asserted that it could not be compelled to litigate the matter in a federal forum. Subsequent to the dismissal, the DOR's claim was paid in full and this similar interpleader action was refiled under its current docket number.

Ordinarily, Helen and Michael Bayko would be next in line to take from the surplus. Lisa Bayko, however, alleges, inter alia, that the mortgages held by Helen and Michael Bayko are fraudulent and that her interest in Jeffrey Bayko's share pursuant to a judgment of divorce nisi takes precedence. (Docket Entry # 47).

Lisa Bayko claims that Helen and Michael Bayko should not share at all in the surplus. She maintains that she has valid and enforceable child support orders against Jeffrey Bayko. Moreover, she also argues that Jeffrey Bayko should be responsible for his portion of the DOR lien, which she alleges was paid out of her share to resolve the aforementioned jurisdictional matter.

Helen and Michael Bayko claim that they have valid and enforceable liens of record which should be paid without being made subject to a lien or claim by any other party. (Docket

---

[3] No party has addressed the IRS tax lien dated May 1, 2004. Accordingly, the issue is not presently before this court and need not be addressed at this time.

Entry # 32). Helen and Michael Bayko assert that Lisa Bayko has made no cognizable claim against their interest. They maintain that she is solely responsible for the DOR lien.

Finally, Hailey claims that he has a valid lien against Jeffrey Bayko's interest in the surplus. (Docket Entry # 3). Hailey argues that under Massachusetts law his security interest accrued before the divorce judgment was entered.[4]

## STANDARD OF REVIEW

The standard of review for a summary judgment motion is well established. "Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. Refinance Co., Inc. v. Klock, 352 F.3d 16, 30 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56).

The moving party bears the initial burden of informing the "court of the basis for the motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). "As to issues on which the

---

[4] In addition to the claims discussed above, GMAC also seeks recovery of its attorneys' fees and costs from Lisa Bayko. (Docket Entry # 23).

summary judgment target bears the ultimate burden of proof, she [or he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995); accord DeNovellis v. Shalala, 124 F.3d at 306.  Thus, once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case, the burden of production shifts to the nonmovant," Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993), who may not rest on allegations in his briefs. Borshow Hosp. & Med. v. Cesar Castillo, 96 F.3d 10, 14 (1st Cir. 1996).

In the First Circuit, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." LR. 56.1; see also Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (holding that the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Dept., 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert).

The summary judgment record is as follows.  Disputes, where

applicable, are noted.

FACTUAL BACKGROUND

Defendants Jeffrey Bayko and Lisa Bayko were divorced on May 24, 2002. A judgment of divorce nisi was entered by the Essex County Probate Court ("probate court") on the same day. (Docket Entry # 36, Ex. 1). As part of that judgment, the probate court affirmed that the accompanying separation agreement was an "independent contract" binding upon the two parties. (Docket Entry # 36, Ex. 1). Section J of the separation agreement, captioned "Liabilities," reads as follows:

> Each party agrees that he or she shall neither contract nor incur any expenses, debts, charges or liabilities in the name of or upon the credit of the other nor for which the other or the other's legal representative, property or estate will or may become liable.

(Docket Entry # 36, Ex. 1).

Despite assenting to these terms, Jeffrey Bayko subsequently mortgaged his interest in the property at 7A Graham Avenue to his parents, Helen and Michael Bayko. At the time, the property was held by Lisa Bayko and Jeffrey Bayko as tenants in common with each retaining a 50% equal share. On August 12, 2002, Helen and Michael Bayko secured loans made to Jeffrey Bayko with a promissory note payable to them for $46,340.00 plus interest and a mortgage on the property. (Docket Entry # 32, Ex. 1 & 2). On July 8, 2003, Helen and Michael Bayko secured a second loan made

7

to Jeffrey Bayko with another promissory note payable to them for $6,300.00 plus interest and an additional mortgage on the property. (Docket Entry # 32, Ex. 3 & 4).

Helen and Michael Bayko argue that "most of the funds advanced by [them] were used by [Jeffrey Bayko] to pay child support and attorneys' fees related to the divorce." (Docket Entry # 32). Nevertheless, on August 13, 2003, Lisa Bayko filed a complaint in equity to set aside the mortgages. That complaint was dismissed without prejudice by the probate court for lack of subject matter jurisdiction. (Docket Entry # 47, Ex. 9). On September 23, 2004, however, the probate court found Jeffrey Bayko in contempt for violating the terms of the separation agreement, holding that the mortgages were invalid as to Lisa Bayko. (Docket Entry # 47, Ex. 10).

The foreclosure on the property at 7A Graham Avenue took place on March 12, 2004. The property was sold to a third party for $307,500.00. Upon completion of the mortgage foreclosure sale and payment to GMAC, the first mortgage holder, GMAC was left holding $186,742.59 in surplus funds, which was deposited in an interest bearing account maintained by Harmon Law Offices, P.C. Lisa Bayko and Jeffrey Bayko each claimed a 50% interest in the surplus, subject to claims against their respective interests by other creditors. Thus, initially, each held an interest in the sum of $93,371.29.

On or about May 12, 2005, GMAC released funds in the amount of $10,220.90 to the DOR. (Docket Entry # 1). The sum was paid without prejudice from Lisa Bayko's share of the proceeds. Lisa Bayko alleges that her payment was made to remove the jurisdictional issue with the DOR while reserving her right to claim a lien against Jeffrey Bayko.

On or about June 23, 2005, GMAC entered into an indemnification agreement with BankNorth Group ("BankNorth"), holder of an uncontested second mortgage on the property, and released funds to BankNorth in the amount of $22,090.00. (Docket Entry # 1). The funds came equally from Lisa Bayko and Jeffrey Bayko's shares in the surplus.

Subsequent to the dismissal of the first action, Lisa Bayko was also paid sums of $54,978.35 and $955.00 as undisputed portions of her share in the surplus. (Docket Entry # 26). The funds were subsequently used to satisfy the liens of Attorneys Christine Faro and Charles Rotondi.

In total, as a result of these partial payments, GMAC currently holds a surplus in the amount of $100,616.36, including accrued interest on the account. (Docket Entry # 26). Lisa Bayko's remaining share of the surplus is $17,000.00.[5] (Docket Entry # 26). Jeffrey Bayko's remaining share of the surplus is

---

[5] This amount consists of $10,000.00 as a reserve and $7,000.00 for payment of GMAC's attorneys' fees and costs.

$82,326.29.[6]  (Docket Entry # 26).

Helen and Michael Bayko presently seek $100,470.03 in funds allegedly owed to them and secured by their two mortgages. (Docket Entry # 32).  Lisa Bayko maintains she is owed $116,457.95 from Jeffrey Bayko in expenses due under the terms of the separation agreement.  (Docket Entry # 47).  Finally, Hailey claims to be the holder of an attorney's lien dated February 6, 2003, and recorded February 10, 2003, in the Essex County Registry of Deeds ("Registry of Deeds") at Book 20139, Page 71 in the original amount of $33,902.24.[7]  (Docket Entry # 3).


## DISCUSSION

As noted above, three of the claimants move for summary judgment on the interpleader action brought by GMAC.  Because the size of the claims far exceeds the available surplus, this discussion focuses on the question of which claims should take precedence.

I.  <u>Helen and Michael Bayko's Interest in Surplus Proceeds</u>

Helen and Michael Bayko maintain that "both mortgages . . .

---

[6] Although the figures identified as individual shares held by Lisa Bayko and Jeffrey Bayko do not precisely total $100,616.36, they reflect the amounts approved by the court in the joint statement.  (Docket Entry # 26).

[7] Although, as indicated above, no party has addressed the IRS tax lien, the United States of America also claims to be the holder of a federal tax lien dated May 1, 2003, and recorded on June 3, 2003, in the Registry of Deeds at Book 20949, Page 90 in the original amount of $47,196.80.  (Docket Entry # 26).

are valid mortgages [which were] used to secure loans made to
Jeffrey L. Bayko." (Docket Entry # 32). Although they concede
that the second mortgage they recorded on July 8, 2003, for
$6,300.00 is junior to the attorney's lien held by Hailey, which
was recorded on February 10, 2003, Helen and Michael Bayko
nevertheless argue that the first mortgage they recorded on
August 12, 2002, for $46,340.00 is next in line for payment from
the foreclosure surplus. (Docket Entry # 32).

Both of the mortgages held by Helen and Michael Bayko were
supported by consideration and recorded with the Essex South
District Registry of Deeds. (Docket Entry # 32, Ex. 1-4). In
the promissory notes issued with each mortgage, Jeffrey Bayko
attested to the following terms:

> The indebtedness hereby evidenced shall immediately become
> due and payable, without notice or demand, upon the
> appointment of a receiver or liquidator, whether voluntary
> or involuntary, for the Borrower or for any of his property
> . . ..

(Docket Entry # 32, Ex. 1, 3). Moreover, under the statutory
power of sale, a foreclosure sale "shall forever bar the
mortgagor and all persons claiming under him from all right and
interest in the mortgaged premises, whether at law or in equity."
Mass. Gen. Laws ch. 183, § 21.

Ordinarily, the mortgage recorded by Helen and Michael Bayko
on August 12, 2002, would be next in line for the surplus. The
statutory power of sale does not terminate a junior mortgagee's

lien once the first mortgage has been foreclosed.  First Colonial Bank for Sav. v. Bergeron, 646 N.E.2d 758, 759 (Mass. 1995) (citing Pilot v. Bednarski, 119 N.E. 360, 360 (Mass. 1918); Dennet v. Perkins, 101 N.E. 994, 994 (Mass. 1913)).  Following a foreclosure sale on a property, a junior mortgagee has an equitable lien in the surplus proceeds.  First Colonial Bank for Sav. v. Bergeron, 646 N.E.2d at 759.  Section 27 of Massachusetts General Laws Chapter 183 requires a foreclosing mortgagee to pay any surplus proceeds to "the mortgagor, or his heirs, successors or assigns."  Because the junior mortgagee is considered to be a successor or assignee of the mortgagor, the junior mortgagee is typically entitled to surplus proceeds under the statute.  First Colonial Bank for Sav. v. Bergeron, 646 N.E.2d 758, 759 (Mass. 1995) (citing Krikorian v. Grafton Co-op Bank, N.E.2d 665 (Mass. 1942)).

Nevertheless, both of the mortgages held by Helen and Michael Bayko were conveyed in clear violation of the separation agreement signed by Lisa Bayko and Jeffrey Bayko.  As noted above, the probate court has already entered a contempt judgment against Jeffrey Bayko stipulating that the mortgages held by Helen and Michael Bayko are invalid as to Lisa Bayko.  (Docket Entry # 36, Ex. 10).

That said, however, despite Lisa Bayko's assertions to the contrary (Docket Entry # 48), the doctrine of res judicata does

12

not bar Helen and Michael Bayko from bringing their present claim. For claim preclusion to apply, three elements are required: "(1) the identity or privity of the parties to the present and prior actions; (2) [the] identity of the cause of action; and (3) [a] prior final judgment on the merits." Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 631 N.E.2d 1021, 1024 (Mass.App.Ct. 1994) (citing Franklin v. North Weymouth Coop. Bank, 186 N.E. 641, 642 (Mass. 1933)). Helen and Michael Bayko were never parties to the divorce action or to the contempt action arising out of the divorce. Thus, their claim is not barred by res judicata. See Mongeau v. Boutelle, 407 N.E.2d 352, 356 (Mass.App.Ct. 1980) (holding that "the rules of prior adjudication apply to nonparties only where a person's interest was represented by a party to the prior litigation"); see also Rudow v. Fogel, 382 N.E.2d 1046, 1048 (Mass. 1978) (holding that the familial relationship between parent and child is not in itself sufficient to create privity between parties).

Yet, even if Helen and Michael Bayko are entitled to bring their claim, it does not follow that the mortgages conveyed to them are necessarily valid. A separation agreement is a "judicially sanctioned contract." Bell v. Bell, 468 N.E.2d 859, 862-63 (Mass. 1984) (Abrams, J., dissenting). Judges have an independent duty to ensure that the division of the marital state is fair and reasonable in accordance with the elements put forth

13

in Massachusetts General Laws Chapter 208, Section 34.  Knox v.
Remick, 358 N.E.2d 432, 435-36 (Mass. 1976).  Once assented to,
"a separation agreement, fair and reasonable at the time of a
judgment nisi, and constituting a final resolution of spousal
support obligations, should be specifically enforced, absent
countervailing equities."  O'Brien v. O'Brien, 623 N.E.2d 485,
487 (Mass. 1993).

There is no evidence to suggest that the separation
agreement signed by Lisa Bayko and Jeffrey Bayko was not "fair
and reasonable."  Instead, the question of whether the agreement
should be enforced as to Helen and Michael Bayko hinges on
whether the two had actual notice of its contents.  Section 15 of
Massachusetts General Laws Chapter 184 reads as follows:

> A wit[8] of entry or other proceeding that affects the title
> to real property or the use and occupation thereof or the
> buildings thereon, shall not have any effect except against
> the parties thereto, their heirs and devisees and persons
> having actual non-record notice thereof . . ..

Mass. Gen. Laws ch. 184, § 15.  Actual notice is a question of
fact.  Emmons v. White, 788 N.E.2d 557, 566 (Mass.App.Ct. 2003).
In the context of real property, actual notice can be satisfied
by "[s]omething less than positive personal knowledge of the fact
of the conveyance."  Emmons v. White, 788 N.E.2d at 566 (quoting
Curtis v. Mundy, 3 Met. 405, 407 (1841)).  "Intelligible

---

[8]  Although the statute reads "wit," the proper terminology
is writ.  Mass. Gen. Laws ch. 184, § 15, n.1 (explaining that the
term "wit" appears in the original statute but that the statute
"probably should read 'writ'").

14

information of a fact, either verbally or in writing, and coming from a source which a party ought to give heed to, is generally considered as notice of it." Emmons v. White, 788 N.E.2d at 566 (quoting George v. Kent, 7 Allen 16, 18 (1863)). Nevertheless, the term is construed with "considerable strictness" and mere "[k]nowledge of facts which would ordinarily put a party upon inquiry is not enough." Emmons v. White, 788 N.E.2d at 566 (quoting Tramontozzi v. D'Amicus, 183 N.E.2d 295 (Mass. 1962)).

The record establishes as a matter of law that Helen and Michael Bayko had actual notice of the separation agreement signed by Lisa Bayko and Jeffrey Bayko. It is true that Helen and Michael Bayko were not present at the signing of the separation agreement, nor were they necessarily aware of all the "financial details" surrounding their son's divorce proceedings. (Docket Entry # 51, Ex. 4 & 5). Even so, Helen and Michael Bayko clearly recognized that the funds they loaned to Jeffrey Bayko were being used to discharge obligations required of him by the separation agreement. (Docket Entry # 51, Ex. 4 & 5). Moreover, Helen and Michael Bayko undoubtedly realized that Lisa Bayko, their former daughter-in-law, had a strong interest in the marital property they were encumbering; an interest which they reasonably should have expected her to have protected under the terms of the separation agreement.

The issue thus arises as to whether this court should set

15

aside the mortgages held by Helen and Michael Bayko, a decision
that requires an analysis of the Massachusetts Court of Appeals
decision in <u>Feldman v. Feldman</u>, 480 N.E.2d 45 (Mass.App.Ct.
1985).  The parties disagree on how to apply the decision to the
case at bar.  The court in <u>Feldman</u> set aside a mortgage which had
been conveyed by a husband to his "woman friend" in violation of
an earlier unrecorded separation agreement, holding that there
had been a "conspiracy" to encumber the marital property.
<u>Feldman v. Feldman</u>, 480 N.E.2d at 48.  Whereas Lisa Bayko
maintains that the drafting and recording of Helen and Michael
Bayko's mortgages was likewise "a conspiracy to encumber a
marital asset" (Docket Entry # 48), Helen and Michael Bayko
disagree, arguing that "there was no conspiracy to deprive Lisa
Bayko of her interest in the property as existed in <u>Feldman</u>."
(Docket Entry # 52).

Even if Helen and Michael Bayko were motivated by a genuine
desire to aid their son, the former characterization is
nonetheless applicable.  Simply put, <u>Feldman</u> is indistinguishable
from the case at bar.  Both the husband in <u>Feldman</u> and Jeffrey
Bayko had difficulty making the childcare payments required of
them as part of their respective separation agreements.  <u>Feldman
v. Feldman</u>, 480 N.E.2d at 46.  Like the husband in <u>Feldman</u> who
was furnished $10,100.00 by his "woman friend" in return for a
promissory note and a mortgage of his interest on the marital

16

home he had shared with his ex-wife, Jeffrey Bayko was given payments of $46,340.00 and $6,300.00 by his parents in exchange for promissory notes and mortgages on his marital home.[9]  Id. The court in Feldman determined that such "an interference with the division of the marital estate" amounted to a "conspiracy" and concluded that the mortgage in question should be set aside. Id. at 48.  Accordingly, the mortgages held by Helen and Michael Bayko should also be set aside by this court.

II.  Hailey's Interest in Surplus Proceeds

Hailey argues that his claim should take precedence over Lisa Bayko's interest in the surplus because "[t]he priority of his security interest accrued long before the divorce judgment entered."[10]  (Docket Entry # 57).  Furthermore, Hailey maintains that the fact he represented Jeffrey Bayko in the divorce proceedings and had knowledge of the separation agreement prior to recording his lien is immaterial.  (Docket Entry # 57).

---

[9]  Helen and Michael Bayko attempt to distinguish the facts here by arguing that in Feldman the "woman friend" had a "close business and personal relationship" with the husband.  (Docket Entry # 52).  While it is true that a probate court found some form of business relationship between the two in a "corporation formed in New Hampshire to distribute Montessori school supplies," the specific nature of that relationship was neither specified nor determinative to the decision.  See Feldman v. Feldman, 480 N.E.2d at 47.

[10]  Hailey actually took the position that Helen and Michael Bayko's first mortgage should have priority over his lien. (Docket Entry # 39).  Having already decided that the mortgage does not take precedence, this court shall proceed to examine the merits of Hailey's claim.

Massachusetts law provides that an attorney's lien attaches "from the authorized commencement of the action." Mass. Gen. Laws ch. 221, § 50 ("section 50"). Once a judgment is entered, the lien relates back to the date the action was filed. In Re Rothwell, 159 B.R. 374, 380 (D.Mass. 1993). "As a result, [an] attorney's lien [is] superior in priority to any other interest in the recovery which arose between the time the action was filed and when an order entered." In re Albert, 206 B.R. 636, 640 (D.Mass. 1997). Thus, although Hailey's lien was not recorded until February 10, 2003, under Massachusetts law the lien relates back before the settlement agreement was signed to the date when the divorce action was initially filed. As a result, Hailey's lien takes precedence over any of Lisa Bayko's interests stemming from the separation agreement.

There are circumstances, however, which will discharge an attorney's lien even if the lien would ordinarily take precedence over other interests. Disbarment or suspension of an attorney for ethical misconduct related to the services he has rendered prior to the disciplinary action bars an attorney from recovering compensation, whether on a contingent fee agreement or in a proceeding to enforce the statutory lien. See Kourouvacilis v. Am. Fed'n of State, County, 841 N.E.2d 1273, 1282 (Mass.App.Ct. 2006). In the case at bar, however, Lisa Bayko does not point to any comparable level of impropriety on Hailey's part. Instead,

18

she simply maintains that because Hailey was an "architect of the separation agreeement" he should be estopped from taking anything from Jeffrey Bayko's share of the surplus because of "unclean hands." (Docket Entry # 43). While Hailey undoubtedly did have actual notice as to Lisa Bayko's unrecorded interest in the marital property, such facts are not sufficient to avoid the application of section 50 and to discharge Hailey's lien.

III.  Lisa Bayko's Interest in Surplus Proceeds

Lisa Bayko maintains that she is entitled to recover $116,457.95 from Jeffrey Bayko's share of the surplus proceeds. (Docket Entry # 47). In tabulating this sum, Lisa Bayko points to an array of debts and expenses that she alleges are owed to her by Jeffrey Bayko under the terms of the separation agreement. (Docket Entry # 47). Significantly, Jeffrey Bayko's total share of the foreclosure surplus is only $82,326.29. Moreover, as discussed above, Hailey's lien takes priority over Lisa Bayko's interests. Thus, the sole remaining question is whether Lisa Bayko is entitled to the $48,424.05 remainder ("the remainder") in Jeffrey Bayko's surplus once Hailey's lien has been paid.

Helen and Michael Bayko claim that the figures submitted by Lisa Bayko "have no relationship to [the] separation agreement." (Docket Entry # 51). This is incorrect. The claims Lisa Bayko has brought are claims for precisely the sort of damages

contemplated by the separation agreement.[11]  Many of the
objections made by Helen and Michael Bayko in their opposition to
Lisa Bayko's motion for summary judgment are unsupported by
affidavits or other documentary material in compliance with Rule
56, Fed. R. Civ. P.  (Docket Entry # 51).  Nevertheless, even
deducting the amounts that Helen and Michael Bayko specifically
and numerically identify,[12] Lisa Bayko is still left with a
balance of $76,043.96, well in excess of the surplus remainder.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court
**RECOMMENDS**[13] that the cross motion for partial summary judgment
by defendant Hailey (Docket Entry # 39) be **ALLOWED** to the extent
of declaring that his claim in the amount of $33,902.24 has

---

[11]  Lisa Bayko's claims include those for child support,
college tuition, credit card liability and medical expenses, all
of which were contemplated under the terms of the separation
agreement.  (Docket Entry # 47, Ex. 1).

[12]  In their opposition to Lisa Bayko's motion for summary
judgment (Docket Entry # 51), Helen and Michael Bayko object
specifically to the $33,000 Lisa Bayko seeks as "joint credit
card debt" and the college tuition figure she cites of $7,413.99.

[13]  Any objections to this Report and Recommendation must be
filed with the Clerk of Court within ten days of receipt of the
Report and Recommendation to which objection is made and the
basis for such objection.  Any party may respond to another
party's objections within ten days after service of the
objections.  Failure to file objections within the specified time
waives the right to appeal the order.  <u>United States v. Escoboza
Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>United States v.
Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

priority over the claim proffered by Helen and Michael Bayko based upon their first and second mortgages and the claim proffered by Lisa Bayko.  Furthermore, this court also **RECOMMENDS**[14] that the motion for summary judgment by defendant Lisa Bayko (Docket Entry # 47) be **ALLOWED** in part to the extent of declaring that her claim in the surplus remainder has priority over the claim proffered by Helen and Michael Bayko based upon their first and second mortgages.  This court **RECOMMENDS**[14] that the motion for summary judgment by defendant Helen and Michael Bayko (Docket Entry # 32) be **DENIED**.


                              /s/  Marianne B. Bowler
                              **MARIANNE B. BOWLER**
                              UNITED STATES MAGISTRATE JUDGE

                              _____