UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. <u>05-11746 GAO</u>

_____
                                                                    )
GMAC MORTGAGE CORPORATION,            )
                                            Plaintiff,       )
                                                                    )
v.                                                               )
                                                                    )
JEFFREY L. BAYKO, SR., LISA J. BAYKO,    )
HELEN E. BAYKO, MICHAEL J. BAYKO,        )
HANS R. HAILEY, AND THE UNITED STATES )
OF AMERICA,                                              )
                                            Defendants   )
_____)

**HELEN E. BAYKO AND MICHAEL J. BAYKO'S OPPOSITION TO LISA J. BAYKO'S MOTION FOR SUMMARY JUDGMENT AS TO THE UNITED STATES OF AMERICA**

In this Motion for Summary Judgment Lisa Bayko again attempts to cloud the real issues of this case by placing an emphasis on Jeffrey Bayko's actions and his failure to pay court ordered sums to Lisa Bayko. <u>This case is not about Jeffrey Bayko</u>. He has never filed a pleading claiming a right to any of the proceeds which are the subject of this interpleader.

Rather than restate the facts here, Michael and Helen Bayko incorporate herein and refer the Court to their Statement of Facts from their pending March 15, 2006 Motion for Summary Judgment and address only those issues argued in this latest pleading.

<u>Ongoing Post Divorce Proceedings in the Massachusetts Probate and Family Court between Lisa Bayko and Jeffrey Bayko are not Relevant to this Interpleader</u>.
Albeit it is unfortunate that Jeffrey Bayko has failed to pay over certain sums of money allegedly owed to Lisa Bayko including debts incurred as recently as 2007, those facts are not relevant in this case. This case is about deciding the priority of interests in the property at 7A Graham Avenue, Newbury, secured almost five years ago, which are the subject of this interpleader.

Lisa Bayko also reiterates arguments regarding the validity of Helen and Michael Bayko's mortgages on the property and the priority of her claim over that of all of the other Defendants.

<u>Res Judicata</u>
Judge DiGangi's Order in the divorce of Lisa Bayko and Jeffrey Bayko is not binding on Michael and Helen Bayko who have never been parties to the divorce. This has been extensively argued in previous versions of this Motion for Summary Judgment. Judge Bowler, in pages 12 and 13

of her recommendations outlines the facts and the law in this matter and Michael and Helen Bayko refer to and incorporate her findings and argument here.

Consideration
Helen and Michael Bayko's mortgages are supported by valid consideration. This issue has been previously argued and is not emphasized in the latest Motion for Summary Judgment. Michael and Helen stand upon their March 16, 2006 Motion for Summary Judgment for this point.

Priority of Claims - Race Notice
It is undisputed that Massachusetts is a 'race-notice' state and that, as a general rule, the first on record obtains priority. It is also undisputed that now that the first and second mortgages have been paid, the next record interest is Michael and Helen Bayko's mortgage.

Priority of Claims - Judgment Creating a Lien under Massachusetts General Laws, c. 209 §32D.
In arguing that a lien is created under this statute, Lisa Bayko ignores that under the statute a judgment only creates a lien when the judgment is entered "...directing a deed, conveyance or release of real estate or an interest therein..." M.G.L. c. 209 §32. A plain reading of the Separation Agreement which Lisa Bayko relies on does not direct a deed, conveyance or release of real estate or an interest therein. Thus, the section is inapplicable. (Further, Lisa and Jeffrey's Judgment arises out of a divorce under M.G.L. c. 208. Chapter 209 does not apply.)

Priority of Claims - Actual Notice provisions of Massachusetts General Laws, c. 184 §5
While 'Actual Notice' "can be satisfied by something less than examination of a document, [t]he term is to be construed with 'considerable strictness' and mere 'knowledge of the facts which would ordinarily put a party upon inquiry is not enough." *Emmons, Jr. v. White, 58 Mass.App.Ct.. 54 (2003), quoting Tramontozzi v. D'Amicis, 334, Mass. 514, 517 (1962).* Knowledge that a fact may exist is not enough to find actual knowledge of the fact or to force further inquiry. It is not enough that the holder of registered land know that the land had been used in a way that might create an adverse or implied easement. *Calci v. Reitano, 66 Mass.App.Ct.245 (2006).* Nor is it enough that telephone poles clearly cross the land enough to create imply or create an easement. *Commonwealth Electric Co. v. MacCardell, 66 Mass.App.Ct. 646 (2006).*
In those cases where actual notice has been found, there was significantly more. See *Killam v. March, 316 Mass. 646 (1944)* where the buyers of land were informed of the encumbrances by their purchase and sales agreement; *Wild v. Constantini, 415 Mass. 663 (1993)* where the petitioners conceded their knowledge in an affidavit; *Emmons v. White, 58 Mass.App.Ct. 54 (2003)*, where the landowner had written and verbal notice that a settlement agreement acknowledged the encumbrance; and *One-O-Six Realty, Inc. v. Quinn, 66 Mass.App.Ct. 149 (2006)* where the landowner was advised by counsel prior to purchasing land that a deed existed in the chain of title which created an easement.


In this case, there is no evidence that Helen and Michael knew of anything more than the fact that Jeffrey Bayko was getting a divorce. The only evidence before the Court on this matter is the statements made by Michael Bayko and Helen Bayko in their Affidavits filed as Exhibits 4 and 5

to *Michael J. and Helen E. Bayko's Opposition to Lisa Bayko's Motion for Summary Judgment.* (Filed here June 6, 2006.)   They each stated "Jeffrey did not consult or discuss with us the financial details of his divorce proceedings other than to tell us he had no money and ask us for loans at various times during his divorce." *See Paragraph 7 of May 31, 2006 Affidavit of Michael Bayko and Paragraph 7 of May 31, 2006 Affidavit of Helen Bayko.  Id.*

Judge Bowler, in her recommendation, failed to distinguish this case from *Feldman v. Feldman, 20 Mass. App.Ct. 309 (1985)*.   In *Feldman*, before the loan or mortgage the Court had ordered Benjamin Feldman to transfer all of his interest in the real property to his wife, Joan Feldman.  Id at 310.   Thus, by granting the mortgage, he was encumbering property that he no longer held an interest in.
As to the question of knowledge,  the *Feldman* Court  found that:   *"there had existed between Feldman and LaMothe (1) a close business relationship in a corporation formed in New Hampshire to distribute Montessori school supplies, and (2) a personal relationship ....  The relationship had involved LaMothe and Benjamin living at the same address in circumstances which (on the testimony) would permit a variety of inferences.  There was testimony from Ann Neubert, a former (and now disillusioned or possibly disgruntled) business partner of LaMothe of circumstances showing a close business and personal relationship between Benjamin and LaMothe.  Miss Neubert explicity testifed that LaMothe told her in the spring of 1981 that she (LaMothe) was 'in love' with Benjamin.  Id at 311.*
In addition,
*LaMothe conceded (a) that, after December 15, 1982, she made substantial payments to Benjamin (on invoices rendered by him to their corporation estimated by LaMothe at $8,000 to $9,000), (b) that no payments had been made on the mortgage note at any time, and (c) that LaMothe had not claimed any set-off of, or claim upon, the later payments made to Benjamin by her against his liability to her on the note. "  Id at 311-312.*
Finally, a second Probate Judge found that the mortgage was "'at least unfair and inappropriate' and a <u>fraud upon [the wife] and the court</u> [emphasis added]."  He further found there was a conspiracy to encumber a marital asset.  *Id at 312.*

These facts are very different from the Bayko case.  In the Bayko case, elderly parents lent money, from their life savings, to their son.  The money can be traced to their savings accounts.  (See original Motion for Summary Judgment.)
Further, in *Bayko* there is no issue of fraudulent transfer.  There is also no evidence of intent to defraud.  There was no Court Order requiring a conveyance and the Settlement Agreement does not require the conveyance of real estate.  (Although, it appears that the parties assumed the property would be sold.)
Even assuming Mr. and Mrs. Bayko knew the terms of the Settlement Agreement (they did not), at the time of the loan and the time of the mortgage, their son had sufficient assets to pay all the money due under the Settlement Agreement and to pay the mortgage.  Even after the property suffered the losses associated with a foreclosure forced and extended by Lisa Bayko, it sold for $307,500.00.  Following payment of GMAC, they were left with $186,742.59.  Jeffrey's share was $92,371.29.  (See Judge Bowlers Findings of Fact, page 8.)
As Lisa Bayko has refused to provide an accounting of the payments she received, it is unclear exactly how much of the money lent to Jeffrey and secured by mortgage reduced the amounts due

under the Settlement Agreement.   Nevertheless, it is clear that the mortgage was not obtained with the intent to defraud any creditor including Lisa..
With regard to the second mortgage of $6,300, the proceeds of the loan went entirely to Lisa. The money came from Mr. and Mrs. Bayko's life savings and was paid to the Department of Revenue for the benefit of Lisa.  Certainly, there was no fraud as to her. (Evidence of these transactions is included with Michael and Helen's pending Motion for Summary Judgment and in their Opposition to Lisa Bayko's Motion for Summary Judgment filed May 19, 2006.  Both are still pending.)

Public Policy
The divorce is a travesty.  It has destroyed an entire family.  Certainly, the Court cannot condone Jeffrey Bayko's failure to comply with valid court orders.  However, it should also not condone the continuous bombastic histrionics of Lisa Bayko and reward her at the expense of others who have acted in good faith.  It is unconscionable that elders in their eighties should be dragged through no less than six cases to try to collect on a small mortgage.  [1]Public policy is clearly not served when the legal machinations required to enforce a mortgage make its enforcement impractical or impossible.

As important, Mr. and Mrs. Bayko ask the Court to examine the standard to which Lisa Bayko wishes to hold them.  There is no evidence, and no allegation, that they knew more than the fact that their son was going through a horrible divorce.  Yet, Lisa Bayko wishes to hold them responsible for examining the Settlement Agreement in her divorce and anticipating those items that either might be payable to her or that may become due her in the future.
Illustrative is Lisa's latest Motion for Summary Judgment in which she seeks to advance an unrecorded Settlement Agreement, which incorporates an indefinite child support obligation, and child support obligations incurred until 2007, to a security position senior to a bona fide mortgage validly recorded in 2002.
Not only does Lisa seek to hold potential mortgage holders liable for determining the terms and potential liability under an unrecorded divorce agreement, she also seeks to impress that duty on the government as well.  In Section A, of her latest Memorandum of Law, Lisa argues that because she obtained a Divorce Nisi before the tax liens were placed, tax liens on Jeffrey Bayko's interest in the property are invalid.  In other words, where a woman has an unrecorded divorce agreement calling for payments to be made to her, including future child support payments of an undetermined and indefinite amount; and where the IRS lien on the husband's interest in the property did not predate his divorce, the IRS may not levy or execute on husband's interest in property without satisfying all present and future obligations to the wife under the divorce agreement..

---

[1]. Lisa has attempted to drag Michael and Helen into her divorce, and it was necessary for them to file a special appearance there to protest an order invalidating their mortgage.  Although the trial judge purportedly dismissed the appeal, arguably, an appeal is still pending in the Massachusetts Appeals Court on the mortgage.  They were also dragged into an equity case in the Probate and Family Court which was ultimately dismissed for lack of jurisdiction.  The original interpleader was in the Massachusetts Superior Court.  The next interpleader was in the Massachusetts District Court.  That case was appealed to the First Circuit Court of Appeals.  We are now back in the Massachusetts District Court.

In short, to adopt Lisa Bayko's position would turn the entire field of property law on its head. Divorced individuals, at least those with children, would no longer be able to obtain secured loans. Before collecting taxes due from divorced individuals, the Federal government would be forced into state court seeking interpretations and waivers of the state court's orders.

Lisa Bayko's Motion for Summary Judgment as to the United States of America should be denied and the proceeds of 7A Graham Avenue should be distributed in accordance with the valid record liens.

Date:   4/4/07

Respectfully submitted,
Helen E. Bayko and Michael J. Bayko,
By their attorney,

/s/ Timothy D. Sullivan

Timothy D. Sullivan, Esq.
AndoverLaw, P.C.
451 Andover Street, Suite 185
North Andover, MA 01845
(978) 794-0360
BBO# 563244