IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GMAC MORTGAGE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 05-11746-GAO |
| ) | |
| JEFFREY L. BAYKO, SR., et al., ) | |
| ) | |
| Defendants. | |

**UNITED STATES' OPPOSITION TO
DEFENDANT LISA BAYKO'S MOTION FOR SUMMARY JUDGMENT**

The United States submits this memorandum in opposition to the Motion for Summary Judgment filed by defendant Lisa Bayko on March 26, 2007. Under the well recognized standard of Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because Ms. Bayko's legal arguments are erroneous, and because the facts set forth in her motion do not support the entry of summary judgment, her motion should be denied.

**Material Facts at Issue**

In her Motion for the entry of summary judgment against the United States, defendant Lisa Bayko ("Ms. Bayko") identifies facts that she presumably deems material to this action. As to the following facts, the United States, admits, denies, and/or contests the materiality of the stated facts as follows.

1. The Defendants Jeffrey L. Bayko and Lisa Bakyo were divorced on May 24, 2002. The Separation Agreement was incorporated into the Judgment of Divorce Nisi with the

exception of those provisions relating to health insurance, alimony, child custody, support and maintenance and visitation children, which were merged into the judgment of divorce. (**Exhibit 1** Judgment of Divorce Nisi and Separation Agreement recorded and docketed on recorded and docketed on May 24, 2002 at the Essex County Probate and Family Court, Salem, MA)

**Response:** Admit

2. The Defendant Hans Hailey represented the Defendant Jeffrey L. Bayko in the divorce proceedings and post divorce proceedings.

   **Response:** Admit.

3. The Separation Agreement dated May 24, 2002 as executed by Lisa J. Bayko and Jeffrey L. Bayko and notarized by the Defendant Hans Hailey on behalf of Jeffrey L. Bayko made provision for the division of the parties property and liabilities and stated summarily in pertinent part:

   (EXCERPT OMITTED)

   (**Exhibit 1**, Separation Agreement, Article III, Section G, Continued).

   **Response:** Admit.

4. At the time of the Divorce, May 24, 2002, Jeffrey L. Bayko submitted a financial statement signed under the pains and penalties of perjury and attested to by Defendant Hans Hailey and stated that the amount of his tax debt was "?" (**Exhibit 2** Financial Statement of Jeffrey L. Bayko dated May 24, 2002).

   **Response:** Admit

5. On May 1, 2003, as part of the contempt judgment, the Court (J. Kagan) ordered, "when the marital home is sold, the Defendant share of the net proceeds shall be held in escrow by both Plaintiff's and Defendant's counsel pending further order of the Court." Judge Kagan sentenced Jeffrey L. Bayko to 90 days in jail. (**Exhibit 3** Order dated May 1, 2003) On July 2, 2003, Jeffrey L. Bayko signed a stipulation that "any uninsured medical and college expenses owed by the [Jeffrey L. Bayko] shall be paid out of the monies held in the escrow account as Ordered by Judge Kagan on 5/1/03" (**Exhibit 3** Order and Stipulation dated July 2, 2003).

   **Response:** Admit.

6.  In September of 2002, the Defendant, Jeffrey L. Bayko filed on behalf of himself and Lisa Bayko amended tax returns with the Internal Revenue Service for years 1996, 1997, 1998 and 1999. Jeffrey L. Bayko did so without the authorization of Lisa Bayko. Lisa Bayko did not receive notice of the filings until late fall 2002 or early winter 2003.

    **Response:** These statements are immaterial and irrelevant, as Jeffrey Bayko and Ms. Bayko's tax liabilities are not at issue in this proceeding.

7.  On March 17, 2003, Lisa Bayko applied for the Innocent Spouse Relief through an accountant Earl Bean of Salem, MA. Lisa Bayko completed Form 8857 and attached to the form was a statement explaining why she qualified for relief. (**Exhibit 4**) Included in that application was information with regards to her divorce and how Jeffrey L. Bayko filed amended tax returns. Upon submission of her application for Innocent Spousal Relief Ms. Holland of the Taxpayers Advocate Office intercepted on her behalf.

    **Response:** The statements contained in paragraph 7 are immaterial and irrelevant, as Ms. Bayko's tax liabilities are not at issue in this proceeding.

8.  On April 5, 2003, the Internal Revenue Service acknowledged receipt of Lisa Bayko's application for Innocent Spousal Relief and stated that said application would be given to an examiner. (**Exhibit 5, Letter from the Internal Revenue service dated April 5, 2003**)

    **Response:** The statements contained in paragraph 8 are immaterial and irrelevant, as Ms. Bayko's tax liabilities are not at issue in this proceeding.

9.  As of April 5, 2003, the Internal Revenue service had actual notice of her judgment of divorce.

    **Response:** The statements contained in paragraph 9 are immaterial to this proceeding. As a taxing authority, the United States is an involuntary (as opposed to reliance) creditor. The government's knowledge is simply not an element of attachment of the federal tax lien. Therefore, it is irrelevant whether the United States had any notice of Ms. Bayko judgment of divorce.

10. On May 2, 2003, the Internal Revenue Service recorded tax liens on Jeffrey L. Bayko's and Lisa Bayko's residence at 7A Graham Avenue, Newbury, MA. As of the date of recording the tax liens amounted to $155,686.00. **(Exhibit 7, Recordation of tax liens and release of Lisa J. Bayko)**

    **Response:** Admit.  Further states that the Internal Revenue Service filed a Notice of

    Federal Tax Lien against Jeffrey Bayko for the periods ending December 31, 2000 and

    2001, respectively on June 3, 2003.

11. On May 7, 2003, the Internal Revenue Service approved Lisa Bayko's Application for Innocent Spousal Relief. **(Exhibit 7, Recordation of tax liens and release of Lisa J. Bayko)**

    **Response:** The statements contained in paragraph 11 are immaterial and irrelevant, as

    Ms. Bayko's tax liabilities are not at issue in this proceeding

12. On May 25, 2003, the Internal Revenue Service recorded a release of the tax liens as to Lisa Bayko, giving her spousal immunity for tax years 1996, 1997, 1998 and 1999. **(Exhibit 7, Recordation of tax liens and release of Lisa J. Bayko)**

    **Response:** The statements contained in paragraph 12 are immaterial and irrelevant, as

    Ms. Bayko's tax liabilities are not at issue in this proceeding

13. Lisa Bayko did not receive notice of her immunity until December 11, 2003, when she was informed by Miss Ham of the Internal Revenue Service (ID # 5907351) that she received spousal immunity for all four years, 1996, 1997, 1998 and 1999. **(See Affidavit of Lisa Bayko).**

    **Response:** The statements contained in paragraph 13 are immaterial and irrelevant, as

    Ms. Bayko's tax liabilities are not at issue in this proceeding

14. The Internal Revenue Service still maintains liens on Jeffrey L. Bayko's share of the proceeds, which were meant to be used to satisfy monies owed to Lisa Bayko under the Judgment of Divorce Nisi and the terms of the Separation Agreement for the care and maintenance of the children.

    **Response:** Admits that the Internal Revenue Service's liens are still on file. Denies that the proceeds "were meant to be used to satisfy monies owed to Ms. Bayko under the Judgment of Divorce Nisi and the terms of the Separation Agreement for the care and maintenance of the children."

15. The United States of America, Internal Revenue Service, did not have possession of documents relative to Lisa Bayko's Application for Innocent Spousal Relief. (**Exhibit 6, United States of America's Response to Lisa Bayko's Request for Production of Documents and documents produced**).

    **Response:** The statements contained in paragraph 15 are immaterial to this action, as Ms. Bayko's petition for Innocent Spouse Relief is not at issue in this proceeding.

16. On or about July 19, 2002, the Defendant Jeffrey L. Bayko encumbered the property at 7A Graham Ave., Newbury, Massachusetts by granting to his parents, the Defendants, Michael Bayko and Helen Bayko, a mortgage in the amount of $46,360.00; Said mortgage was drafted and notarized by Attorney Gary Evans and recorded by him on August 12, 2002 at the South Essex County Registry of Deed. The defendant encumbered the property again on May 25, 2003, the Defendant Jeffrey L. Bayko again encumbered the property at 7A Graham Ave., Newbury, Massachusetts by granting to the Defendants, Michael Bayko and Helen Bayko, a mortgage in the amount of $6,304.00; the mortgage was drafted by Attorney Gary Evans and was recorded the same on July 8, 2003.

    **Response:** The statements contained in paragraphs in paragraphs 16 are immaterial and

irrelevant, as this is an action to determine lien priorities as to Ms. Bayko and the United States. The interests of Helen and Michael Bayko are irrelevant to that determination.

17. After a hearing on a complaint for contempt dated August 13, 2003, the Essex County Probate & Family Court found the Defendant Jeffrey L. Bayko in Contempt for conveying the Mortgages dated July 19, 2002 and May 25, 2003 to his parents Helen Bayko and Michael Bayko and further ordered that said mortgages were invalid as to Lisa J. Bayko.

    **Response:** The statements contained in paragraphs in paragraphs 17 are immaterial and irrelevant, as this is an action to determine lien priorities as to Ms. Bayko and the United States. The interests of Helen and Michael Bayko and the contempt finding against Jeffrey Bayko are irrelevant to that determination.

18. GMAC scheduled a foreclosure sale on September 15, 2003 and prior to the sale pending, the Defendant Jeffrey L. Bayko filed for Bankruptcy. (Jeffrey L. Bayko's Bankruptcy was dismissed on March 24, 2004).

    **Response:** The statements contained in paragraph 18 are immaterial. Neither Mr. Bayko's bankruptcy nor the date that GMAC scheduled a foreclosure sale is relevant to the determination of the parties' priorities.

19. After the Bankruptcy Trustee abandoned the property located on 7A Graham Ave., on March 12, 2004, GMAC foreclosed 7A Graham Ave., Newbury and the property was sold at auction for $307,500.00 and there were surplus funds of $186,742.59.

    **Response:** Admit.

20. On May 12, 2005, Lisa Bayko paid Jeffrey L. Bayko's debt to the Massachusetts Department of Revenue in the amount of $10,220.90, to remove the Department of Revenue as a party Defendant to this action thereby resolving the jurisdictional issue and permitting this action to proceed in the United States District Court.

>    **Response:** Admits that Mr. Bayko's debts to the Massachusetts Department of Revenue were paid, that jurisdictional issues were resolved, and that this action was permitted to proceed in United States District Court. The United States' position is that the remaining statements are immaterial as Jeffrey Bayko's debts to the Massachusetts Department of Revenue are not relevant to the determination of priorities between Ms. Bayko and the United States.

21. On May 12, 2005, GMAC retained $11,045.00 from Lisa Bayko's share of the sales proceeds, representing Jeffrey L. Bayko's one-half interest in the event that the Defendant United States is successful in their marshalling claim.

    **Response:** The statements contained in this paragraph are immaterial and irrelevant as to Ms. Bayko's Motion for Summary Judgment. Further, the United States denies that Ms. Bayko is entitled to any "share" of Mr. Bayko's one-half interest in the proceeds as that one-half interest is not sufficient to satisfy his unpaid federal tax liabilities

22. After a hearing on Motions for Summary Judgment, on August 10, 2006, United States District Court Magistrate Judge Marianne B. Bowler recommended that the mortgages between Jeffrey L. Bayko and Helen and Michael Bayko should be set aside.

    **Response:** The United States' position is that the facts in this paragraph are immaterial to the Ms. Bayko's Motion for Summary Judgment. The statements contained in paragraph 22 pertain to the interests of Helen and Michael Bayko, which are not relevant to the determination of priorities between Ms. Bayko and the United States.

23. Between September of 2004 and January of 2007, Jeffrey L. Bayko has been incarcerated five times for periods of 150 days or more for non-payment of child support. His current arrearage is $65,000.00 (**Exhibit 8** Judgment of Contempt dated January 9, 2006). Jeffrey Bayko's response to the latest complaint for contempt dated November 17, 2006 was "the settlement proceeds from the sale of the house...should be an adequate amount

to cover support since getting out of prison on 3/17/06". (**Exhibit 9**, Response to Complaint).

**Response:** The statements in this paragraph are immaterial to Ms. Bayko's Motion for Summary Judgment as to the United States. Jeffrey Bayko's alleged failure to comply with child support and the consequences of that alleged failure are irrelevant to the determination of priorities between the United States and Ms. Bayko.

24. Pursuant to the Judgment of Divorce Nisi and other Orders of the Court the Defendant Lisa Bayko is entitled to recover from Jeffrey L. Bayko's share of the proceeds:

(TABLE OMITTED)

**Response:** Paragraph 24 contains legal conclusions, not facts. The United States denies those conclusions.

## Memorandum in Support of United States' Opposition

This case arises out of GMAC Mortgage Corporation's ("GMAC's" foreclosure sale of real property located at 7A Graham Avenue, Newbury, Massachusetts ("the property"). Prior to the sale, Jeffrey and Lisa Bayko owned the property as tenants in common, with each retaining a 50% share. (See Report and Recommendation Re: Defendant Helen and Michael Bayko's Motion for Summary Judgment, Docket Entry #61, p. 7)

Following the foreclosure, GMAC held $ 186,742.50 in surplus funds from the sale of the property. Jeffrey and Lisa Bayko each claimed a 50% interest in the proceeds, subject to claims against their respective interests by other creditors. (See Docket Entry No. 61, p.8) Following certain payments to the Massachusetts Department of Revenue, BankNorth Group and Lisa Bayko, GMAC was left with a surplus in the amount of $100,616.36, including interest

as of August 10, 2006. As of that August 10, 2006, Lisa Bayko's remaining share of the surplus was $17,000 and Jeffrey Bayko's remaining share of the surplus was $82, 326.29. (Docket Entry No. 26)

In this interpleader action, the United States claims an interest in Jeffrey Bayko's remaining share of the surplus; the United States makes no claim as to Ms. Bayko's remaining share. On March 26, 2007, Ms. Bayko filed a motion seeking summary judgment as against the United States. In her motion, she argues that her claims to Jeffrey Bayko's share of the proceeds take priority over the federal tax liens of the United States.

It is well-settled that federal law, not state law, determines the priority of federal tax liens. (*See Aquilino v. United States*, 363 U.S. 509, 513-514 (1960).) Under federal law, a lien imposed by 26 U.S.C. § 6321 is valid from the time of assessment. The lien is valid without filing a Notice of Federal Tax Lien except as against certain persons described in 26 U.S.C. § 6323: purchasers, holders of a security interest, mechanic's lienors or judgment lien creditors. When the Internal Revenue Service files a notice of its lien pursuant to Section 6323(f), its interests are further protected against those persons.

Ms. Bayko is not a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. While she claims to have an interest based upon a contempt judgment against Jeffrey Bayko, and a divorce judgment, her interests have not been perfected under state law, as is required by Treas. Reg. 301.6323(h)-1(g). Further, her claims do not come within the limited class of persons protected under Section 6323(b).

In her memorandum in support of her Motion for Summary Judgment as to the United States of America, Ms. Bayko makes the following arguments:

1. When a divorce decree is issued prior to the filing notice of a tax lien, the Judgment of Divorce Nisi takes priority. (Ms. Bayko's Memorandum in Support, p.3, citing *United States v. Murray*, 217 F.3d 59, 63 (1st Cir. 2000)

2. Pursuant to M.G.L.c. 209 § 32D and 184 § 15, Ms. Bayko's interest takes priority over the liens of the Internal Revenue Service.

3. The provisions of 26 U.S.C. 6334, "Property Exempt from Levy," prohibits the United States from enforcing its lien as to the proceeds of the sale of subject property.

For the reasons stated below, each of these arguments is without merit.

    A.   *Murray* does not support the proposition that issuance of a divorce decree issued prior to the filing of a notice of federal tax lien grants priority to a Judgment of Divorce Nisi.

Ms. Bayko cites *United States v. Murray*, 217 F.3d at 63 apparently to support her position that the entry of a Judgment of Divorce Nisi takes priority over a tax lien if that judgment is made before the Internal Revenue Service files notice of its lien. However, *Murray* is silent on the matter of priorities when a Judgment of Divorce Nisi is entered prior to the filing of a tax lien. *Murray* simply states, "...[p]erhaps the April 1988 pre-divorce attachment was perfected for purposes of state law by the divorce decree.... But as the divorce decree was issued after the IRS filed notice of the tax lien, the tax lien nonetheless takes priority." *Murray*, 217 F.3d at 63, fn. 1.

While here Ms. Bayko obtained her divorce prior to the filing of the Notice of Federal Tax Lien, she, unlike the wife in *Murray*, failed to obtain a pre-judgment attachment on the real property. *Murray*, 217 F.3d at 60. In fact, Ms. Bayko never obtained a post-judgment

attachment or execution and never levied upon the property. Simply put, her claim has never ripened into a lien – not before the Notice of Federal Tax Lien was filed, and not afterwards. Without a lien, she cannot be a judgment *lien* creditor. Indeed, it is clear from these facts that even if the IRS had never filed a Notice of Federal Tax Lien, the United States would prevail here on the assessment lien created by Section 6321.

The *dicta* in Murray is distinguishable on the facts and, in any event *Murray* does not support the proposition that a claim based upon an unrecorded, unperfected judgment entered prior to the filing of a Notice of Federal Tax Lien take priority over the filed lien. To the extent that Lisa Bayko relies on *Murray*, her argument must be disregarded.

B.      Federal law, not state law, controls the priority of federal tax liens.

A federal tax lien is created by operation of statute when a taxpayer refuses or neglects to pay a tax after payment is demanded. 26 U.S.C. § 6321. The lien extends to "all property and rights to property, whether real or personal, belonging to" such person. *Id*. The amount of the lien is the tax owed "including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto."

Where there are competing claims to a delinquent taxpayer's property by a federal tax lien and a state-law lien, priority is determined by federal law. *Aquilino v. United States*, 363 U.S. 509, 513-514 (1960). Generally, "priority for purposes of federal law is governed by the common law principle that 'the first in time is the first in right." *United States v. McDermott*, 507 U.S. 447 (1993) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954).

In her Motion for Summary Judgment against the United States, Ms. Bayko does not establish that her claims take priority over the interests of the United States under federal law.

Her argument that her alleged interests take priority over the interests of the United States' pursuant to M.G.L. c. 209 and 185 is irrelevant to the instant proceeding and must be disregarded. M.G.L.A. 209 pertains to judgments arising from a probate court's finding that a married person is not supporting a spouse. Ms. Bayko's claim is not based upon an order of a probate court finding that Jeffrey Bayko failed to provide suitable support for her. Rather, her claim is based upon a judgment of divorce. (Ms. Bayko's statement of facts, ¶ 1.) Thus, her discussion of this statute and her corresponding arguments based on M.G.L.A. 184 § 15 would be irrelevant even if state law were determinative in establishing the priority of federal tax liens.

C.  26 U.S.C. § 6334 applies to levies, not liens.

In her memorandum in support of her motion for summary judgment against the United States, Ms. Bayko states that the United States is prohibited from levying monies that are meant for the support and maintenance of minor children. She cites 26 U.S.C § 6334 to support that position.

Section 6334 lists property that is exempt from IRS levy; however, that provision is not applicable here. At issue in this case are the priorities of the IRS' *liens*, not levies. *American Trust v. American Community Mut. Ins. Co.,* 142 F.3d 920 (6th Cir. 1998) is directly on point. There, in affirming summary judgment in favor of the United States, the Court of Appeals was faced with the precise question that Ms. Bayko raises here: "a single question of law: whether an exemption from levy that is listed in Internal Revenue Code ("I.R.C.") § 6334 applies when the IRS seeks enforcement of a tax lien in an interpleader action." 142 F.3d at 921. After examining the statutory framework set out in the Internal Revenue Code and several decisions from other circuits which held that levy exemptions in Section 6334 are inapplicable to judicial

actions to enforce the tax lien, the Court of Appeals concluded that "the statute exempts certain property from a levy but not from a lien, and we decline to alter this allocation." 142 F.3d 923. This Court should be guided to the same result. Section 6334 is therefore irrelevant, and does not support her assertion that she is entitled to summary judgment.

**Conclusion**

Ms. Bayko has failed to show that she is entitled to summary judgment. She cites *United States v. Murray* in her attempt to establish that alleged property interests arising from an unrecorded, unexecuted judgment of divorce take priority over federal tax liens; in no way does *Murray* support that proposition. She cites state statutes in an attempt to establish her priority over federal tax liens; however, federal law, not state law, determines the priority of federal tax liens. Further, though she correctly notes that Section 6334 provides that the Internal Revenue Service cannot levy upon funds necessary to comply with judgments for the support of minor children, she fails to establish how a restriction on levy applies to an action in which IRS *liens,* not levies, are at issue.

For the reasons stated above, Ms. Bayko has failed to establish that she is entitled to summary judgment, and her motion should therefore be denied.

Respectfully Submitted,

MICHAEL J. SULLIVAN
United States Attorney

I certify that a true copy of the above document was served upon each party appearing pro se, and the attorney of record for each other party, by first-class mail, or through the Court's ECF filing system, on April 19, 2007.

 */s/ Pamela Grewal*
PAMELA GREWAL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-6403
Fax: (202) 514-5238
E-mail: Pamela.Grewal@usdoj.gov

 */s/ Pamela Grewal*
PAMELA GREWAL