UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GMAC MORTGAGE CORPORATION,
    Plaintiff,

      v.                         CIVIL ACTION NO.
                                    05-11746-GAO
JEFFREY L. BAYKO, LISA J. BAYKO,
HELEN E. BAYKO, MICHAEL J. BAYKO,
HANS HAILEY and THE UNITED STATES
OF AMERICA,
    Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANT LISA J. BAYKO'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 70); DEFENDANT UNITED STATES OF AMERICA'S**
**CROSS MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 78)**

**August 29, 2007**

**BOWLER, U.S.M.J.**

    Pending before this court are two motions for summary

judgment.  The first, filed by defendant Lisa J. Bayko

("Lisa Bayko") (Docket Entry # 70), is opposed by defendants

Helen E. Bayko and Michael J. Bayko ("Helen and Michael

Bayko") (Docket Entry # 74) and defendant United States of

America ("United States") (Docket Entry # 77) and opposed in

part by defendant Hans R. Hailey ("Hailey") (Docket Entry #

75).  The second, a cross motion for summary judgment by the

United States (Docket Entry # 78), is opposed by Lisa Bayko

(Docket Entry # 80).  After conducting a hearing on June 4,

2007, this court took the motions (Docket Entry ## 70 & 78)

under advisement.

PROCEDURAL BACKGROUND

This case arises out of a foreclosure sale ("the foreclosure") of a property located at 7A Graham Avenue in Newbury, Massachusetts ("the property"). Following the foreclosure, GMAC Mortgage Corporation ("GMAC") was left holding $100,616.36 in surplus funds ("the surplus"), including accrued interest on the account. (Docket Entry # 26).[1] On August 24, 2005, GMAC filed a complaint in interpleader (Docket Entry # 1) requesting the court to apportion the surplus amongst the claimants stipulated therein.[2]

"An [i]nterpleader action may be brought . . . where two or more adverse parties are claiming or may claim money, property, or other benefits held by a third party stakeholder." U.S. Indus., Inc. v. Laborde, 794 F.Supp. 454, 459 (D.P.R. 1992). The interpleader constitutes a procedural mechanism for protecting parties from being "caught in the middle" between multiple lawsuits involving multiple claimants. Equitable Life Assurance Soc'y v. Porter-Englehart, 867 F.2d 79, 89 (1st Cir. 1989); see also

---

[1] The joint statement submitted by counsel on November 14, 2005, was adopted by the court.

[2] GMAC also seeks payment of its attorneys' fees and costs in the sum of $7,000.00.

2

<u>Nat'l Lumber Co. v. Canton Inst. For Sav., Bank of Canton</u>, 775 N.E.2d 1241, 1243 (Mass.App.Ct. 2002) (noting that "principles of judicial economy, as well as the avoidance of inconsistent results, suggest that all claims affecting the determination of lien priorities should be joined in [interpleader]").

An action in interpleader proceeds in two stages. <u>Collins v. Teachers Ins. & Annuity Ass'n of Am.</u>, 587 F.Supp. 403, 405 (D.R.I. 1984). During the first stage, the stakeholder files an action and joins a set of claimants to the stake. During the second stage, the claimants litigate their entitlement to res or property. The stakeholder does not participate in the second stage of the interpleader proceeding. <u>Collins v. Teachers Ins. & Annuity Ass'n of Am.</u>, 587 F.Supp. at 405.

In the case at bar, the stakeholder, GMAC, has joined the following claimants: Lisa Bayko and defendant Jeffrey Bayko ("Jeffrey Bayko"), the former holders of the equity of redemption; Helen and Michael Bayko, the parents of Jeffrey Bayko, as holders of two mortgages on the property; Hailey, holder of an attorneys' lien against the interests of Jeffrey Bayko; and the Internal Revenue Service ("IRS"), holder of tax liens against the interest of Jeffrey Bayko.

3

(Docket Entry # 26).

This matter came before the court previously in a prior proceeding (Civil Action No. 04-12448-GAO) that was dismissed upon motion by the Massachusetts Department of Revenue ("DOR"). The DOR successfully asserted that it could not be compelled to litigate the matter in a federal forum. Subsequent to the dismissal, the DOR's claim was paid in full and this similar interpleader action was refiled under its current docket number (Civil Action No. 05-11746-GAO).

In the current action, this court issued a Report and Recommendation (Docket Entry # 61) on August 10, 2006, regarding Helen and Michael Bayko's motion for summary judgment (Docket Entry # 32), Hailey's cross motion for partial summary judgment (Docket Entry # 39) and Lisa Bayko's motion for summary judgment (Docket Entry # 47). First, this court recommended that Helen and Michael Bayko's motion for summary judgment (Docket Entry # 32) be denied. Second, this court recommended that Hailey's cross motion (Docket Entry # 39) be allowed to the extent of declaring that his claim in the amount of $33,902.24 has priority over the claim proffered by Helen and Michael Bayko and the claim proffered by Lisa Bayko. Finally, this court recommended

4

that the motion for summary judgment by Lisa Bayko be
allowed in part to the extent of declaring that her claim
has priority over the claim proffered by Helen and Michael
Bayko.

Presently, Lisa Bayko moves for summary judgment to
establish priority to the surplus over the United States.
(Docket Entry # 70).  Lisa Bayko contends that the May 24,
2002 judgment of divorce nisi and separation agreement,
issued before the IRS tax lien, entitle her to the surplus.
The United States opposes Lisa Bayko's motion, arguing that
the IRS tax lien takes priority over her unperfected
interest in the surplus.  (Docket Entry # 77).  In addition,
Helen and Michael Bayko oppose Lisa Bayko's motion.  (Docket
Entry # 74).  Hailey objects to Helen and Michael Bayko's
opposition and partially objects to Lisa Bayko's motion to
the extent of not waiving his priority over Lisa Bayko.
(Docket Entry ## 74 & 75).  Finally, the United States cross
moves for summary judgment against Lisa Bayko, further
elaborating that the valid IRS tax lien takes priority over
Lisa Bayko's interest in the surplus.  (Docket Entry # 78).
Lisa Bayko opposes the United States' motion by, in essence,
restating her summary judgment argument.  (Docket Entry #
80).

STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Buchanan v. State of Maine, 469 F.3d 158, 166 (1st Cir. 2006). A "genuine" factual issue exists where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party." Blackie v. State of Maine, 75 F.3d 716, 721 (1st Cir. 1996). A factual issue is "material" where it "has the potential to alter the outcome of the suit under the governing law." Id.

The moving party bears the initial burden of informing the "court of the basis for the motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). "As to issues on which the summary judgment target bears the ultimate burden of proof, she [or he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an

6

authentic dispute." <u>McCarthy v. Nw. Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995); <u>accord</u> <u>DeNovellis v. Shalala</u>, 124 F.3d at 306.  Thus, once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case, the burden of production shifts to the nonmovant," <u>Dow v. United Bhd. of Carpenters</u>, 1 F.3d 56, 58 (1st Cir. 1993), who may not rest on allegations in his brief.  <u>Borshow Hosp. & Med. v. Cesar Castillo</u>, 96 F.3d 10, 14 (1st Cir. 1996).

In the First Circuit, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."  LR. 56.1; <u>Stonkus v. City of Brockton School Dept.</u>, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert).

The summary judgment record is as follows.  Disputes, where applicable, are noted.

<u>FACTUAL BACKGROUND</u>

Jeffrey and Lisa Bayko were divorced on May 24, 2002.

7

A judgment of divorce nisi was entered by the Essex County
Probate Court ("probate court") on the same day. (Docket
Entry # 36, Ex. 1). As part of that judgment, the probate
court affirmed that the accompanying separation agreement
was an "independent contract" binding upon the two parties.
(Docket Entry # 36, Ex. 1). Section J of the separation
agreement, captioned "Liabilities," reads as follows:

> Each party agrees that he or she shall neither contract
> nor incur any expenses, debts, charges or liabilities
> in the name of or upon the credit of the other nor for
> which the other or the other's legal representative,
> property or estate will or may become liable.

(Docket Entry # 36, Ex. 1).

Despite assenting to these terms, Jeffrey Bayko
subsequently mortgaged his interest in the property at 7A
Graham Avenue to his parents, Helen and Michael Bayko. At
the time, the property was held by Lisa Bayko and Jeffrey
Bayko as tenants in common with each retaining a 50% equal
share. On August 12, 2002, Helen and Michael Bayko secured
loans made to Jeffrey Bayko with a promissory note payable
to them for $46,340.00 plus interest and a mortgage on the
property. (Docket Entry # 32, Ex. 1 & 2). On July 8, 2003,
Helen and Michael Bayko secured a second loan made to
Jeffrey Bayko with another promissory note payable to them
for $6,300.00 plus interest and an additional mortgage on

8

the property.  (Docket Entry # 32, Ex. 3 & 4).

Helen and Michael Bayko argue that "most of the funds advanced by [them] were used by [Jeffrey Bayko] to pay child support and attorneys' fees related to the divorce." (Docket Entry # 32).  Nevertheless, on August 13, 2003, Lisa Bayko filed a complaint in equity to set aside the mortgages.  That complaint was dismissed without prejudice by the probate court for lack of subject matter jurisdiction.  (Docket Entry # 47, Ex. 9).  On September 23, 2004, however, the probate court found Jeffrey Bayko in contempt for violating the terms of the separation agreement, holding that the mortgages were invalid as to Lisa Bayko.  (Docket Entry # 47, Ex. 10).

The foreclosure on the property at 7A Graham Avenue took place on March 12, 2004.  The property was sold to a third party for $307,500.00.  Upon completion of the foreclosure sale and payment to GMAC, the first mortgage holder, GMAC, was left holding a surplus of $186,742.59, which was deposited in an interest bearing account maintained by Harmon Law Offices, P.C.  (Docket Entry # 77). Lisa Bayko and Jeffrey Bayko each claimed a 50% interest in the surplus, subject to claims against their respective interests by other creditors.  Thus, initially, each claimed

an interest in the sum of $93,371.29.  (Docket Entry # 77).

On or about May 12, 2005, GMAC released funds in the amount of $10,220.90 to the DOR.  The sum was paid without prejudice from Lisa Bayko's share of the proceeds.  Lisa Bayko alleges that her payment was made to remove the jurisdictional issue with the DOR while reserving her right to claim a lien against Jeffrey Bayko.  (Docket Entry # 77).

On or about June 23, 2005, GMAC entered into an indemnification agreement with BankNorth Group ("BankNorth"), holder of an uncontested second mortgage on the property, and released funds to BankNorth in the amount of $22,090.00.  (Docket Entry # 1).  The funds came equally from Lisa Bayko and Jeffrey Bayko's shares in the surplus.

Subsequent to the dismissal of the first action, Lisa Bayko was also paid sums of $54,978.35 and $955.00 as undisputed portions of her share in the surplus.  (Docket Entry # 26).  The funds were subsequently used to satisfy the liens of Attorneys Christine Faro and Charles Rotondi.

In total, as a result of these partial payments, GMAC currently holds a surplus in the amount of $100,616.36, including accrued interest on the account.  (Docket Entry # 26).  Lisa Bayko's remaining share of the surplus is

$17,000.00.[3]  (Docket Entry # 26).  Jeffrey Bayko's
remaining share of the surplus is $82,326.29.[4]  (Docket
Entry # 26).

In the current stage of this interpleader action there
are multiple claims to Jeffrey Bayko's share of the surplus.
Lisa Bayko maintains she is owed $133,423.07 from Jeffrey
Bayko in expenses due under the terms of the separation
agreement.  (Docket Entry # 70).  The United States claims
to be the holder of two federal tax liens against Jeffrey
Bayko, totaling $202,882.80.  The first lien, dated May 1,
2003 in the amount of $47,196.80, was recorded on June 3,
2003, in the Southern Essex County Registry of Deeds.  This
lien was also filed electronically in the United States
District Court on May 5, 2003.  (Docket Entry # 78, Ex. 3).
The second lien, also dated May 1, 2003, for $155,686.00,
was recorded on May 7, 2003, in the Northern Middlesex
County Registry of Deeds.[5]  (Docket Entry # 78, Ex. 3).

---

[3]  This amount consists of $10,000.00 as a reserve and
$7,000.00 for payment of GMAC's attorneys' fees and costs.

[4]  Although the figures identified as individual shares
held by Lisa Bayko and Jeffrey Bayko do not precisely total
$100,616.36, they reflect the amounts approved by the court
in the joint statement.  (Docket Entry # 26).

[5]  This lien was initially assessed against Lisa and
Jeffrey Bayko but on May, 25, 2003, Lisa was released from
liability by the IRS pursuant to 26 U.S.C. § 6015.  The lien
was not released as it related to Jeffrey Bayko.

Helen and Michael Bayko also seek $100,470.03 in funds
allegedly owed to them and secured by their two mortgages.
(Docket Entry # 32).  Finally, Hailey is the holder of an
attorney's lien dated February 6, 2003, and recorded
February 10, 2003, in the Essex County Registry of Deeds at
Book 20139, Page 71 in the original amount of $33,902.24.[6]
(Docket Entry # 3).  Because the size of the claims far
exceeds the available surplus, this court must determine the
priority of the various claims.

<u>DISCUSSION</u>

In her motion for summary judgment Lisa Bayko posits
three main arguments.  First, she argues that the judgment
of divorce nisi and the incorporated separation agreement of
May 24, 2002, which predate the IRS tax liens, give her
priority to the surplus over the United States.  Second,
Lisa Bayko argues that she has an equitable right to the
enforcement of the divorce judgment and therefore priority
pursuant to Massachusetts General Laws chapter 209, section
32D and chapter 184, section 15.  Finally, she maintains

---

[6]    In the prior Report and Recommendation, this court
determined that Hailey's lien of $33,902.24 has priority
over the claim proffered by Helen and Michael Bayko and the
claim proffered by Lisa Bayko.  (Docket Entry # 39).

12

that 26 U.S.C. § 6334(a)(8) ("section 6334(a)(8)") prohibits the United States from levying any monies that are meant for the support of minor children.

The United States, in opposition to Lisa Bayko's motion for summary judgment and in the separate cross motion for summary judgment, argues that Lisa Bayko's claim does not have priority over the federal tax lien.  The main contention of the United States is that Lisa Bayko's claim to Jeffrey Bayko's share of the surplus is unperfected and incohate according to federal law and therefore does not have priority.  The United States further submits that Lisa Bayko's arguments based on state law and section 6334(a)(8) are irrelevant.  Because the analysis of Lisa Bayko's motion for summary judgment (Docket Entry # 70) and the United States' cross motion for summary judgment (Docket Entry # 78) is virtually identical, the following discussion applies to both motions.

A federal tax lien arises when a person liable to pay any tax neglects or refuses to pay the amount after demand. 26 U.S.C. § 6321.  The lien in favor of the United States is upon "all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321; United States v. Murray, 217 F.3d 59 (1st Cir. 2000) (noting

13

this language is to be construed broadly).  The lien imposed by 26 U.S.C. § 6321 ("section 6321") arises at the time assessment is made and continues until the liability for the amount assessed is satisfied or becomes unenforceable by reason of lapse of time.  26 U.S.C. § 6322.

"Where there are competing claims to a delinquent taxpayer's property by a federal tax lien and a state-law lien, priority is determined by federal law." Smith Barney, Harris Upham & Co., Inc. v. Connolly, 887 F.Supp 337, 342 (D.Mass. 1994) (citing Aquilino v. United States, 363 U.S. 509, 513-14 (1960)).  Generally, priority of a federal tax lien against a state lien is governed by the "first in time is the first in right" common law rule.  United States v. McDermott, 507 U.S. 447, 449 (1993) (quoting United States v. City of New Britain, 347 U.S. 81, 85 (1954)).  This common law rule of priority is qualified by 26 U.S.C. § 6323(a) ("section 6323(a)"), which states that:

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f)[7] has been filed by the Secretary.

---

[7]  Internal Revenue Code section 6323(f) provides, in pertinent part, that notice must be filed, "[i]n the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the

14

26 U.S.C. § 6323(a).

Treasury Regulations define a "judgment lien creditor" as "a person who has obtained a valid judgment in a court of record and of competent jurisdiction, for the recovery of specifically designated property or a certain sum of money." Smith Barney, Harris Upham & Co., Inc. v. Connolly, 887 F.Supp at 343 (citing Treas.Reg. § 301.6323(h)-1(g)). A judgment lien creditor must perfect a lien on the property involved according to local law, Treas.Reg. § 301.6323(h)-1(g), and satisfy the choateness test[8] set out in United States v. City of New Britain, 374 U.S. at 84, and Treasury Regulation section 301.6323(h)-1(g), such that "there is nothing more to be done to perfect." Baybank Middlesex v. Electronic Fabricators, Inc., 751 F.Supp. 304, 310 (D.Mass. 1990). If these conditions are met prior to the IRS filing a Notice of Federal Tax Lien then the judgment lien creditor has priority over the United States. Smith Barney, Harris Upham & Co., Inc. v. Connolly, 887 F.Supp at 343.

---

lien is situated." 26 U.S.C. § 6323(f)(1)(A)(I). The situs of the property subject to the lien is its physical location. 26 U.S.C. § 6323(f)(2)(A).

   [8] The choateness test requires that a state lien specifically set forth (1) the identity of the lienor (2) the property subject to the lien, and (3) the amount of the lien. United States v. City of New Britain, 374 U.S. at 84; Treas.Reg. § 301.6323(h)-1(g).

Entry of a judgment in and of itself, however, does not create a lien against a defendant's property in favor of a plaintiff. Smith Barney, Harris Upham & Co., Inc. v. Connolly, 887 F.Supp at 345. A perfected attachment or levy of execution against a defendant's property is necessary to create a lien. See L. Rudolph Electrical Co. v. Gibbs Oil Co., 454 N.E.2d 1288, 1288 (Mass.App.Ct.), review den., 457 N.E.2d 283 (1983) (the defendant did not become judgment lien creditor within the meaning of section 6323(a) and Treas.Reg. § 301.6323(h)-1(g) until: (1) judgment was entered; and (2) writ of attachment was issued on the judgment and recorded in the appropriate registry of deeds).

While Lisa Bayko had a valid divorce judgment as of May 24, 2002, she did not and has not become a judgment lien creditor within the meaning of the Internal Revenue Code. There is no evidence that Lisa Bayko ever recorded a pre or post judgment attachment on the marital home to secure her claim. Without a perfected attachment or levy of execution, Lisa Bayko does not have a valid lien with priority over the federal lien. See L. Rudolph Electrical Co. v. Gibbs Oil Co., 454 N.E.2d at 1288. Additionally, Lisa Bayko's claim fails to satisfy the City of New Britain choateness test. While the identity of the lienor and the amount of the lien

16

may have been sufficiently specific, without an attachment
the property subject to the lien was not sufficiently
identified.  Lisa Bayko's claim therefore remains inchoate.

In opposition to the United States' cross motion for
summary judgment, Lisa Bayko argues that, according to a
recent unreported Massachusetts Superior Court decision, a
Massachusetts creditor becomes a judgment lien creditor
under federal law as a result of obtaining a Massachusetts
judgment.  See Citibank v. Leahy, 2005 WL 937338 at *1
(Mass.Super. March 28, 2005) (citing Smola v. Camara, 449
N.E.2d 678, 679 (Mass.App.Ct. 1983)).  Unlike the instant
case, in Citibank the defendant became a judgment lien
creditor on entry of judgment because it had recorded a writ
of attachment to the property prior to the judgment.
Citibank v. Leahy, 2005 WL 937338 at * 1.  Lisa Bayko is
correct that Citibank holds that Smith Barney does not
require a judgment creditor to obtain a writ of execution in
order to be a judgment lien creditor for purposes of
priority.  Id.  To achieve the status of a judgment lien
creditor, however, an attachment identifying the property
subject to the lien is required.  Id. at * 2 n. 8 ("[the
defendant's] writ of attachment became a perfected judgment
lien upon judgment"); United States v. Murray, 217 F.3d at

17

63 n. 1 ("perhaps the . . . pre-divorce attachment was perfected for purposes of state law by the divorce decree").

Because Lisa Bayko never became a judgment lien creditor under section 6323(a), the notice requirements of 26 U.S.C. § 6323(f) ("section 6323(f)") do not apply. The statute is clear on its face that the notice procedures of section 6323(f) only apply to those parties specifically enumerated in section 6323(a). The federal tax liens of May 1, 2003, against Jeffrey Bayko's share of the surplus became valid at the time of assessment and therefore have priority over Lisa Bayko's unperfected and inchoate claims.

In addition, Lisa Bayko's state law notice arguments are not well taken. State law is relevant in assessing whether a state lien is perfected and what rights a taxpayer has in property subject to a tax lien, Drye v. United States, 528 U.S. 49, 52 (1999), but federal law governs priority of competing state and federal liens. Aquilino v. United States, 363 U.S. at 513-14. The United States may have had notice of Lisa Bayko's divorce judgment when she filed for personal release from her tax liabilities pursuant to 26 U.S.C. § 6015 but, as discussed above, she never attained the status of a judgment lien creditor under federal law.

Lisa Bayko finally contends that, pursuant to section 6334(a)(8), the United States is prohibited from levying "salary, wages or income" required to be paid to satisfy a judgment for the support of minor children. She argues that Jeffrey Bayko owes her $87,000.00 for support of their minor children. While there is substantial evidence on the record that Jeffrey Bayko has not complied with the separation agreement and is in considerable arrears on his support payments, this section of the Internal Revenue Code is not applicable to the case at bar. The IRS has not decided to pursue an administrative levy under 26 U.S.C. § 6331 and therefore the exemptions under section 6334 are immaterial.

The Internal Revenue Code has a "number of distinct enforcement tools available to the United States for the collection of delinquent taxes." United States v. Rodgers, 461 U.S. 677, 682-683 (1983). An administrative levy is a "provisional remedy" without judicial intervention to quickly and inexpensively satisfy a tax debt. See United States v. National Bank of Commerce, 472 U.S. 713, 720-721 (1985). A tax lien action under section 6321, on the other hand, requires judicial intervention but the lien "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." Id. at

19

719-720; <u>United States v. Murray</u>, 217 F.3d at 59; <u>see</u> <u>United States v. Rye</u>, 550 F.2d 682, 685 (1st Cir. 1977) (delinquent taxpayer's right to support payments from ex-husband was a property right to which section 6321 lien could attach).  In addition, the discussion of the opinions of several circuits in the <u>American Trust</u> case, cited in the United States' opposition to Lisa Bayko's motion for summary judgment regarding the distinction between levies and liens (Docket Entry # 77), is persuasive.  <u>See</u> <u>American Trust v. American Community Mut. Ins. Co.</u>, 142 F.3d 920, 923-925 (6th Cir. 1998).  The property intended for the support of Lisa Bayko's minor children that may have been exempt from section 6334 administrative levy is therefore not exempt from a section 6321 tax lien.

As a final matter, it behooves this court to set out the priority of the claims to Jeffrey Bayko's share of the surplus.  Pursuant to the August 10, 2006 Report and Recommendation (Docket Entry # 61), Hailey's choate and perfected attorney's lien has priority over the claims of Lisa Bayko and Helen and Michael Bayko.  Furthermore, the United States concedes that Hailey's attorney's lien takes priority over its section 6321 tax lien.  (Docket Entry # 67, Ex. 2)  Hailey's attorney's lien is therefore first in

time and first in right.  As discussed above, the tax lien

of the United States is next in line, followed by Lisa

Bayko's claim.  Because Helen and Michael Bayko's mortgages

are invalid for reasons set out in the Report and

Recommendation of August 10, 2006 (Docket Entry # 61), their

claim to the surplus is junior to all others.


                            CONCLUSION

     Accordingly, in light of the above discussion, this

court **RECOMMENDS**[9] that Lisa Bayko's motion for summary

judgment (Docket Entry # 70) be **DENIED** and that the United

States' cross motion for summary judgment (Docket Entry #

78) be **ALLOWED.**



                              /s/  Marianne B. Bowler
                              **MARIANNE B. BOWLER**
                              United States Magistrate Judge

_____

     [9] Any objections to this Report and Recommendation must
be filed with the Clerk of Court within ten days of receipt
of the Report and Recommendation to which objection is made
and the basis for such objection.  Any party may respond to
another party's objection within ten days after service of
the objections.  Failure to file objections within the
specified time waives the right to appeal the order.  United
States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir.
1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st
Cir. 1986).

                                21